EXHIBIT- A

LVN-1330.13D
Attachment A

# INFORMAL ATTEMPT TO RESOLVE

PROGRAM STATEMENT 1330-13 "Administrative Remedy Procedures for Inmates" state that inmates shall informally present their complaints to staff and staff shall attempt to informally resolve an issue before an inmate files a "Request for Administrative Remedy".

Administrative Remedy (BP-9's) will not be issued on a random basis. For accountability purposes each BP-09 and BP-08 will be logged and assigned a control number.

Prior to submitting a "Request for Administrative Remedy", the inmate and counselor will attempt informal resolution by answering the questions below. After an attempt by the counselor to informally resolve the issue, the INFORMAL RESOLUTION FORM (BP-08) will be forwarded to the Unit Manager for review and signature which acknowledges the complaint, efforts to resolve, and if informally resolved and/or a BP-09 was issued.

1. INMATE'S NAME: BOLING, Oliver    REG. NO.: 36688-118

2. GIVE A BRIEF STATEMENT OF THE COMPLAINT ISSUED: Unprofessional conduct, racist behavior, bias and racial slurs, fraudulent use of Bureau policy, intimidation, discriminatory conduct, abuse of authority--see attached complaint.

3. STATE ALL EFFORTS MADE BY YOU TO RESOLVE THIS ISSUE (INCLUDE NAMES OF STAFF MEMBERS CONTACTED AND HOW THEY WERE CONTACTED): Spoke with Unit Manager Mildner concerning the **misconduct** Mr. Wilson displayed in his presence and was deterred by Mr. Wilson from seeking resolution of racist remarks from other Unit members because Wilson advised me that Mildner, Pierce, and Flugrant felt like he did--a good nigger is a dead nigger--were his statements to me.

4. COUNSELOR'S COMMENTS (INCLUDE EFFORTS MADE TO INFORMALLY RESOLVE THIS ISSUE):

05 1732



DATE INFORMAL RECEIVED:_____ DATE INFORMAL RETURNED TO INMATE_____
ISSUE INFORMALLY RESOLVED:__ YES__ NO   BP-09 ISSUED__ YES____ AUG 3 1 2005

INMATE'S SIGNATURE _____ DATE_____

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

A

**U.S. DEPARTMENT OF JUSTICE**  **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Boling, Oliver | #36688-118 | A-3 | Leavenworth U.S.P. |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A – INMATE REQUEST** On or about October 2, 2003 Mr. Wilson informed me that I was scheduled for a parole hearing in December 2003. At this meeting I was allowed to review my file. Upon doing so, I noticed inaccurate time sheets. I brought this finding to Mr. Wilson, who told me just he just started as a case manager and did not know and that he would ask Ms. Ashman, his boss, about what to do. Thereafter, Mr. Wilson said he spoke with Ms. Ashman concerning my time sheets and that she said I violated parole for a domestic, therefore, Mr. Wilson should leave my files alone. Mr. Wilson then indicated to me that he didn't know my wife was white and that it's a bad scenario for me. A few days later I approached Mr. Wilson, inquiring about the progress report needed for the parole hearing. Mr. Wilson told me to stop bugging him and get out of his face and that I shouldn't have hit my wife and then I wouldn't have to face Kansas finest. On December 3, 2003 before entering the office where the parole Commission was holding session, Mr. Wilson approached me. I asked him where was my progress report. He told me, "don't worry about that, your're lucky your ass is alive to be at a meeting," as he smiled and stuck his hand in the front of his pants with three (3) fingers hanging out. I did not know what that meant. On December 5, 2003, Mr. Wilson called me into the main office. Mildner, Chiles, Flagrant were all present. Mr. Wilson told me that my wife had written the warden and said that I had tried to contact her. I asked Mr. Wilson to provide the evidence because I never wrote her. He began to threaten me in a

[Continuation of following page]

February 27 2004   Oliver Boling #36688-118
DATE   SIGNATURE OF REQUESTER

**Part B – RESPONSE**

RECEIVED 2004 MAR -2 AM 11:45 WARDEN'S OFFICE USP LEAVENWORTH

DATE   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

THIRD COPY: RETURN TO INMATE   CASE NUMBER: 324008-F1
CASE NUMBER: _____

**Part C – RECEIPT**
Return to: Boling, Oliver M.   36688-118   A-3   Leavenworth
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: Request harassment threats unprofessional conduct

3-1-04   _____
DATE   RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN   BP-229(13) APRIL 1982

**CONTINUATION**

disrespectful manner and told me that he was going to put the F.B.I. on me to investigate and that he will have to write an incident report and get the Parole Board to retard my presumtive parole date recently obtained (december 3, 2003). On December 8, 2003, I spoke to Unit Manager Mildner concerning the December 5, 2003 incident and that I was humiliated and felt Mr. Wilson's actions were abusive in nature. Mr. Mildner advised me that he had talked to Wilson and that he told him he didn't handle the situation too well and advised Mr. Wilson to talk to me. Thereafter, Mr. Wilson called me into his office and said man to man I don't care too much for D.C. niggers and you, Boling. are getting on my nerves. He continued to explain that if I were "wise" and observed how the Black staff behaved, they stay in their place and you better too. On January 12, 2004, I was on call out for Lab at the Hospital and Mr. Wilson requested that I take a blood test, which he said was mandatory before release. I declined due to my religions beliefs. On January 13, 2004 Mr. Wilson and case Manager Pierce called me into the office. They told me I had to give blod or never go home. I asked them to show me a policy statement. Mr. Wilson said, **"you're a smart ass coon huh?"** I said "I resent that type of talk," and left the office. On January 14, 2004, I was called before Team. Mildner, Chiles, A-3 Secretary, and Wilson, who was the spokesperson conducted the meeting. He handed me a paper which he claimed was policy about my having to take a blood test before he started on my half-way house package. The discussion then turned for my request to transfer to an F.C.I. Mr. Wilson said I was at 15 points. I said for two years I was at 7 points, how did I get up to a 15 ? Mr. Wilson began to hollar and say it was because of your 1976 case and the domestic on your wife. I advised him that **P.S. 5100.06 Policy** does't include the reasons he's advocating. Mr. Wilson then became angered and very hostile. I then said if you would help me correct my file this problem wouldn't exist. Mr. Wilson screamed, **"I ain't here to help you, my job is not suppose to help you."** This was said so loud inmates began to peer into the office. Mildner, Chiles, and the Secretary heard these statements. No one intervened, so i removed myself from the office. Thereafter, I learned that the policy for blood, in which Mr. Wilson presented to me before the team, was a policy that was rescinded **(See attached P.S. 6190.02).** Mr. Wilson continued to seek means to humiliate me. I was called to Psychology on January 16, 2004. Dr. Donnovan told me that Mr. Wilson wrote a Memo, gave it to Ms. Ashman, who gave it to his boss, asking him to see me. with suggestions that I may be participating in homosexual activities and that's why I don't want to give blood. On January 22, 2004, Mr. Wilson gave me my notice of action from parole, in which, indicated it was faxed December 19, 2003 to Leavenworth. However, 30 days later, Mr. Wilson gives it to me, which prevents me from appealing within the proscribed time.

**SUMMARY**

These unprofessional comments, bias, discriminatory practices, are in direct conflict of **Program Statement OP1, Number 3420.09 Employee Conduct and Responsibility, (E)** Employees will uphold the ethical governing this profession.**(3)** Employees may not use profane, obscene, or otherwise abusive language when communicating with inmates, staff or others. Employees shall conduct themselves in a manner which will not be demeaning to inmates, or fellow employees, nor are they to display open or cloase bias, or **RACIAL SLURS.**

**REQUEST**

Because of the gravity of this abuse, the racial overtures, the propensity to conduct himself in such a manner unmonitored, with what seems to be immunity, to express intentions to harm, retaliate, and the resources to achieve it, I request that Case Manager Wilson be **immediately** removed from my case and that I be assigned a new person to review my case and be given another team meeting to consider issues Wilson's bias prevented him from reviewing in a fair and impratial manner. I further request that because Ms. Ashman failed to detect the personal bias and vindictiveness of Wilson, and the professionlism to restrain, instead to condone, encourage, co-conspire, I ask that she not interfere in my reconsoderation. Additionally, I ask that Mr. Wilson receive psychological counseling for his anger and racial problem, and that he be cautioned against retalitory actions, either direct or indirect, and that he be investigated to the fullest extent of the law.

A