## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **OLIVER BOLING-BEY,** | ) |
|  | ) |
| **Plaintiff** | ) |
|  | ) |
|  | ) **Civil Action No. 05-1732  (JDB)** |
| **v.** | ) **(ECF)** |
|  | ) |
| **U.S. PAROLE COMMISSION, et al.** | ) |
|  | ) |
| **Defendants.** | ) |

_____

## DEFENDANTS' MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, TO TRANSFER VENUE

Federal defendants, the U.S. Parole Commission and its employees Pamela Posch, Samuel Robertson, and Jeffrey Kostbar, as well as the Federal Bureau of Prisons and its employees, Albert Wilson and Michael Gray, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (2), (3), (4), and (6), for dismissal of this action for lack of subject matter jurisdiction, in personam jurisdiction, improper venue, insufficiency of process, and failure to state a claim upon which relief may be granted.  In the alternative, in the event that the Court determines not to dismiss this case, defendants move pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. §§ 1404(a), that the Court exercise its discretion to transfer venue to the District of Kansas, where Leavenworth USP is located.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities and attachments thereto, and to the entire record in this case.  A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,


\_\_\_/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


\_\_\_/s/_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


\_\_\_/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OLIVER BOLING-BEY,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| | ) **Civil Action No. 05-1732  (JDB)** |
| **v.** | )  **(ECF)** |
| | ) |
| **U.S. PAROLE COMMISSION, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER

Defendants hereby submit this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b)(4), and 12(b)(6).

## I.    Introduction

Plaintiff, *pro se* in this action, is federal inmate Oliver Boling-Bey, Register Number 36688-118, presently incarcerated at the Lewisburg United States Penitentiary in Lewisburg, Pennsylvania. See Public Information Inmate Data.  Plaintiff was previously incarcerated at USP Leavenworth, Kansas, the site of the alleged mistreatment at issue in this case but was transferred because it was determined that plaintiff was a threat to the safety of staff and the security of the institution.  See Ex. A

### Factual Background

Plaintiff was originally sentenced by the District of Columbia Superior Court in 1977 to a term of imprisonment of 71 years and 6 months, for sodomy and assault with a deadly weapon.  See Ex. B (Bureau of Prisons Sentence Monitoring Computation Data).  The former District of Columbia

Board of Parole paroled plaintiff from this sentence on February 16, 1999, and he was to remain under parole supervision until June 29, 2047.  See Ex. C (certificate of parole).

Plaintiff's former wife had obtained a temporary restraining order against him on April 1, 1999 after two incidents of alleged domestic assault.  See Ex. D.  Plaintiff was arrested on April 2, 1999 and charged with assault with a deadly weapon after he used a cane to strike his wife.  See Ex. E.  The D.C. Board of Parole issued a parole violation warrant on April 13, 1999.  See Ex. F.  On April 16, 1999, plaintiff's parole officer reported that plaintiff had traveled to Connecticut without the parole officer's approval in order to pursue his wife.  See Ex. G.  He was arrested in Connecticut and charged with criminal trespass, disorderly conduct, and stalking second degree.  See Ex. H.  On December 9, 1999, plaintiff was convicted in the State of Connecticut of two counts of violating a protective order and he received time served.  See Ex. I.  He was also convicted on January 11, 2000 of disorderly conduct.  Id.  The charges of stalking and criminal trespass were dismissed.

Plaintiff was arrested on February 7, 2000 on the parole violator warrant and received a revocation hearing on March 15, 2000.  See Ex. J.  The Board of Parole determined that plaintiff had violated his conditions of parole by using a deadly weapon to strike his wife, by traveling outside the District of Columbia without permission to pursue his wife, and by committing criminal trespass, disorderly conduct and stalking.  Id.  The Board revoked plaintiff's parole and ordered that he be reconsidered for parole by February 7, 2003.  See Ex. K.

On December 3, 2003, the plaintiff received a rehearing before Stephen Husk, a hearing examiner for the USPC.  See Ex. L.  Based on plaintiff's history of violence and the fact that he had engaged in new criminal activity within two months of his release, the examiner recommended plaintiff serve 72 months.  Id. at 2 and Plaintiff's Complaint, ¶ B.  The examiner's recommendation

2

was concurred in by a second examiner, Kathleen Pinner.  See Ex. M.  The Commission concurred

with the examiners and plaintiff received a Notice of Action dated December 19, 2003 indicating

that plaintiff was continued to a presumptive parole date of April 9, 2005.  See Ex. N and Plaintiff's

Complaint, ¶ Facts (1).

On March 2, 2004, plaintiff filed a habeas corpus action in the U.S. District Court for the

District of Kansas.  See Plaintiff's Complaint, ¶ 4.  In that action, he alleged error by the U.S. Parole

Commission (USPC) in its review of plaintiff's parole status and parole release date.  See Ex. B, ¶

1 (dated 9/23/04).  In the Court's Order denying plaintiff's motion for summary judgment, the Court

found that plaintiff was seeking intervention into matters within the expertise of correction officials,

which it deemed inappropriate for habeas corpus actions.  Id.  The Court instructed plaintiff to seek

relief under Bivens.[1]  Id.

On June 5, 2004, the USPC reopened plaintiff's case pursuant to 28 C.F.R. § 2.28(f) for a

special reconsideration hearing to consider new adverse information in plaintiff's file which was not

considered by the hearing examiners who had recommended that plaintiff be paroled on April 9,

2005.[2]  See Ex. P and Q.  On May 13, 2004, Hearing Examiner Stephen Husk had advised the

Commission that the information that had been misfiled had not been available to him at the hearing

and therefore constituted new information.  See Ex. R.  Husk also believed that the new information

---

[1]  Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2]These documents included a police report with a description of petitioner's assault on his
wife that was significantly different than the version that petitioner provided to the hearing
examiner, letters petitioner had sent to his ex-wife, documents describing petitioner's stalking
offense and a copy of the civil protection order obtained by petitioner's ex-wife, and a letter from
a victim advocate with the U.S. Attorney's Office in the District of Columbia stating that
petitioner's ex-wife was at extreme risk of being murdered by petitioner

was substantial evidence that the victim was at a heightened risk for further violence by the plaintiff and that this evidence would have affected his recommendation. Id. Hearing Examiner Husk recommended that the Commission reopen plaintiff's case to consider this new significant adverse information under 28 C.F.R. § 2.28(f). Id. The special reconsideration hearing was scheduled for July 13, 2004. See Plaintiff's Complaint, ¶¶ Facts (5-6).

On June 10, 2004, the Commission disclosed to plaintiff the 34 pages of documents that were the basis for its decision to reopen his case, i.e., the information that had been misfiled. See Ex. S. Plaintiff indicated on the cover letter accompanying the information that he reviewed the material on June 24, 2004.

At the July 13, 2004 hearing, plaintiff stated that he was not ready to proceed because his attorney was not present. See Ex. T. The policy of USP Leavenworth will not permit victim witnesses to enter the Institution Hearing Room, which is in the secure part of the institution. Id. Consequently, defendant Jeffrey Kostbar, the hearing examiner, taped plaintiff's former wife's statement in the Warden's Conference Room that day so that it would be available for a future hearing. Id. Defendant Kostbar offered to play the tape for the plaintiff or provide a summary to plaintiff, but he refused to accept disclosure of the information. Id. Plaintiff allegedly objected that the tape was not "new and adverse information." See Plaintiff's Complaint, ¶ 9.

Prior to the hearing on July 13, 2004, plaintiff filed a grievance against defendant Wilson alleging racially discrimination actions in reference to his hearing. See Plaintiff's Complaint, Ex. G. Defendant Wilson was the case manager assigned to prepare a parole packet for plaintiff's upcoming hearing. See Plaintiff's Complaint, Ex. H.

After the hearing was delayed, on approximately July 28, 2004, plaintiff was placed in

4

solitary confinement for threat assessment with regard to defendants Wilson and Gray.  See Plaintiff's Complaint, Ex. H.

The special reconsideration hearing was rescheduled to September 22, 2004.  See Plaintiff's Complaint, ¶ 9.  Hearing Examiner Samuel Robertson continued this hearing, however, because he was under the impression that plaintiff had not received disclosure of the information that the Commission would be considering.  See Ex. U.  On October 6, 2004, after it was determined that the tape of the victim's statement, taped by Examiner Kostbar on July 13, 2004, was the only information that remained to be disclosed to the plaintiff, the Commission continued the hearing for disclosure of the victim's taped statement.  See Ex. V.  (On October 5, 2004, the Commission had sent the taped statement to plaintiff.)

On November 30, 2004, Hearing Examiner Rob Haworth conducted the special reconsideration hearing.  See Ex. W.  Plaintiff refused to attend the hearing.  Id. at 2 and Ex. X. Plaintiff alleges that he was denied the ability to attend the November 30, 2004 hearing by defendant Gray.  Id.

On January 5, 2005, the Commission voided the notice of action dated December 19, 2003 with regard to a parole date of April 9, 2005, denied parole, and ordered a 15-year reconsideration date for 2018.  See Ex. Y.

On May 5, 2005, plaintiff filed a petition for writ of habeas corpus with the U.S. District Court for the Middle District of Pennsylvania.  See Ex. Z.  Plaintiff alleged that he was denied due process of law because of defects in the issuance and execution of the parole violator warrant issued by the D.C. Board of Parole in 1999.  Id.  On October 13, 2005, U.S. District Court Judge Kosik denied the petition.  See Ex. AA

5

**Plaintiff's Allegations Against the BOP in the Current Case**

In his current case filed in the District of Columbia on August 31, 2005, plaintiff alleges that he was the victim of racial discrimination by the Bureau of Prisons ("BOP") prison staff, specifically by defendants Albert Wilson and Michael Gray, while he was incarcerated at the United States Penitentiary in Leavenworth, Kansas. See Complaint at ¶ F and ¶ 2. He appears to claim that the BOP staff conspired to deny his parole based on racial animus. See Complaint at ¶ 20. He also claims that BOP staff repeatedly used racial slurs towards him when bragging that they would prevent him from being paroled. Id. He also claims that certain BOP staff are related to members of the Parole Commission and used this relationship to insure that his parole would be denied. See Complaint at ¶ 7. Specifically, he alleges that defendant Wilson's mother worked for the U.S. Parole Commission for 14 years and has a friendship with defendant Posch that was utilized to deny his parole. See Complaint at ¶¶ 7-8. Additionally, plaintiff claims that defendant Wilson's mother conspired with defendant Samuel Robertson to deny plaintiff's parole. See Complaint at ¶ 12.

**Plaintiff's Allegations Against the USPC in the Current Case**

As to claims against the U.S. Parole Commission, plaintiff alleges that defendants Jeffrey Kostbar and Samuel Robertson conducted two parole hearings without affording plaintiff pre-hearing disclosure of the taped testimony of his former wife and that defendant Robertson failed to remove himself due to "conflict of interest." See Complaint at ¶ 22. As to defendant Posch, plaintiff alleges that Ms. Posch maliciously reopened plaintiff' parole date under false reasons. See Complaint at ¶ 23. Additionally, plaintiff alleges that defendant Posch entered into a conspiracy with Michael Gray to obstruct justice and cover-up plaintiff's entitlement to a hearing by the U.S. Parole Commission. See Complaint at ¶ 24. Plaintiff alleges violation of his Fifth, Fourteenth Amendments based on

6

race.  See Complaint at ¶ 25.

Plaintiff seeks declaratory relief, an injunction ordering plaintiff's release on parole within thirty (30) days and removal of inaccurate information from his files, compensatory damages from the following individuals and entities: (1) $100,000 jointly and severally from defendants Posch, Kostbar, Robertson, Wilson, and Gray for emotional damage;(2) $10,000 jointly and severally against defendants Wilson and Gray for placement in solitary for 4 months; and (3)$50,000 jointly and severally from defendants Posch, Kostbar, and Robertson for emotional damages due to the re-opening of plaintiff's case.  Additionally, plaintiff seeks punitive damages in the amount of $90,000 against defendants Posch, Wilson, Gray, Kostbar and $70,000 against defendant Robertson.  See Complaint at pgs. 16-19.

## II.    Argument

### A.    This Court Lacks In Personam Jurisdiction Over the Defendants.

Plaintiff has not shown that any of the defendants named in this lawsuit are residents of the District of Columbia.  Therefore, there is no in personam jurisdiction.

#### a.  Plaintiff's Burden.

It is the plaintiff who bears the burden of pleading the facts necessary to substantiate in personam jurisdiction in this Court.  Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999).  As explained by this Court in Edmond v. U.S. Postal Service, 727 F. Supp. 7, 10 (D. D.C. 1989), aff'd in part and rev'd in part, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court.  "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.  And where they are not so challenged the court may still insist that the jurisdictional facts be

7

established or the case be dismissed, and for that purpose the court may demand
that the party alleging jurisdiction justify his allegations by a preponderance of
evidence." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189
(1936).

Plaintiff has failed and cannot meet his burden to establish such necessary facts. All defendants

are moving for their dismissal from this lawsuit based upon lack of in personam jurisdiction,

pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure.

### b. D.C. Code §13-423, the "Long Arm" statute.

*In personam* jurisdiction may be maintained by the United States District Court for the

District of Columbia only if permitted by the "long arm" laws of the District of Columbia. Crane

v. Carr, 814 F. 2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal

jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which

states in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person,
who acts directly or by an agent, as to a claim for relief arising from the person's--

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortuous injury in the District of Columbia by an act or omission
in the District of Columbia;

(4) causing tortuous injury in the District of Columbia by an act or omission
outside the District of Columbia if he regularly does or solicits business,
engages in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed, or services rendered, in the District of
Columbia;

(5) having an interest in, using, or possessing real property in the District
of Columbia;

(6) contracting to insure or act as surety . . . ; or

8

(7) marital or parent and child relationship. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

In the instant case, plaintiff's pleading does not establish proper *in personam* jurisdiction in the United States District Court for the District of Columbia under § 13-423. Crane at 762. The defendants are obviously outside the "long arm" of this statute. They have not transacted business in the District of Columbia, have not contracted to supply services in the District of Columbia, and have not caused any tortuous injury in the District of Columbia. *In personam* jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long arm" statute because the plaintiff does not and cannot claim that the federal employees at the federal prisons where he was housed outside the District caused him tortuous injury within the District of Columbia. The injuries about which the plaintiff complains occurred at USP Leavenworth in Kansas. Therefore, this Court lacks personal jurisdiction over them for activities taking place outside the District. See Farmer v. Moritsugu, 163 F.3d 610 (D.C. Cir. 1998) (local medical staff treating in BOP institutions outside D.C. not subject to personal jurisdiction); Meyer v. Federal Bureau of Prisons, 940 F. Supp. 9 (D. D.C. 1996) (No personal jurisdiction over Bureau of Prisons case manager working in Rochester, Minnesota, sued in D.C. in individual capacity by inmate based upon claimed inaccuracy of prison records).

### c. **In Personam Jurisdiction Requires "Minimum Contacts."**

In order for the District Court for the District of Columbia to have personal jurisdiction over a non-resident defendant, jurisdiction must be proper under both the District of Columbia

long-arm statute and consistent with the demands of due process.  United States v. Ferrara, 54

F.3d 825, 828 (D.C. Cir. 1995); Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987).  "Since the

District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause

allows, Mouzavires v. Baxter, 434 A.2d 988 (D.C. 1981) (en banc), cert. denied, 455 U.S. 1006

(1982), personal jurisdiction exists when the defendant has purposely established minimum

contacts with the forum state and when the exercise of jurisdiction comports with 'traditional

notions of fair play and substantial justice.' Asahi Metal Indus. Co. v. Superior Court of Cal.,

480 U.S. 102 (1987)."  Wiggins v. Equifax Inc., 853 F. Supp. 500 (D. D.C. 1994).  "Plaintiff's

claim for relief must arise from the defendants' contacts with the District of Columbia and his

'claims must bear some relation to the acts in the District that are relied upon to confer personal

jurisdiction.' [D.C. Code] § 13-423(b).  Bayles v. K-Mart Corp., 636 F. Supp. 852, 854 (D.D.C.

1986)."  Id. at 502.

        The burden is again on the plaintiff to establish that this Court can exercise personal

jurisdiction over defendants consistent with the Due Process Clause.  Blumenthal v. Drudge, 992

F. Supp. 44, 53 (D. D.C. 1998).  Plaintiff in this case has wholly failed to allege such facts, and

the allegations against all these defendants do not establish "minimum contacts" necessary to

confer personal jurisdiction upon the District Court for the District of Columbia.  The mere fact

that defendants are employees of the Federal Bureau of Prisons and the Central Office of the

agency happens to be in Washington, D.C., is insufficient to establish the requisite "minimum

contacts" with the District of Columbia.  Cameron v. Thornburgh, 983 F.2d 235, 256 (D.C. Cir.

1993); see James v. Reno, et al., No. 99-5081, 1999 WL 615084 (D.C. Cir. Jul. 2, 1999)

(Inmate's security classification and transfer request made in Texas; both federal prisons at issue

                                             10

located in Texas; no injury suffered in the District of Columbia; mere fact that White and Snider are employees of the Bureau of Prisons based in D.C. insufficient to establish requisite "minimum contacts" with District); <u>Meyer v. Reno</u>, 911 F. Supp. 11, 14 (D.D.C. 1996) (Bureau of Prisons employee who works at FCI Memphis, Tennessee and three Florida State Attorneys not alleged to conduct any business or make any contracts for services and no injury alleged to have been suffered in the District of Columbia, so court cannot exercise jurisdiction over them). Although the plaintiff also seeks to maintain a claim against the Parole Commission, its offices are located in Maryland, not the District of Columbia. <u>Jerry v. U.S. Parole Comm'n.</u>, 741 F. Supp 282, 284 (D.D.C. 1970).

The presence in the District of Columbia of the defendants must be "continuous and systematic" and relative to the claim to meet the "minimum contacts" requirement. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). In this case these non-resident defendants lack the requisite minimum contacts with the District of Columbia because the operative facts of any claim herein arose in Kansas. Therefore, defendants' motions to dismiss under Rule 12(b)(2) should be granted, and they should be dismissed from this suit.

**B.    Plaintiff Has Not Perfected Service Against the Individual Federal Defendants**

None of the individual defendants in this action were properly served with the complaint in accordance with the rules applicable to individual defendants. <u>Simpkins v. District of Columbia Government</u>, 108 F.3d 366, 369 (D.C. Cir. 1997).; <u>see also</u> Declaration of Pamela Posch ¶ 1, Declaration of Samuel Robertson ¶ 1, and Declaration of Jeffrey Kostbar ¶2. It is well established that, in an action against a federal employee in his or her individual capacity, the

11

individually-sued defendant must be served with process in accordance with Rule 4(e) of the

Federal Rules of Civil Procedure.  Id.  Rule 4(e) provides that service is effectuated by complying

with the laws of the state for such in which the district court is located by delivering a copy of the

summons and complaint to the defendant (or his appointed agent) personally, or by leaving

copies thereof at the defendant dwelling house or usual place of abode with some person of

suitable age and discretion who resides there.  Fed. R. Civ. P. 4(e).  The SCR-Civil 4(e)(2)

allows for service upon individuals by first class, certified or registered mail.  Actual notice will

not, of course, substitute for technically proper service under Rule 4 and will not permit the

Court to render a personal judgment against an individually-sued defendant.  Sieg v. Karnes, 693

F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiff attempted to serve defendants Gray and Wilson individually but

failed to send a copy of the summons and complaint to a proper address.  Service at the

defendants place of employment is not proper service.  Additionally, there is no record that

plaintiff attempted to serve defendants Robertson, Kostbar, or Posch in their individual capacity

consistent with the federal rules.  See Decls. Posch, Robertson, and Kostbar.  Because the record

in this action is devoid of any evidence of proper personal service upon the federal defendants in

their individual capacities, this action cannot proceed against them individually and all claims

against the defendants should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the

provisions of Rule 4(i)(1) and (2) are met.  Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,

845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir.

1982).  It is the plaintiff in a civil action who has the burden of establishing the validity of

service of process.  Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476,

488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987).  Therefore, if

that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of

process under Rule 12(b)(5).  Accordingly, claims against the individual defendants should be

dismissed.

### C.    Defendant Officials May Not Be Sued for Damages In Their Official Capacities

To the extent that plaintiff seeks damages against individual defendants in their official

capacities, his claims must be dismissed absent a waiver of sovereign immunity.  Meyer v. Reno,

911 F. Supp.11 (D.D.C. 1996); Marshall v. Reno,  915 F.Supp. 426 (D.D.C. 1996); Deutsch v.

U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995).  The inherent sovereign immunity of

the United States protects it and its agencies [such as the BOP] from suit absent express waiver.

See United States v. Nordic Village, 503 U.S. 30 (1992).  Sovereign immunity also bars suits for

money damages against officials in their official capacities for nondiscretionary acts absent a

specific waiver by the government.  Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir.

1984).  Plaintiff's complaint does not contain any colorable basis for such a waiver.  Therefore, to

the extent plaintiff asserts claims for damages against the defendants in their official capacities

such claims must be dismissed for lack of subject matter jurisdiction.

### D.    U.S. Parole Commission Defendants Are Entitled to Absolute Immunity

Defendants Posch, Robertson, and Kostbar are all entitled to absolute immunity for any

role they allegedly had in plaintiff's parole hearings.  Doyle v. Camelot Care Ctrs., Inc., 305 F.3d

603, 622 (7th Cir. 2002) ("the scheduling of parole hearings constituted a judicial function

subject to absolute immunity") (citing <u>Thompson v. Duke</u>, 882 F.2d 1180, 1184-85 (7th Cir. 1989)). <u>See</u> <u>also</u> <u>Pate v. United States</u>, 277 F. Supp. 2d 1, 8-11 (D.D.C. 2003).

Parole officials, including Commissioners, are absolutely immune from suit for their actions in parole-making decisions. <u>Sellars v. Procunier</u>, 691 F. 2d 1291 (9th Cir.), <u>cert</u>. <u>denied</u>, 454 U.S. 1102 (1981) (absolute immunity for Parole Board member); <u>Walker v. Prisoner Review Board</u>, 769 F.2d 396, 398 (7th Cir. 1985), <u>cert</u>. <u>denied</u>, 474 U.S. 1065 (1986). Specifically, "[b]ecause the scheduling of a parole revocation proceeding is part of the adjudicatory process, performed in this case at the direction of the [U.S. Parole Commission], [they] are entitled to absolute immunity to the extent of their involvement in this quasi-judicial function." <u>Doyle</u> at 622.

Absolute immunity "flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 201 (1985) (quoting <u>Butz v. Economou</u>, 438 U.S. 478, 511 (1978)). Although this form of immunity has traditionally been afforded only to judges, "the [Supreme] Court has extended absolute immunity to certain others who perform functions closely associated with the judicial process." <u>Cleavinger</u>, 474 U.S. at 200. These include, inter alia, parole board members who make release and revocation decisions as well as to the staff that assist the Commissioners in their quasi-judicial responsibilities including hearing examiners who conduct hearings and staff who make recommendations to parole board members. <u>Id.</u> at 204; <u>see</u> <u>also</u> <u>Reynolds El v. Husk</u>, 273 F. Supp. 2d 11, 13 (D.D.C. 2002) (holding that Parole Commission hearing examiner is entitled to absolute immunity from suit for damages arising from Commission's decision to deny parole to prisoner); <u>Walrath v. U.S.</u>, 35 F.3d 277, 281(7th Cir. 1994) (absolute immunity from

14

suit applied to Parole Commission employees whose responsibilities are closely analogous to or integrally associated with the quasi-judicial process); Anton v. Getty, 78 F.3d 393, 396 (8th Cir. 1996) (holding that because the conclusions and recommendations of Commission officials are similar and closely connected to Commissioner decisions, they are also entitled to absolute immunity); Turner v. Barry, 856 F. 2d 1539, 1540 (D.C. Cir. 1988) (holding probation officer has absolutely immune from liability for damages in § 1983 action for errors in presentence investigation report because probation officer's impartial fact-finding for preparation of the report is an integral part of the judicial function of sentencing).  "Accordingly, the 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'"  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-436 (1993) (quoting Burns v. Reed, 500 U.S. 478, 500 (1991)).

In the instant case, it is clear that the "judgments" of defendants are "'functional[ly] comparab[le]' to those of judges," that is, they "'exercise a discretionary judgment' as a part of their function."  Antoine, 508 U.S. at 436 (quoting Imbler v. Pachtman, 424 U.S. at 409, 423, n. 20).  Defendants Robertson and Kostbar are hearing examiners for the Parole Commission. Pursuant to 18 U.S.C. § 4203(c), they have been delegated by the Commission with the powers to conduct hearings, take sworn testimony, obtain and make a record of pertinent information, make findings of probable cause, and make recommendations to the Commissioners concerning the granting or denial of parole, the imposition of conditions of parole, or the modification or revocation of an order granting parole.  See 28 C.F.R. § 2.23.  These actions are closely associated with the decision-making of the Commissioners.  Defendants Robertson and Kostbar

are entitled to dismissal of all claims against them in their individual capacities under the

doctrine of absolute immunity.  Reynolds El v. Husk, 273 F. Supp. 2d at 13 (joining numerous

other federal courts in holding that parole board officials are absolutely immune from suit for

damages).

Defendant Posch is an attorney for the Parole Commission's Office of the General

Counsel.  Her role as an attorney for the Commission includes providing counsel to the

Commission in preparation for parole proceedings and for its "'professional evaluation of the

evidence' gathered by others."  See Posch Decl. ¶ 2; Walrath v. U.S., 35 F.3d at 283 (holding that

Commissioner, the Commission's General Counsel, and a hearing examiner were entitled to

absolute immunity for their roles in determining the nature of the charges to be brought against

the parolee) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), cert denied 513 U.S.

1085 (1995).  In Walrath, the Seventh Circuit found that the actions of the Commission's

General Counsel, who recommended that the Commission conduct a special reconsideration

hearing to revise charges that had been considered at the parolee's revocation hearing and who

consulted with the Commissioner as to which charges were appropriate, were closely analogous

to the acts of a prosecutor preparing to initiate judicial proceedings.  Id. at 283.  The Seventh

Circuit held that the Commission's General Counsel was entitled to absolute immunity from suit.

Similarly, defendant Posch referred the case to Hearing Examiner Husk for a possible reopening,

and provided counsel for those officials that would ultimately decide whether to reopen the case

in order to consider the overlooked information.  She also provided advice on how the

Commission should proceed if it decided that the case should be reopened.  These acts are

closely analogous to the acts of a prosecutor in the course of his role as an advocate for the State,

16

for which the prosecutor is entitled to absolute immunity.  Walrath v. U.S., 35 F.3d at 283.

Therefore, defendant Posch is entitled to dismissal of all claims against her in her individual

capacity under the doctrine of absolute immunity.  See Anton v. Getty, 78 F.3d at 396 (holding

that one who performs a discretionary task which plays an integral role in the Commission's

decision-making process is entitled to absolute immunity).

## E.    Defendants Are Entitled to Qualified Immunity

The plaintiff is seeking monetary damages against these defendant government officials.

Qualified immunity shields government officials from suit in performance of a discretionary

function unless that official's conduct violated a clearly established constitutional or statutory

right of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of

litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from

suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a

case is erroneously permitted to go to trial."  Id.  The D.C. Circuit, in Farmer v. Moritsugu, 163

F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity
> grounds] unless '[t]he contours of the right [were] sufficiently clear that a
> reasonable official would [have] underst[ood] that what he [was] doing violate [d]
> that right.' "  Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), aff'd 922 F.2d 443
> (8th Cir. 1990)).
>
> By "provid[ing] government officials with the ability reasonably to anticipate
> when their conduct may give rise to liability for damages," Anderson, 483 U.S. at
> 646, the doctrine of qualified immunity strikes a balance between compensating
> those injured by official conduct and protecting the Government's basic ability to
> function.  See Harlow, 457 U.S. at 813-14.  In other words, qualified immunity is
> designed to mitigate the social costs of exposing government officials to personal

17

liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service."  Id. at 816; see also Harris, 932 F.2d at 13.  To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In determining whether a correctional official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court.  Saucier v. Katz, 121 S. Ct. 2151 (2001).  A court must always begin with this first step:  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 2156.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  Id.  Therefore, if the first portion of the two-pronged test is not met, that is, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

If the Court concludes that defendants Robertson, Kostbar, and Posch are not entitled to absolute immunity for their alleged actions, they are entitled to qualified immunity.  Their actions were taken in the course of their employment and did not violate any clearly established

constitutional or statutory right of which a reasonable person would have known. See Harlow, 457 U.S. at 818.

### F.    Lack of Subject Matter Jurisdiction

Plaintiff asserts jurisdiction under Bivens and 42 U.S. C. §§ 1983, 1985(3) and 1986 for alleged violations of his Fifth and Fourteenth Amendment rights.

### 1.    The United States Had Authority to Reopen the Parole Decision Based on New and Significant Adverse Information

Plaintiff alleges that the USPC's decision, and that of defendant Posch, to reopen his case is a "retaliatory" action based on his current habeas litigation in the U.S. District Court in the District of Kansas. See Complaint ¶ 23. Contrary to plaintiff's claims, the USPC reopened plaintiff's case because of the discovery of new adverse information. See Posch Decl. ¶¶ 6-7. Plaintiff's conclusion that the Commission is barred from revisiting the parole decision too narrowly construes what constitutes "new and significant adverse information" justifying the reopening of a parole decision. Davis v. Brown, 311 F. Supp. 2d 110, 115 (D.D.C. 2004). Additionally, as discussed supra, the actions of defendant Posch are entitled to absolute immunity. Walrath v. U.S., 35 F.3d at 283.

The actions of the USPC are well within its discretion. Lewis v. Beeler, 949 F.2d 325, 329 (10th Cir. 1991), cert. denied, 504 U.S. 922 (1992). The Parole Commission has the authority, upon the receipt of "new and significant adverse information" to reopen a previous parole decision and "void the previously established release date." 28 C.F.R. § 2.28(f); see also Davis v. Brown, 311 F. Supp. 2d 110 (D.D.C. 2004). Additionally, plaintiff does not have the right to have the administrative record frozen at the time of his revocation hearing. Bridge v.

19

U.S. Parole Commission, 981 F. 2d 97, 104 (3d Cir. 1992) (District Court could not freeze the Commission's record and prevent it from considering new information on remand).

Information is new for purposes of § 2.28(f) where it has not been considered by the Commissioner who made the decision which the Commission seeks to reopen. Lewis v. Beeler, 949 F.2d 325, 329 (10th Cir. 1991), cert. denied, 504 U.S. 922 (1992). "New" information is not strictly limited to information that a Commission was previously completely unaware of, but more broadly encompasses "previously existing information that was not considered at the initial hearing." Fardella v. Garrison, 698 F.2d 208, 211 (4th Cir. 1982) (emphasis added); see also Frassetto v. Perrill, 955 F.2d 176, 178 (2d Cir. 1992) (collecting cases); Lewis v. Beeler, 949 F.2d 325, 329 (10th Cir. 1991) ("Because the Commission is not primarily an investigative body and must depend largely on interested parties for relevant information, it will sometimes need to review previously considered allegations in light of newly received information.

The Commission may reopen a case even if the new information was already contained in the parole file but overlooked. Mcclanahan v. Mulcrome, 636 F. 2d 1190, 1191 (10th Cir. 1980) (The discovery of an error in a parole decision can be considered "new" when brought before the Commissioner); Goble v. Matthews, 814 F. 2d 1104 (6th Cir. 1987) (Commission can consider information contained in the file but inadvertently overlooked); Knight v. U.S. Parole Com'n., 721 F. Supp. 974, 981 (N.D. Ill. 1989) (information available at the time of hearing but not considered by the panel may be considered "new" information). It is for this reason that the Commission is given the power to reopen cases").

In making parole decisions, the Parole Commission must make a determination that a prisoner's release will not jeopardize the public welfare. White v. Hyman, 647 A.2d 1175, 1179

(D.C. 1994).  The new adverse information contained in plaintiff's parole file and not previously considered by the Commission establishes that plaintiff has the potential for continued violent behavior in the community upon his release on parole.  See Ex. D.  The Commission has a duty to consider this new information before setting a release date.  Lewis, 949 F.2d at 329 ("The Commission is not like a court.  It does not get only one chance to review allegations against a prisoner.  Rather, its function is to make the best possible determination of a prisoner's parole risk based on a continuing evaluation.")

The actions of the USPC and defendant Posch, in the performance of her duties as an attorney for the USPC, in reopening plaintiff's case and ordering a special reconsideration hearing were clearly within her authority and the authority of the USPC.  Plaintiff has presented no evidence that defendants actions' were racially motivated and violated plaintiff's Fifth or Fourteenth Amendment rights.  Shabazz v. Askins, 14 F.3d 533, 535 (10th Cir. 1994) (plaintiff presented no evidence on which a reasonable jury could infer that Parole Board members acted against the inmate in a retaliatory manner.  Plaintiff's allegations of racial discrimination are without merit and should be dismissed.

### 2.    No Violation of Due Process Rights

Plaintiff claims that the defendants violated his right to due process in failing to give him written notice that his former wife's taped statement would be considered as new adverse information in the parole determination.  See Complaint ¶ 22.  There is no clearly established constitutional right to notice and disclosure of information that the Commission considers in parole decision-making; in fact, plaintiff does not have a clearly established constitutional right to parole that gives rise to any due process protections.  Brandon v. D.C. Board of Parole, 823

21

F.2d 644, 647 (D.C. Cir. 1987) (no due process right to parole because District of Columbia law did not create a liberty interest in parole); Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (because parole regulations vest considerable discretion in the Parole Board to grant or deny parole, they do not create a liberty interest in parole).  Any alleged unfairness in the parole hearing, even if plaintiff is correct, would not afford plaintiff a basis for relief in a civil rights action.  Washington v. White, 805 F. Supp. 191, 193 (S.D.N.Y. 1992) (holding that since New York's parole provisions do not create an entitlement to parole, plaintiff could not bring claim of unfair hearing under § 1983).

Moreover, the record shows that plaintiff was provided with notice and disclosure before the Commission conducted the reconsideration hearing on November 30, 2004.  See Complaint ¶ 14.  On June 5, 2004, plaintiff received notice that the Commission had reopened his case and would conduct an in-person hearing; he also received notice that the basis for the reopening was to consider adverse information that had been in the Commission's file, but had not been considered by the Commission at its previous hearing.  Id. at ¶ 5.  On June 10, 2004, plaintiff received disclosure of 34 pages of documents that the Commission would be considering to make a determination in his case.  See Ex. S.  On June 24, 2004, plaintiff acknowledged receiving and reviewing the documents.  Id.  On July 13, 2004 and on September 22, 2004, plaintiff received actual notice of the Commission's intent to consider a taped statement made by plaintiff's former wife.  Finally, on October 5, 2004 plaintiff received a copy the audio tape which was to be considered by the Commission at his hearing.  See Ex. V.  Plaintiff did not have a clearly established constitutional right to any of these procedures.  See Brandon v. District of Columbia Board of Parole, 823 F.2d at 649 (mere fact that government has established procedures does not

create liberty interest in parole). Therefore, plaintiff has failed to allege facts, laws, and case precedent that demonstrate that the defendants violated a clearly established right to due process concerning notice of his hearing and disclosure of information that the Commission would consider at his hearing.

Moreover, this Court's review of the Commission's decision is a limited one. The Commission's decision to rescind petitioner's parole date does not run afoul of due process guarantees unless it was "totally lacking in evidentiary support" or "so irrational as to be fundamentally unfair." Duckett v. Quick, 282 F.3d 844, 847 (D.C. Cir. 2002)(referring to decisions revoking parole). The Parole Board may authorize a release on parole when "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law," and "that his release is not incompatible with the welfare of society." D.C. Code § 24-404. As stated above, the Commission has a duty to consider this new information before setting a release date. See Ex. D; See also Lewis, 949 F.2d at 329 ("The Commission is not like a court. It does not get only one chance to review allegations against a prisoner. Rather, its function is to make the best possible determination of a prisoner's parole risk based on a continuing evaluation.")

### 3.    Defendants Did Not Discriminate Against Plaintiff Based on Race

Plaintiff alleges that defendants violated his right to equal protection under the law by discriminating against him based upon his race. There is nothing in the record to support his claim that the defendants' actions were race-based or that he was treated differently than similarly situated prisoners.

An equal protection claim may be brought by a plaintiff alleging that he has been intentionally treated differently from others similarly situated and there is no rational basis for the

difference in treatment.  Hilliard v. Board of Pardons and Paroles, 759 F.2d 1190, 1193 (5th Cir. 1985) (holding that prisoner's claim that he was denied due process and parole in retaliation for his lawsuit against corrections department was an equal protection claim); King v. U.S. Parole Commission, No. 02-5207, 2002 WL 31520756 (D.C. Cir. Nov. 13, 2002) (holding that offender had not shown that he was a member of a suspect class and finding that the Commission had a legitimate reason for its decision).  Plaintiff has not shown that the defendants treated him differently from similarly situated prisoners.  Hilliard v. Board of Pardons and Paroles, 759 F.2d at 1193 (holding that prisoner who claimed that he was treated differently in retaliation for his involvement in a lawsuit against corrections department failed to state a claim because he alleged no supporting facts); Cruz v. Skelton, 543 F.2d 86, 92 (5th Cir. 1976), cert. denied 433 U.S. 911 (1977) (holding that plaintiff failed to provide a factual basis for his allegations that the parole board discriminated against him based upon geographic location); Fuller v. Georgia State Board of Pardons and Paroles, 851 F.2d 1307, 1310 (11th Cir. 1988) (inmate failed to show that he was similarly situated to other inmates who were granted parole).

A complaint under § 1983 must contain more than conclusory allegations of unconstitutional conduct by persons acting under color of state law, there must be some factual basis for such claims.  Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986) (courts should only consider well pleaded facts "not the legal conclusions that may be drawn from the pleaded facts."); Smith v. Nixon, 807 F.2d 197, 200 (D.C. Cir. 1986) (plaintiff must allege specific and concrete facts).

Plaintiff alleges that hearing examiner Kostbar made a statement indicating that plaintiff's race would be a part of his consideration of the case.  But plaintiff's self-serving

assertion is insufficient to support his claim of invidious discrimination.  Examiner Kostbar

denies making such a statement or taking action based upon plaintiff's race. <u>See</u> Declaration of

Jeffrey Kostbar at ¶ 2.  Moreover, there is nothing in the record to show that plaintiff's race

played any part in any hearing conducted by hearing examiners for the Commission or in the

Commission's decision.  <u>Smith v. Nixon</u>, 807 F.2d at 200 (requiring nonconclusory allegations

of evidence of bad intent to proceed).  Plaintiff has failed to show that Kostbar's conduct violated

a clearly established statutory or constitutional right and he is entitled to qualified immunity.

Plaintiff claims that because the defendant Wilson's mother, Carol Wilson Muller, had

been previously employed by the Parole Commission, the defendants Posch and Robertson took

adverse action against plaintiff as a favor for Carol Wilson Muller, because plaintiff had filed

grievances against her son.  Plaintiff alleges that his case manager, Albert Wilson, made

statements implying that the defendants would take action adverse to the plaintiff as a favor to

Carol Wilson Muller.  These alleged statements, even if true, do not form the basis for a

conclusion that the defendants acted with discriminatory intent.  <u>McCleskey v. Kemp</u>, 481 U.S.

279, 292 (1987) (rejecting Equal Protection claim because plaintiff failed to demonstrate that

decision-makers in his case acted with discriminatory intent).  There is nothing in the record to

support plaintiff's claim that the defendants took adverse action against him as a favor for Carol

Wilson Muller or that their conduct violated clearly established statutory or constitutional rights

in this regard.  <u>See</u> Posch Decl. at ¶2; Robertson Decl. at ¶ 2.  Therefore, Posch and Robertson

are also entitled to qualified immunity on this claim.

Plaintiff has failed to prove that the defendants violated his constitutional right to equal

protection under the law because of his race or because of grievances he brought against his case

manager. Instead, the administrative record shows that plaintiff was denied parole after the Commission corrected an oversight and considered significant information concerning the prisoner's propensity for violence and the evidence that he may commit violent crimes if he is released.

### 4.    Plaintiff's Conspiracy Claims Are Invalid

Plaintiff claims that defendants Posch and Gray violated his constitutional right to a fair hearing by conspiring with his case manager to "cover up" the fact that the case manager would not let plaintiff attend his hearing on November 30, 2004. See Complaint ¶ 24. Plaintiff has no constitutional right to be present at his reconsideration hearing, in fact, he has no constitutional right to have the Parole Commission conduct a parole hearing. Brandon v. D.C. Board of Parole, supra at 649. The right to be present at the hearing is provided by the Commission's regulations. See 28 C.F.R. § 2.13. A regulation cannot be enforced under § 1983. Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997) (holding that a regulatory violation, like a violation of state law, is not inherently sufficient to support a § 1983 claim); Three Rivers Center for Independent Living v. Housing Authority of City of Pittsburgh, 382 F.3d 412 (3rd Cir. 2004) (holding that private parties cannot enforce regulations under § 1983 when the regulations do not construe a personal right created by the statute creates). However, § 1983 does provide a remedy for the violation of regulations where Congress has clearly directed regulatory action. Samuels v. District of Columbia, 770 F.2d 184, 199 (D.C. 1985) (enforcing housing regulations pertaining to grievance procedures where Congress explicitly directed HUD to issue grievance regulations). The burden is on the plaintiff to show that Congress "affirmatively or specifically contemplated private enforcement when it passed the relevant statute." Id. Plaintiff has not demonstrated that

Congress had such an intention, therefore,  he cannot enforce 28 C.F.R. § 2.13 under § 1983.

The record of the events that occurred on November 30, 2004 are clear: petitioner refused to attend his parole hearing of his own volition.  See Ex. X.  Defendant Posch's only communication with defendant Gray was an email dated December 17, 2004 in which she instructed Gray to send plaintiff's I-24 form dated November 30, 2004, or to have plaintiff complete one before he was transferred to another institution.  See Posch Decl. ¶ 8.  According to 28 C.F.R. § 2.11-02 (attached as Exhibit EE), a prisoner's refusal to attend his parole hearing can be construed as a waiver of parole.  If it was plaintiff's intent to waive parole, but he had not yet signed parole form I-24 waiving parole, Posch informed the case manager that plaintiff could do so before he was transferred to another institution.  See Posch Decl. ¶ 8.  There is no evidence that defendant Posch had conspired with defendant Gray to cover up the fact that he was denied attendance at the parole hearing, in violation of his constitutional rights.

In sum, the allegations do not, as a matter of law, give rise to the assertion of a violation of a clearly-established constitutional right.  Davis v. Scherer, 468 U.S. 183, 190 (1984) (holding that officials do not lose their qualified immunity merely because they violated some statute or administrative provision).

Accordingly, plaintiff has failed to allege facts that would form the basis for a finding that he was deprived by these defendants of rights, privileges, and immunities secured by the Constitution or laws of the United States and his claim should be dismissed.  Fendler v. U.S. Parole Commission, 774 F.2d 975, 980 (9th Cir. 1985) (holding that plaintiff had not alleged a violation of a clearly established constitutional right); Chapman v. City of Detroit, 808 F.2d at 465; Cruz v. Skelton, 543 F.2d 86, 89 (5th Cir. 1976), cert. denied, 433 U.S. 911 (1977) (the

mere expectation of parole release while in lawful custody is not a grievous loss which implicates

due process protection).

Further, as noted <u>supra</u>, the United States cannot be sued without its consent (<u>see, e.g.</u>

<u>Ickes v. Fox</u>, 300 U.S. 82, 96 (1937), <u>reh'g denied</u>, 300 U.S. 640 (1937) and the United States

has not consented to be sued under the civil rights statutes.  <u>See,e.g.</u> <u>Hohri v. United States</u>, 782

F.2d 227, 245 n.43 (D.C. Cir. 1986), <u>reh'g denied</u>, 793 F.2d 304 (D.C. Cir. 1987), <u>rev'd on other</u>

<u>grounds sub nom.</u>, <u>United States v. Hohri</u>, 482 U.S. 64 (1987); <u>Unimex, Inc. v. United States</u>

<u>Dep't of Housing and Urban Dev.</u>, 594 F.2d 1060, 1061 (5th Cir.1979); <u>Graves v. U.S., et al.</u>, 961

F. Supp. 314, 318 (D.D.C. 1997); <u>Biase v. Kaplan</u>, 852 F. Supp. 268, 289-90, n.18 (D.N.J. 1994)

("[N]either § 1985 nor any other provision of the Civil Rights Act may provide the basis for an

action against the United States nor a federal agency.").  Accordingly, plaintiff's conspiracy

claims against the federal defendants - including the individuals in their official capacities - are

barred for lack of subject matter jurisdiction.

### 5.   Plaintiff Fails to State a Valid Conspiracy Claim Pursuant to 42 U.S.C. §§ 1985 and 1986

Plaintiff sues for unlawful conspiracy, pursuant to 42 U.S.C. §§ 1985 and 1986 as

indicated on the face of his complaint.  For a Section 1985(3) claim, a plaintiff must allege: "(1) a

conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive,

directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act

in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States." <u>Graves v. U.S.</u>, 961 F. Supp, 314, 320

(D.D.C. 1997) (<u>citing</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 91 (1971)); <u>Hobson v. Wilson</u>, 737

28

F.2d 1, 14 (D.C. Cir. 1984) (stating that § 1985 applies only to tortious interferences with the rights of others that is motivated by class-based invidiously discriminatory animus); Jackson v. Thornburg, 702 F. Supp. 9, 12 and n.5 (D.D.C. 1988) (prisoners are not a suspect class entitled to heightened scrutiny under an equal protection analysis).

Conclusory allegations of conspiracy do not meet the pleading standards of § 1985. Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 378 (M.D. Pa. 1995), aff'd, 91 F.2d 122, cert. denied, 117 S.Ct. 739 (suspicions, speculation, and feelings are not sufficient to support claim that university officials conspired to deprive employee and his family of their civil rights.); Williams v. Reilly, 743 F. Supp. 168 (S.D.N.Y. 1990) (claim that failed to allege membership in protected class, contained vague and conclusory allegations of conspiracy, provided no specific factual basis for allegation that defendants conspired together, and provided no specific acts by defendants, failed to state a claim under § 1985).

Plaintiff has failed to prove that the defendants agreed to conspire against him based on his race and he has failed to allege specific acts taken by any of the defendants in furtherance of the alleged conspiracy.  The plaintiff has failed to allege that there was ever an agreement or "meeting of the minds" between any of the defendants to revoke his parole because of his membership in a protected class; such a "meeting of the minds" is an essential element of a conspiracy claim.  Breckenridge 403 U.S. at 102; McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993); Pro-Choice Network of W. New York v. Project Rescue W. New York, 799 F. Supp. 1417, 1429 (W.D.N.Y. 1992); Taliaferro v. Voth, 774 F. Supp. 1326, 1332 (D.Kan. 1991); Chambers v. Omaha Girls Club, 629 F. Supp. 925, 936 (D.Neb. 1986).

Plaintiff cannot merely allege that defendants acted lawfully, but with an unconstitutional

motive to support an allegation of violation of plaintiff's rights.  Hobson v. Wilson, 737 F.2d at

29 (requiring nonconclusory evidence of such intent).  The plaintiff's § 1985 claim also must be

dismissed because at the pleading stage, a plaintiff is required to allege a connection between the

overt acts, the furtherance of the conspiracy and the plaintiff's injury.  Watson v. Clark, 716 F.

Supp. 1354, 1358 (D.Nev. 1989) (granting motion to dismiss where plaintiff failed to allege

specific facts supporting alleged conspiracy:  "In order to support a claim for conspiracy, plaintiff

must allege facts showing particularly what acts a defendant performed to carry the conspiracy

into effect, how those acts fit into the conspiracy, and how injury to the plaintiff was foreseeable

therefrom.") (citing Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959), overruled on other

grounds, Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962)); Ibarra v. Las Vegas Metro. Police Dept.,

572 F. Supp. 562, 565 (D.Nev. 1983); Morpurgo v. Board of Higher Educ., 423 F. Supp. 704,

713 (S.D.N.Y. 1976) (granting motion to dismiss and holding that complaints based on

conspiracy provisions of the Civil Rights Act cannot rest on vague and conclusory allegations but

must allege with at least some degree of particularity the overt acts by defendants that were

reasonably related to the promotion of the conspiracy).

Finally, the plaintiff's § 1985 claim must be dismissed because he has failed to allege that

any of the defendants' actions were motivated by some class-based, invidiously discriminatory

animus.  United Bhd. of Carpenters and Joiners of Am. v. Scott, 463 U.S. 825, 835 (1983)

(holding that § 1985(3) requires allegation of some class-based, invidiously discriminatory

animus behind conspirators' actions); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7

F.3d 1085, 1088 (2d Cir. 1993) (holding that for plaintiff to make out § 1985(3) claim, allegation

of conspiracy must be motivated by some racial or perhaps otherwise class-based invidiously

30

discriminatory animus).  Beyond alleging that he belongs to an arguably-protected classes, the

plaintiff has failed to allege a single fact that would support a claim that any of the defendants'

actions were taken because of his status as a member of any protected class.  The allegation that

the defendants "have conspired in such a manner to ensure that [the] plaintiff remains

unemployed/underemployed," Comp. at 3, does not sufficiently state a claim under § 1985(3), as

a matter of law.

Having failed to state a claim under 42 U.S.C. § 1985, plaintiff cannot maintain an action

under 42 U.S.C. § 1986.  Rodriguez ex rel. Rodriguez-Hazbun v. National Center for Missing

and Exploited Children, et al, No. Civ. A. 03-120 (RWR), 2005 WL 736526 (D.D.C. Mar. 31,

2005) (dismissing claim under § 1986 for failure to state a claim under § 1985); Trerice v.

Pedersen, 769 F.2d 1398, 1403 (9th Cir.  1985)(holding that absent a valid claim under § 1985,

that no cause of action is provided under § 1986); Mollonow v. Carlton, 716 F.2d 627, 632 (9th

Cir. 1983), cert. denied, 465 U.S. 1100, reh'g. denied, 466 U.S. 954 (1984).  "Section 1986 is a

companion to Section 1985(3) and provides a cause of action against persons who, knowing that

a violation of § 1985(3) is about to be committed and possessing the power to prevent its

occurrence, fail to take action to frustrate its execution."  White v. Williams, 179 F. Supp. 2d

405, 421 (D.N.J. 2002), citing, Rogin v. Bensalem Tp., 616 F.2d 680, 696 (3d Cir. 1980), cert.

denied, 450 U.S. 1029 (1981).

Plaintiff's section 1985 and 1986 claims that the BOP and U.S. Parole Commission

employees are in a conspiracy against him to deprive him of his constitutional rights must fail.

Fatal to his suit, he cannot establish a conspiracy for purposes of a section 1985 and 1986 claim.

A civil conspiracy is "a combination of two or more persons acting in concert to commit an

31

unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between parties 'to inflict a wrong against or injury upon another,' and 'an overt act results in that damage.'" Graves v. U.S., 961 F. Supp, 314, 320 (D.D.C. 1997). Even though the court in that case found that there was enough evidence for the jury to have found a conspiracy, the facts of this case do not. Even with a liberal reading of these complaints, they fail to allege facts that would constitute a conspiracy. The District of Columbia Circuit has explained that, in a conspiracy setting, "unsupported factual allegations which fail to specify in detail the factual basis necessary to enable [the defendants] to intelligently prepare their defense, will not suffice to sustain a claim of government conspiracy to deprive [plaintiff] of [his] constitutional rights." Martin v. Malhoyt, 830 F.2d 237, 258 (D.C. Cir. 1987). Plaintiff has made no factual showing that would support his conclusory statement that a conspiracy existed. Therefore, his claim should not be permitted to continue and should be dismissed.

### G.   Plaintiff Not Entitled to Damages for Mental or Emotional Distress

In his complaint, the plaintiff seeks actual damages from the BOP, the U.S. Parole Commission, additional actual damages jointly and severally from the individual defendants, and punitive damages from the individual defendants. Under the PLRA,[3] "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." Thus,

---

[3] The PLRA applies to prisoners incarcerated in federal correctional facilities. 42 U.S.C. § 1997e(h). The PLRA applies to all actions filed under Federal law. Porter v. Nussle, 534 U.S. 516, 524 (2002) (unlike the PLRA's predecessor statute, "which encompassed only § 1983 suits, exhaustion is now required for all 'action[s] . . . brought with respect to prison conditions,' whether under § 1983 or 'any other Federal law.'"). The Plaintiff is currently incarcerated at USP Lewisburg, thus, this action falls within the purview of the PLRA.

Section 1997e(e) precludes recovery of damages for mental or emotional injury in the absence of a physical injury.  This PLRA provision limits the remedies available by prohibiting recovery of damages for mental or emotional injury in civil actions where no physical injury is shown.  As the title of the provision makes clear, § 1997e(e) constitutes a "Limitation on Recovery."  By prohibiting such recovery, § 1997e(e) discourages the filing of unsupported claims for mental and emotional injuries, and accomplishes Congress' purpose in limiting unmeritorious prisoner lawsuits.  This is in keeping with well-settled tort principles that existed at common law.  See W. Page Keeton et al., Prosser & Keeton on the Law of Torts, Ch. 2, § 12, at 64 (5th Ed. 1984).

The rule is that an inmate's physical injury must be more than *de minimis* to overcome the requirement of 42 U.S.C. § 1997e(e) and to permit recovery for emotional distress.  Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003); Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003), cert. denied 541 U.S. 1012 (2004) (minor nausea allegedly caused by brief placement in unsanitary cell insufficient to preclude dismissal under § 1997e(e)); Mitchell v. Horn, 318 F.3d 523, 531 (3rd Cir. 2003) (insomnia and loss of appetite allegedly caused by confinement in unhygienic cell insufficient to fulfill physical injury requirement); Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002) (back and leg pain insufficient because by inmate's own admission it was "nothing too serious"); Harris v. Garner,190 F.3d 1279, 1287 (11th Cir. 1999) ("bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence and pain" allegedly caused when inmate forced to "dry shave") reh'g en banc granted on other grounds and opinion vacated 197 F.3d 1059, opinion reinstated in part on reh'g, 216 F.3d 970 (2000); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (bruised and sore ear allegedly caused by excessive force by prison guard).

33

One district court decision defined a physical injury that qualifies as more than *de minimis* as follows:

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] de minimis, would . . . require more than the types of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (citation omitted). This view is consistent with Congress' purpose in enacting § 1997e(e). Congress, like the common law courts before it, was suspicious that mental or emotional injuries could be easily feigned or exaggerated; it is unlikely that a minor physical injury of the type often incurred in everyday life would result in mental or emotional injury.

The statute governing prospective relief in the PLRA, codified at 18 U.S.C. §3626(a)(1), puts substantial limits on injunctive and other "prospective relief." "Prospective relief" is defined in the statute as "all relief other than compensatory monetary damages." 18 U.S.C. 3626(g)(7). See Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002) (punitive damages are a form of "prospective relief" restricted by the PLRA). Specifically, the Act provides, "prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in Porter v. Nussle, 534 U.S. 516, 525 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right,

and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. 3626(g)(7).

In this case, even under the facts alleged by plaintiff, neither the BOP or the U.S. Parole Commission or the individual defendants have violated any rights of the plaintiff and plaintiff has suffered no physical injury.

### H.    Plaintiff is Not Entitled to Declaratory Relief

The plaintiff is seeking declaratory relief that the defendants violated the law.   In determining the appropriateness of a declaratory judgment, the Court will look at (1) whether declaratory judgment will definitely settle the controversy; (2) the availability of other remedies or other proceedings that may be pending; (3) the convenience of the parties; (4) the equity of the conduct of the declaratory judgment; (5) the prevention of 'procedural fencing'; (6) the state of the court record; (7) the degree of the conflict between the parties and (8) the public importance of the question to be decided.  28 U.S.C. § 2201 (a); see also Mittleman v. United States, 919 F. Supp. 461, 470 (D.D.C. 1995), modified on other grounds, 104 F.3d 410 (D.C. Cir. 1997).

Declaratory relief is applicable when there is an "actual controversy," which has been defined as "a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Chaplaincy of Full Gospel Churches, et al. v. Johnson, 276 F. Supp. 2d 79, 81 (D.D.C. 2003).  Even in those cases, however, the District Court retains the discretion to withhold declaratory relief.  Id.  Declaratory relief has the same force and effect of a final judgment.  28 U.S.C. § 2201 (a).

All of the defendants' actions, especially those related to the determination of plaintiff's parole were done in accordance with the BOP and U.S. Parole Commission policies  and

procedures and did not violate any constitutional right of the plaintiff although he believes otherwise. The plaintiff fails to assert his allegations with sufficient specificity as to support a finding about the rights allegedly involved.

### I.    Plaintiff Does Not Have a Valid § 1983 Claim

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). To constitute state action for purposes of acting under state law, "'the [alleged] deprivation must be caused by the exercise of some right or privilege created by the State. . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. (citing Luger v. Edmonson Oil Co., 457 U.S. 922, 936-37 (1982)) (citations omitted). As set forth below, the Bureau of Prisons and Parole Commission are neither a "person" nor a "state actor" for purposes of § 1983. Accordingly, the Court lacks jurisdiction to hear plaintiff's claims.

### 1.    The USPC and the BOP Are Not Persons Under 42 U.S.C. § 1983

Section 1983 permits suit against a "person" acting under color of law of any state. The United States Parole Commission and the Federal Bureau of Prisons are not "persons" for purposes of this statute, and therefore cannot be sued under § 1983. See Al Fayad v. C.I.A., 229 F.3d 272 (D.C. Cir. 2000) (government is not a "person" absent affirmative evidence in statute of intent to include sovereign government within term). See also Hindes v. F.D.I.C., 137 F.3d 148, 158 (3d Cir. 1998) ("We find no authority to support the conclusion that a federal agency is a 'person' subject to section 1983 liability, whether or not in an alleged conspiracy with state

36

actors. We, therefore, hold that federal agencies are not 'persons' subject to section 1983 liability."); Hoffman v. U.S. Dep't of Housing & Urban Dev., 519 F.2d 1160, 1165 (5th Cir. 1975) ("a federal agency is also excluded from the scope of section 1983 liability").

### 2.    The USPC and the BOP Do Not Act Under Color Of State Law

Plaintiff cannot demonstrate that either the Parole Commission or the BOP acted "under color of state law" in its conduct towards him.  The Parole Commission and the BOP are federal agencies and its Commissioners and employees are federal employees.  Section 1983 does not apply to federal officials acting under color of federal law.  See Heck v. Humphrey, 512 U.S. 472, 480 (1994) (stating that section 1983 provides access to a federal forum for claims of unconstitutional treatment at the hands of state officials).  See also Williams v. United States, 396 F.3d 412 (D.C. Cir. 2005) (holding that a federal official making an arrest pursuant to state law cannot be sued under § 1983 because his authority to act comes from Federal law not state law).

The actions complained of here – relating to parole regulations and a parole hearing – were taken by federal officials in their federal capacities pursuant to a federal statute: the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998).  Section 11231 of the Revitalization Act, a federal statute, directs the Parole Commission to "assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code."  111 Stat. 745.

Accordingly, this Court lacks jurisdiction to consider plaintiff's claims.  As such, this

37

Court should dismiss the complaint for lack of jurisdiction.

**J.    The Case Must Be Dismissed or Transferred for Improper Venue**

In contrast to an official capacity claim against a federal employee, which seeks relief

from the United States, an individual-capacity claim against a federal employee seeks recovery

from the personal financial assets of the employee.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

Venue in this Bivens case is governed by the provisions of 28 U.S.C. §1391(b), which

provides in applicable part:

> (b)     A civil action wherein jurisdiction is not founded solely on diversity of
> citizenship may, except as otherwise provided by law, be brought only in (1) a
> judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial district in which any defendant
> may be found, if there is no district in which the action may otherwise be brought.

In Stafford v. Briggs, 444 U.S. 527, 542 (1979), the Supreme Court stated that this provision,

rather than the more permissive venue provisions of 28 U.S.C. §1391(e), are applicable in Bivens

actions:

> What emerges is that the bill's author, the Committees, and the Congress intended
> nothing more than to provide nationwide venue for the convenience of individual
> plaintiffs in actions which are nominally against an individual officer but are in
> reality against the Government.  A suit for money damages which must be paid
> out of the pocket of the private individual who happens to be--or formerly was--
> employed by the Federal Government plainly is not one "essentially against the
> United States," and thus is not encompassed by the venue provisions of Section
> 1391(e).

Noting that Congress did not intend to require "those serving their Government the burden of

defending personal damages actions in a variety of distant districts. . . ," Id., 444 U.S. at 545, the

Court found that these federal officers should be treated like others who are sued for personal

damages, and the provisions of 28 U.S.C. §1391(b) should govern.

Plaintiff has provided no evidence that any of the federal defendants reside in the same State, none of the events giving rise to the claim occurred within the District of Columbia, and plaintiff does not reside in the District, therefore, venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v. Reno, et al., 911 F. Supp. 11, 15 (D.D.C. 1996). Plaintiff's complaint involves allegations related to actions that took place in Kansas, not in the District of Columbia. This case should therefore be dismissed under Rule 12(b)(3), Federal Rules of Civil Procedure.

To the extent that any portion of this case might withstand the PLRA dismissal arguments made below, it is inappropriately brought in the United States District Court for the District of Columbia. This is an individual claim that involves factual issues arising in the District of Kansas. Nevertheless, 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

The United States Court of Appeals for the District of Columbia has held that cases such as this one should not be heard in the District of Columbia, but should instead be transferred to the judicial district where the prisoner is incarcerated, pursuant to § 1404(a). ". . . [M]any, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." Starnes v. McGuire, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc). The Court of Appeals recognized that even if venue is technically appropriate, "there is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be

39

litigated in the District of Columbia." Id. at 925. Rather, where the records, witnesses, and counsel for the case are located near the prison and there is no issue of national importance raised by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is indicated." Id. at 933; see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May 2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who incarcerated elsewhere.")

The D.C. Circuit in Starnes set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia. Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. Starnes, 512 F.2d at 929-33.

In this case, these factors strongly support the appropriateness of transfer. This is a pro se case so communication with counsel is not an issue. The majority of witnesses and records that would be involved in litigating plaintiff's claims are all at USP Leavenworth, Kansas. There is no national policy challenge. Problems associated with moving an inmate for hearings are minimal, now that the PLRA provides for telephonic pre-trial hearings "to the extent practicable." See 42 U.S.C. 1997e(f). To the extent it survives dismissal under the PLRA as discussed below, this case should be transferred to the District of Kansas, where plaintiff was housed when the matters giving rise to this complaint took place. It is there that most of the witnesses and documents involved are located, and where jurisdiction and venue can be readily achieved. Nevertheless, defendants urge that dismissal, not transfer, is appropriate. Compare Simpkins v. District of Columbia, 108 F.3d 366 (D.C. Cir. 1997) (appropriate to dismiss in

40

substantial <u>Bivens</u> actions rather than transfer).

## **<u>CONCLUSION</u>**

_____For all of the foregoing reasons, this action should be dismissed.  If it is not dismissed, it

should be transferred to the District of Kansas pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,


____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


____/s/_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249; (202) 514-8780 (facsimile)

41

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of January, 2006, I caused service of the

foregoing to be made on the *pro se* plaintiff:


Oliver Boling-Bey
Reg. No. 36688-118
Lewisburg USP, F Unit
P.O. Box 1000
Lewisburg, PA 17837


                                      ____/s/_____
                                        JOHN F. HENAULT, D.C. Bar # 472590
                                        Assistant United States Attorney