## MEMORANDUM

**Name: Boling, Oliver**             **Reg No: 36688-118**

To .....................................................: **The Commissioners**
Hearing Date .....................................: 12/3/03 (Memo dictated on 5/13/04 re: the 12/3/03 hearing)
Examiner ............................................: Stephen J. Husk
Institution ...........................................: Leavenworth USP

---

See the memorandum dated 5/3/04 from Pamela A. Posch, Attorney, USPC, for background information regarding this case.

Specifically, this examiner conducted a hearing in the above case on 12/3/03 at the USP Leavenworth. The hearing was conducted as a Rehearing Following the Revocation by the DC Board of Parole. Specifically, on 7/5/2000 the DC Board of Parole had ordered to revoke parole for criminal and non-criminal violations and consider for reparole by 2/7/2003. The DC Board of Parole had made findings that the subject had used a deadly weapon, had traveled out of limits without approval and had committed 3 counts that involved the Failure to Obey Laws.

At the hearing on 12/3/03, the examiner discussed with the subject the parole violation behavior that resulted in the DC Board of Parole's Order of 7/5/2000. Ms. Posch's memo raises questions regarding whether the examiner had all of the information contained in Sections 2 and Section 3 of the parole file, when conducting the hearing on 12/3/03 and making a release recommendation to parole the subject after the service of 72 months, on 4/9/2005. After reviewing the information in the file, including the Hearing Summary and all of the new information that was contained in Sections 2 and 3 and summarized in Ms. Posch's memo, I have determined that I did not have the information available at the time of the hearing on 12/3/03. I do believe that the information is significant and would affected my recommendation relative to reparole in this case. Thus, I believe that there is new adverse information in this case that was not available at the hearing on 12/3/03 and I am recommending that the Commission reopen this case for a Special Reconsideration Hearing.

At the hearing on 12/3/03, I rated the parole violation behavior as Category 5 severity, because it involved Assault With a Weapon and administrative violations of parole. I assessed the guidelines as 48-60 months. I made a recommendation to parole the subject after the service of 72 months. My recommendation for a decision 12 months above the top of the guideline range was based primarily on the subject's history of assault and the fact that his current violation behavior involved assault on a woman. Specifically, the subject had prior conviction for Sodomy and Assault With a Dangerous Weapon from 1975 and also had an Armed Robbery conviction from 1983. He admitted at the hearing on 12/3/03 that the 1975 Sodomy offense involved a sexual encounter with a woman who he claimed was a prostitute. Given his conviction for a sex offense against a woman, I viewed his current violation behavior of assaulting a female victim with a weapon, as indication that he was a more serious risk to commit further assaults against women. However, I did not have any specific information that would lead me to believe that the victim of the current violation behavior was at any heightened risk, based upon the information that I had available at that hearing.

At the time of the hearing, the only evidence of the parole violation behavior that I possessed was the summary provided in the pre-hearing assessment dated 11/6/2003 by Joseph M. Pacholski. This gives a very brief

description of the assault behavior on the victim, as the subject striking her with a cane, resulting in a finding of violation by the DC Board of Parole. Furthermore, under Charge No. 4, it describes the 4/10/99 arrest for Criminal Trespassing, Disorderly Conduct and Stalking, Second Degree, in West Hartford, CT, and states that the subject was sentenced to time served. It gives no further information relative to the offense conduct.

I also note in my Hearing Summary that, at the hearing on 12/3/03, I questioned the subject relative to whether he had had contact with the victim of the parole violation charges since his incarceration on the violator term. The subject specifically advised me that he no longer has any contact with his ex-wife.

After reviewing Sections 2 and 3 of the file, pursuant to Ms. Posch's memorandum, I believe that there is substantial evidence that the victim of the parole violation behavior is at a heightened risk for further violence committed by the subject. I do believe that the evidence of the heightened risk would have affected my recommendation relative to reparole and/or the appropriate special conditions in this case. I specifically note this because my reasons for an upward departure were based solely on the subject's prior history of violence and the evidence that the current violation behavior involved assault against a female. The recommendation was not made, however, with knowledge of the specific risk that Ms. Lynn Gonzalez may face if the subject is released again to the community via parole. I will outline the new significant information below:

1. In Section 2 of the parole file, there is an Affidavit in Support of Arrest from the Superior Court of the District of Columbia describing a 3/31/99 incident. Specifically, it states that, on 3/31/99, the complainant (Ms. Gonzalez) advised police that, on 3/31/99, a verbal argument became physical. The subject became upset and retrieved two walking canes from closet and started hitting her throughout the body with one of the canes. The complainant stated that she cried out for him to stop, but he did not stop his assault, causing her to receive injuries, which consisted of a bruise to her back, buttocks and left arm. Furthermore, the complainant advised police that the previous day, 3/30/99, she had another verbal argument with the subject over their relationship, which escalated into a physical altercation. During that altercation, the complainant alleged that the subject punched her in the face with a closed fist, in the chest several times. He also punched her in the nose, causing her nose to swell. In addition to the Affidavit in Support of Arrest, there is a typed statement by the complainant, which provides more details of these incidents from 3/30/99 and 3/31/99. Significant in this statement is information provided by the complainant that, after the incident, the subject left a message for her on 4/5/99 to "Drop the charges." On 4/6/99, the subject called her twice more. On 4/7/99, the subject called and sent flowers. The information shows evidence of repetitive assaults against this woman, followed by letters of apology and attempts to reconcile with her.

2. Another document that was not available to me at the hearing on 12/3/2003 was a 2/17/2000 letter from Thomas Garcia, Assistant State's Attorney from the State of Connecticut (hereafter CT). This letter had attachments, which included Incident Narratives from CT relative to the charged parole violations of Criminal Trespass, Stalking, Second Degree, and Violation of Protective Order. The cover letter for this information from Mr. Garcia specifically states that the subject pled guilty to the charge of Disorderly Conduct and Criminal Violation of a Protective Order and that the State entered a nolle pros finding on the charges of Stalking in the Second Degree and Criminal Trespass. However, his letter also states that this was a Plea Agreement that was arrived at based on an understanding that the subject would face substantial exposure to incarceration based upon his parole violations in the District of Columbia.

There are several items that I believe are significant in the Case Report Narrative from the West Hartford Police Department that accompanied that letter from the State's Attorney's Office. Specifically, the complainant reported that she was so concerned for her safety after the subject had seriously assaulted her in DC, that she "Fled to CT" to stay with her sister. Furthermore, after the assault, the complainant alleged that the subject told her that if she ever went to police that he would kill her and would also come up to CT and kill the rest of her family. On 4/6/99, the West Hartford Police Department received from the Superior Court of the District of Columbia's copies of Protective Order barring the subject from going near or having contact with the complainant. Notwithstanding that Order, on 4/10/99, the subject had gone to CT, gone to the sister's residence and knocked at the front door several times. When he failed to get a response, he went to the rear door and knocked again several times. The complainant did not answer, because she was frightened and knew it was him. The Case Report Narrative also indicates that, prior to going to the home, the subject had been calling the sister's phone machine all week, trying to get information about the complainant. He came to the sister's dog grooming shop and told her that he wanted to see the complainant.

Note that, at the hearing on 12/3/03, the subject admitted that he violated a Protective Order but also provided inaccurate information re: the source of this order. Specifically, the subject stated that the victim's sister had the Protective Order issued. It appears from the documents provided by the CT authorities that the Protective Order was issued in the District of Columbia, after the subject had assaulted his wife. The subject was still under the restrictions contained in that Order, when he came to CT. Furthermore, at the time of the hearing on 12/3/03, it is not clear to me as the examiner that the victim had specifically moved from the District of Columbia for fear of her safety based upon her repeated assaults by the subject.

3. The complainant's assertion that she had moved from DC to CT to stay away from the subject is supported further by a letter dated 2/25/2000 by Victim Advocate, Deardre Smith, of the Office of the U.S. Attorney in the District of Columbia. In that letter, Ms. Smith states that, on 4/1/99, their office made arrangements for the complaint to stay in a safe place, while they waited for the execution of the PV Warrant against the subject for assaulting his wife.

Attached to the letter from Ms. Smith is a statement dated 2/12/2000 from victim Lynn Boling. Specifically, in that statement, she states that the subject was filled with rage, jealousy and violence and that he was obsessed with the idea that she must been having sex with the men that she worked. She further states that, from the time he got out of prison, he slapped, punched, kicked, smothered her with pillows and threatened him with knives, a hammer, as well as beating her with a cane. She further states that he talked about how he wanted to start torturing her by burning her all over her body with lighted cigarettes and murder her. He also stated that he was trying to figure out what to do with her body after he killed her. She states that he is very charismatic, but without warning can suddenly become enraged and violent. It further states that he had stated on many occasions to her that if she ever called police, that he would kill her.

All of the above information was available to the DC Board of Parole when it revoked the subject per the Notice of Board Order dated 7/5/2000. However, none of this information was available to me at the hearing on 12/3/2003, nor was it described in detail in the PHA dated 11/6/2003, that was available to me at the time of the hearing. I believe this information is evidence of repetitive, assaultive behavior and attempts to continue to have contact with a victim despite court orders to the contrary and the victim's attempts to get away from the subject.

The above information relates to incidents of assaultive and threatening behavior before the subject was arrested on the PV Warrant in 2000. However, I also believe that there is significant new information in this case that has occurred since his parole was revoked. Specifically, Section 3 of the Parole Commission's file contains at least 5 letters that the subject wrote to the victim c/o Ms. Sandra Shields, the victim's sister. While these letters do not appear to contain any new threats against the victim, they do support a pattern of behavior that would indicate that the subject will continue to attempt to reestablish a relationship with this victim despite her making it very clear that she has no interest in reestablishing a relationship and making it clear that she is fearful for her safety. Furthermore, what I find especially significant is that, at the hearing on 12/3/03, I asked the subject whether he had had any contact with the victim since his incarceration on the parole violator term. Subject specifically told me that he had not. Notwithstanding this statement, there was evidence in Section 3 of the Commission's file that he had attempted to contact her via letter through her sister on at least 5 occasions. I find this a very significant piece of evidence that should be addressed with the subject.

In sum, I find that at the hearing on 12/3/03, I did not have all evidence available relative to the descriptions of the parole violation behavior. Although this would not affect the severity rating of the violation behavior, it may impact a release decision in this case and also may impact the decision re: the appropriate special conditions once he is released again to the community (via either parole or mandatory release). As noted above, the concern is that this evidence addresses a heightened risk to the victim based on the specific nature of the parole violation behavior and his continued attempts to contact the victim after his incarceration. This is significant new information and provides evidence that is contrary to the statements that the subject made at the hearing on 12/3/03. Based upon this information, I recommend that the Commission reopen this case pursuant to 28 CFR, Section 2.28(f) for new adverse information and schedule for a Special Reconsideration Hearing on the next available docket.

Per Ms. Posch's memo, I will refer this case to Hearing Examiner, Kathleen Pinner, who was the examiner panel member who reviewed this case after the hearing. Ms. Pinner will have to provide written statement relative to whether she recalls considering the information outlined in this memorandum when voting to parole the subject after the service of 72 months. As noted in Ms. Posch's memo, some of the documents were misfiled in Section 2 of the file and belonged in Section 4 of the file.

**Recommendation:** Pursuant to 28 C.F.R. §2.28(f), reopen and schedule for a special reconsideration hearing on the next available docket.

SJH/SDS
May 13, 2004