## MEMO REGARDING HEARING

**Name: Boling, Oliver**                                              **Reg No: 36688-118**

To .....................................................: **File**
Hearing Date ......................................: 9/22/04
Examiner ...........................................: Samuel R. Robertson
Institution ..........................................: Leavenworth USP

---

Reply to the Attention of S. Robertson to File.

~~FOIA EXEMPT – DO NOT DISCLOSE~~ Disclosable *[handwritten]*

The above-captioned prisoner was scheduled for a Special Reconsideration Hearing (Continued Rehearing After Revocation) to occur the week of 9/20/2004 at USP Leavenworth, KS. The prisoner did appear for this hearing as scheduled and was accompanied by his attorney/representative; Jean Phillips, Director of Defender Project, University of KS, School of Law. Attorney Phillips was accompanied by her intern, Norah Clark, a law student.

This examiner would note that the prisoner's parole was revoked by the DC Board of Parole on 7/10/2000 for criminal and non-criminal violations to include: Criminal Trespass and Stalking, Second Degree and Assault With Deadly Weapon. The DC Board also ordered a Rehearing to occur on 2/7/2003.

Special Reconsideration Hearing (Rehearing After Revocation) was conducted by the USPC on 12/3/2003. Via NOA dated 12/19/03, the Commission determined that the most serious aspect of the violation behavior, Assault With Deadly Weapon, was rated as Category 5. The offense severity assessment of 5, in conjunction with a SFS of 5 produced a base parole guideline of 48-60 months. A decision to parole on 4/9/2005, after the service of 72 months, was ordered with the Special Drug and Special Mental Health Aftercare Conditions.

The decision to parole after the service of 72 months represented a departure above the guidelines and was warranted on a determination that the prisoner represented a more serious risk then his SFS reflected. Cited specifically was the prisoner's criminal history reflecting convictions for Assault With Deadly Weapon and Sodomy in 1975; convictions for Armed Robbery in 1983, which coupled with his 1999 charge for Assault With Deadly Weapon on a female victim (occurring while on parole from the 1975 and 1983 convictions) established the qualitative determination for more serious risk.

Subsequent to this hearing, the Commission issued a NOA dated 6/5/2004 to reopen and schedule a Special Reconsideration Hearing pursuant to 28CFR, 2.28(f), New Adverse Information.

A memorandum from the Commission's Legal Office, dated 5/3/2004, details much of the evidence (certainly adverse to the prisoner) that was not discussed and/or considered at the December 2003 Reconsideration Hearing.

Subsequently, the Rehearing was convened on 7/13/2004 at USP Leavenworth. It is noted that a victim/witness (specifically the victim of the 1999 Assault) did appear, and did provide a statement on the record

The hearing was not concluded, however, as the prisoner waived this hearing. The Commission correctly concluded upon review that the waiver constituted actually a continuance of hearing, inasmuch as the prisoner was not entitled to waive this Rehearing After Revocation.

Nonetheless, it is noted that the prisoner, for whatever reason, refused or did not hear the tape recording of the victim/witness statements. It is noted that the Commission had prepared a disclosure packet for this hearing, dated 6/10/2004, and that, the prisoner did apparently review this packet on/around 6/24/2004. The packet did contain a Hartford, CT, Police Report and several letters that he (the prisoner) apparently wrote to his sister.

The examiner at today's hearing, of course, noted that the prisoner is now represented by counsel, this appointment occurring approximately 3 weeks prior to today's hearing.

Counsel for the prisoner did acknowledge, that they had been allowed to review the prisoner's file but offered that nothing in the BOP's file was relevant to the conduct that would be considered at today's hearing.

To make a very long story short, counsel obviously objected regarding disclosure or more specifically, the lack of it. This examiner did contemplate the argument that the decision to revoke and to assess the offense severity at Category 5, had been made at prior hearings, in the presence of the prisoner. Well certainly this is true, and those decisions are essentially immutable, the Commission has reopened the case in contemplation of assessing the conduct as more severe then Category 5 and/or at least determining that new evidence would establish that the prisoner's risk is even greater then previously established. In this regard, the Commission arguably will rely both on previously disclosed and considered evidence as well as new, not previously disclosed evidence.

This examiner did provide a brief reading from Examiner Kostbar's memorandum summarizing the victim/witness statement. The tape of the victim's statement was not available at this hearing however. Moreover, other documents referred to in the reopening discussion have not been disclosed.

The issue of disclosure, both in determining what and/or what not, could be disclosed was beyond what could be managed at an in-person hearing. As indicated, this examiner did provide a brief summary of the victim/witness statement as was provided in Kostbar's memorandum for continuance. Other relevant documents, as mentioned in the reopening memorandum, as well as the original material, may need to be disclosed however. In any event, the Commission will need to resolve this.

The second issue, which is only mentioned in passing, involved the prisoner's contention that this examiner should recuse himself from this hearing. In this regard, the prisoner alleged that his CM, Mr. Gray, had been told ostensibly by another CM, Mr. Wilson, that Wilson's mother, Carole Wilson Mueller, a former Commission employee, and who had also worked at the Leavenworth Penitentiary until retirement, that her friend (yours truly) had been called out of retirement by the Commission, specifically for the purposes of doing the prisoner "in", as it were.

Painful as it was, this examiner did address the allegations on the record as being ludicrous and absolutely without substance. Moreover, this examiner dismissed any notion that such a farcical charge would be the basis for this examiner's recusal.
Off the record, this examiner would privately conclude that staff may have made some remarks of the nature alleged, just to mess with the prisoner. Certainly, the staff exercised bad judgment and to some extent, have

**Boling, Oliver, Reg. No. 36688-118**

been clearly embarrassed by this judgment, in that they were present in the Hearing Room, when the prisoner, in every sense, fronted them off.

In short and for purposes of conclusion, this examiner did continue this case for disclosure, inasmuch as there was really no other alternative.

SRR/SDS
September 28, 2004