UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Oliver Boling-Bey          )
    Plaintiff          )
              )
              )          Civil Action No. 05-1732
              )                    (JDB)
    v.          )
              )
              )
U.S. Parole commission, et, at. )
    Defendants.          )

Plaintiff's Opposition To The Defendant's Motion To Dismiss
Or In The Alternative Transfer Venue

Plaintiff Oliver Boling-Bey submits this opposition to the
U.S. Commission et, al (Defendants) motion to dismiss or in the
alternative transfer venue. Defendants request that the Court
dismiss plaintiff's complaint title 42 U.S.C. § 1983, 1985(3),
1986 Racial discrimination, racial Conspiracy, Vindictiveness,
Racial conspiracy Cover-up, Racial Favors given by the U.S.
Commission and Federal Bureau of Prisons in Violation of
Plaintiff's Fourteenth Amendment and Fifth Amendment to the U.S.
Constitution on the grounds that (1) lack of subject matter
jurisdiction, (2) in personam jurisdiction (3) improper Venue,
(4) and failure to state a claim upon which relief may be
granted. In support of Plaintiff's motion of opposition, the
Court is respectfully referred to the accompanying memorandum of

FILED

MAR 3 2007

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

points and authorities and attachments thereto, and to the
entire (actual) record in this case.

> "Declaration in Opposition to Defendants' motion to
> dismiss or in the alternative transfer venue."

Oliver Poling-Bey declares under penalty of perjury:

> **Memorandum Of Points And Authorities In Support
> Of Plaintiff's Opposition Motion To Defendants'
> Motion To Dismiss Or In The Alternative To
> Transfer Venue**

## Factual Background

Plaintiff was sentence <u>30 years</u> ago to a term of
consecutive sentences which total 23 years to 71 years by the
Superior Court for the District of Columbia in 1976. Plaintiff
was sentence under "D.C. code violations." After serving a
total of 23 years he was granted parole and sent to D.C. halfway
house on November 16, 1998 and did not sign the parole
certificate until February 16, 1999.

While serving these aggregated sentence plaintiff's wife
in 1988 contacted plaintiff through a third party and plaintiff
who was at that time housed at Lompac Ca. U.S.P. plaintiff's
former spouse married plaintiff in the prison visiting room.

11 years later, plaintiff was up for parole and his wife
wrote to the D.C. Parole Board in his behalf, see exhibit (A)
highlighting the character of plaintiff as she knew him and the
positive traits she found in plaintiff.

Plaintiff began working for the D.C. Dept. of Public works
and while in the halfway house plaintiff's spouse would suggest

that plaintiff have his checks sent to her residence which later
became plaintiff's.

Plaintiff's wife began to control when he would go, what
jobs to take, and what clothes he should wear, she would remind
plaintiff that she was there for him 11 years while he was in
prison and that he needed to follow her lead, and that she
sacrificed a lot to go against her family wishes to enter into a
interracial marriage.

Plaintiff often would discuss with his wife where his
checks were going because he did not see any things purchased with
his checks, later plaintiff learned that his spouse had been
using crack and when plaintiff asked her to get help she would
refuse.

Plaintiff began to talk with other women at his job and
began to be estrange from his wife who on March 7, 1999 told
plaintiff she will have him put back in prison and suffer
because she suffered and sacrifice a lot for 11 years and even
went against her family wishes to marry him and that she found
me in prison and back to prison he would go.  On April 2, 1999
plaintiff was arrested and charged with assault with a deadly
weapon allegedly striking her with a walking cane however this
charge was dismissed because wife failed to come to court,
plaintiff was called by wife's sister and told that wife was in a car
accident, and this would not had happen had plaintiff not
cheated on his wife.  On April 10, 1999, plaintiff felt guilt
and went to Connecticut to see how he could help, once there
plaintiff went to wife sister's work and was given the address

to wife's other sister's house who was to go with plaintiff to the hospital where wife allegedly was at. Once plaintiff arrived at the resident where the sister was to meet him police cars arrived and plaintiff was arrested. Plaintiff was charged with criminal trespass disorderly conduct, and stalking (2). Contrary to defendant's claim in (response pg. 2, 4 paragraph) plaintiff was not convicted, he pleaded to the charge of a restraining order and disorderly conduct on December 9, 1999, with time served. On February 2, 2000, plaintiff was returned back to the District of Columbia and contrary to defendant's statement (on pg. 2 paragraph 7) that revocation occurred on March 15, 2000. Revocation did not occur until 6 months later on June 2000, a violation of plaintiff's due process entitlement to have revocation with in 60 days see exhibit (B). The then D.C. Board of parole found plaintiff guilty of exhibit (C) striking wife with cane and use of deadly weapon, exhibit D, failure to obey all laws and review at the hearing concerning the letter from U.S. Attorney Thomas R. Garcia from Connecticut to U.S. Attorney's office to Diedre Smith. (2) counts of violation of restraining order see exhibit E and criminal conduct traveling without permission see exhibit F. Also the letter exhibit G that spouse claims that plaintiff tried to kill her, stomped and kick ect. see exhibit H the D.C. Board found that letter not creditable and did not find plaintiff guilty of any claims in that letter. On account of the above violations the D.C. Board of parole gave plaintiff a 3 year

4

sanction was being appropriate and schedule a reparole for February 7, 2003.

On or about October 2, 2003, plaintiff's case-manager at that time Albert Wilson told plaintiff that he was schedule for a parole hearing in December, i was allowed to review my sentence computation and notice inaccurate time structure, Wilson told plaintiff he would check with his boss to correct it. Thereafter Wilson said he talked with his boss and she Ms. Ashman said plaintiff violated parole and for domestic and therefor Wilson should leave files as is then Wilson stated

that he did not know my wife was "white" and that its a bad scenario" for plaintiff to be in. On December 3, 2003, before entering the parole hearing room I asked Wilson about my progress report, Wilson told plaintiff "don't worry about no progress report, plaintiff should be lucky he is alive to be at a meeting. These incidents were reported see exhibit I. On December 9th, 2003, plaintiff was called to Wilson's office and Wilson began to holler at plaintiff and state "you know you shouldn't have married a "white women" and that he didn't approve of such and O.J. caused him to feel that way plaintiff told Wilson he resent that manner of talk, Wilson then said man to man, he don't like niggers, especially D.C. niggers. This was heard by another inmate who was at the door of Wilson's office awaiting to see Wilson and attached as exhibit J a affidavit and verification in reference to the statement made by Wilson.

On February 27, 2003, plaintiff filed grievance in regards

5

to the December racial overtures see exhibit I. On or about April 2004, case-manager Albert Wilson was removed as plaintiff's case-manager and Wilson's "buddy" Mike Gray was assigned as plaintiff's case-manager who was known throughout the prison as "anti-black" and was previously grievanced against for racial "comments and threats" against another inmate see exhibit K.

On January 19, 2004, the commission issued a grant for parole on plaintiff for April 9, 2005 after having served a total of 6 years, a additional 3 years more in sanctions though the D.C. Board of Parole deemed previously that 3 years were appropriate for the violations."

Plaintiff who is a "District of Columbia Superior" Court Committee petitioned to the District Court in Topeka Kansas against the Commission for not using D.C. Parole Board rules and regulations at plaintiff's reparole hearing on December 3, 2003, and that the commission lacked good cause for going outside their guidelines, and impermissible double counting."

On June 5, 2004, plaintiff received a notice of action from the U.S. Commission indicating that now, the Commission has reopen plaintiff's parole for adverse information not considered in his file in making the decision on December 3, 2003.

On June 25, 2004, plaintiff was stopped in the hallway by case-manager Albert Wilson and Mike Gray, and stated he talked to plaintiff former wife and they plan to pay for her flight to Kansas for the July 13, 2004, reopening hearing, and that they

6

have connections in the U.S. Commission and have sent paper work to get things going and that Carol Wilson Muller worked for the U.S. Commission for 14 years and Pamela Posch "owe" Wilson's Mother a favor or two.  Grievance was filed on this see exhibit L.

On July 13, 2004, the first of (3) "reopening" hearings were conducted as plaintiff approached the room examiner Kastbar, case-manager Wilson and Gray, Gray told plaintiff that his former wife was at the prison today and they heard how a "nigger" can act, then in chorus all present said they held a white power meeting with her and examiner Kastbar stated " we have the power nigger boy".  Plaintiff was pushed inside the room Wilson and Gray hollered that, "they will teach plaintiff not to smack a "white woman" or will suffer the fate of Emmit Till", Wilson reminded plaintiff that his mother and U.S. Attorney Pamela Posch are friends and the Commissions will do favors for those in the circle "especially against niggers."  As the hearing started Kostbar introduced a recorded tape taken by former wife, plaintiff told examiner that he was not afforded " disclosure" and would like a postponement to receive disclosure and that the U.S. Commission Attorney Pamela Posch claimed that (1) misrepresenting the facts and (2) discovery of documents in plaintiff's file, the hearing was postponed until September 22, 2004, before plaintiff left the room Kostbar gave plaintiff a I-24 form to indicate that I desire to postpone until next hearing date, plaintiff "wrote"this on the area that said waive and Kostbar drew a line through it and put his

7

"initial" beside it.    See exhibit M.    On July 28, 2004, plaintiff was placed in solitary confinement by orders of Wilson and Gray for a claimed threat assessment plaintiff was told plaintiff on December 17, 2004, plaintiff filed grievance concerning being in confinement without a hearing.

On August 4, 2004, case-manager Mike Gray came to the cell plaintiff was in and threaten to cut plaintiff's throat grievance was filed on the threat.    On September 1, Mike Gray was ordered by the Warden to give plaintiff a phone legal call while returning plaintiff to the cell again told plaintiff that Wilson's Mother is a ex-U.S. Commission Examiner and she contacted Samuel R. Robertson who was known for giving "favors" and will teach plaintiff not to file grievance against him and Wilson.    On September 22, 2004, the U.S. Commission held a second reopening hearing, at that hearing disclosure was not afforded plaintiff, plaintiff's attorney informed Robertson examiner, that she have a problem with his holding a hearing because plaintiff learned that he and Wilson's Mother Carol Wilson Muller work together at the Commission and were friends thus created a conflict of interest because plaintiff filed "racial grievances" against her son Alber Wilson.    And that his attempt to hold a hearing knowing he never afforded plaintiff "disclosure".    Examiner Robertson said he would have the hearing anyhow, plaintiff's attorney objected, Robertson took a 5 minute recess and continued the hearing to a later date and said he and Carol Wilson Muller were friends but he felt he could be

impartial.    On November the 30th, 2004, a third reopening hearing was schedule by the U.S. Commission case-manager Gray came to plaintiff cell and told him that he's going to tell the parole commission I refuses to attend the hearing plaintiff filed a letter to commission stating that he <u>did not</u> refuse and desired to attend.    U.S. Commission attorney Pamela Posch contacted Mike Gray "urgently"told him, Gray to get plaintiff to sign waiver on a I-24 form before he leaves for Lewisburg see exhibit (N) Gray told attorney Posch that plaintiff leaves for Lewisburg in the morning.

## Dismissal Standard

The Supreme Court in <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972) said that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1975) the Supreme Court said that in considering a motion to dismiss a pro-se complaint should be held to "less strict standards than a motion drafted by a lawyer.

## Racial Conspiracy (1985(3), 1986, 1983, Civil Rights Conspiracy

Civil "conspiracy" is a combination of "two or more" persons acting in concert to commit an unlawful act, or to commit a "lawful act by unlawful means the principle "element" of which is an agreement between parties "to inflict a wrong

9

against or injury upon another  and an overt act that results in damage.  Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir. 1973)(citation omitted).  A plaintiff seeking redress "need not" prove that each participant in a conspiracy knew the "exact limits of the illegal plan or identity of all participants therein.  Hoffman-LaRoche, Sn., v. Greenburg, 447 F.2d (7th Cir. 1971) at 875.  "An express agreement among all the conspirators is not a necessary "element" of a civil conspiracy.  The participants in the conspiracy must share the general conspiratorial objective  but need not "know all the details of the plan designed to achieve that objective, or possess the same motives for desiring the intended conspiratorial results.  To demonstrate the existence of a conspiratorial "agreement", it simply must be shown that there was a "Single plan", the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."  Hampton v. Hanrahan 600 F.2d 600 (7th Cir. 1979), reversed in part on other grounds 466 U.S. 754, 100 S.Ct. 1987, 64 LE.d.2d 670.  The Defendants' answers do not respond to multiple factual paragraphs in the complaint these paragraphs must be taken as admitted Rule 8(d), Federal Rules Civil Procedure.

Defendant Albert Wilson case-manager for the Federal Bureau of Prison and named as a defendant in plaintiff's complaint: has not only failed to respond to the complaint he has not denied the claims listed in plaintiff's complaint and the defendant's counsel has not offered a declaration or answered the claims in

the answer motion filed before this Court.    Mike Gray case manager for the Federal Bureau of Prison an named as a defendant in plaintiff's complaint has not only failed to respond to the complaint, he has not denied the claims listed in plaintiff's complaint and the defendants' counsel has not offered a "declaration" or "answered" the claims in the answer motion filed before this Court.    Thus failure to answer or respond to multiple factual claimed paragraphs in the complaint, that paragraphs is deemed taken as admitted, see Rule 8(D) Federal Rules of Civil procedures, see Rule 55(a) Federal Rules Civil Procedures.

Case manager Albert Wilson in #2 of plaintiff (complaint) altered plaintiff's files, called plaintiff niggers, a smart ass coon, and he's lucky he's alive #7 of plaintiff (complaint) Wilson told plaintiff they talked to plaintiff's wife and they plan to "personally" pay for her flight to Kansas and that his Mother Carol Wilson Muller worked for the U.S. Commission for 14 years and that Attorney Pamela Poasch owe her a "favor" or two. "At #8 of (plaintiff complaint) Wilson heard examiner Kostbar state, "we have the power nigger boy" and Wilson and Gray hollered that they will teach plaintiff not to smack a "white" woman or face suffer the fate of Emmit Till."    Additionally Wilson again "reminded" plaintiff that his Mother is Pamela Posch friend and the "Commission will do favors for those in the circle especially against niggers", those exhibits in the complaints verify the material fact that has not been denied. Case manager Mike Gray in (plaintiff's complaint) #3 had

11

grievances against him for "racial comments, and threats in which he do not deny by declaration, nor did counsel deny these claims in his motion to dismiss.   Mike Gray in (plaintiff's complaint) #7 heard and stated he help pay for plaintiff's wife to come to Kansas and witness bragging by Wilson of his Mother's connection.

Mike Gray at #8 of plaintiff's (complaint) told plaintiff that his wife was at the prison and they heard how a nigger can act" and they held a white power meeting and was present when examiner Kostbar stated to plaintiff we have the power nigger boy," Gray pushed plaintiff inside the hearing room and hollered that they will teach plaintiff not to smack a "white" woman or plaintiff will suffer the fate of Emmit Till, and witness Wilson brag about the influence his mother have with the Board and will do "favors" for those in the circle especially against niggers." Wilson and Gray had plaintiff placed in solitary at #10 in plaintiff's (complaint).    On August 4, 2004, at #14 of plaintiff's (complaint) Mike Gray told plaintiff at #11 of plaintiff's (complaint) and threaten to cut plaintiff's throat. Gray in plaintiff's (complaint #12) told plaintiff that Wilson's Mother Carol Wilson Muller was a ex-U.S. Commissioner and she contacted Samuel R. Robertson who came out of retirement and was known for giving "favors and he will teach plaintiff not to file grievances against him and Wilson."   These actions in which Defendants did not dispute the material fact must be taken as true see Rule 8(D) F.R.C.P..   Albert Wilson and Mike Gray conspired based on "Race" and a agreement between the two to inflict a wrong and to injury plaintiff.   Wilson and Gray acted

12

in concert with Jeffery Kastbar U.S. Examiner, Samuel Robertson U.S. Examiner and U.S. Commission Attorney Pamela Posch.

Overt acts by U.S. Commission Attorney Pamela Posch U.S. Examiner Jeffery Kostabar, U.S. Examiner Samuel Robertson. Albert Wilson and Mike Gray knew that a agreement to "inflict a wrong" against plaintiff which violated his fifth and fourteenth Amendments to the U.S. Constitution. Examiner Jeffery Kostbar who did call plaintiff a "nigger boy" in which (2) inmates witness Examiner Kostbar call plaintiff and say I got the power nigger boy, see exhibit O and P. On July 13, 2004, Examiner Kostbar held a parole re-opening hearing, Examiner Kostbar who is a "experience" examiner, conducted a hearing without affording plaintiff disclosure in violation of 28 C.F.R. §2.55 title disclosure introducing a tape made on the day of the hearing and attempting to use it further violated plaintiff's due process entitlement title 18 U.S.C. §4208(b)(2) which states Requires that at least "thirty" days prior to any parole determination proceeding, the prisoner shall be provided with .... reasonable access to a report or other document to be used by the Commission in making its determination. See **Anderson v. U.S. Parole .Comm.**, **793 F.2d 1136.** The examiner in the furtherance of the "conspiracy" for told by case manager Wilson and Gray shared the general conspiratorial affective agreement in the "single plan" to violate plaintiff's statutory hearing rights thereby "inflicting wrong" and injury resulting in damage," and intentionally, maliciously, capriciously, arbitrarily violate plaintiff's statutory hearing rights under

13

Parole Commission and Reorganization Act when it base its finding from documents it intend to use and do not make it accessible in <u>advance</u> of hearing.

Plaintiff was given a I-24 form during the meeting see exhibit M dated 7-13-2004, on the form plaintiff signed, initial, a request for disclosure but <u>no</u> <u>initial</u> indicating that plaintiff was given disclosure". Also on the form plaintiff wrote would like to "postpone until next hearing" and signed at the area where I wrote the statement which was on the waive line though it <u>was</u> <u>not</u> plaintiff's desire - examiner got angry and crossed my statement out and placed his initial JSK. More "interesting" and in the furtherance of examiner Kostbar involvement and "<u>personal</u>" unlawful <u>means</u> (4) months after he inflicted a wrong by intentionally holding a hearing without disclosure on July 13, 2004, in exhibit N (see) the e-mail from attorney Pamela Posch to case-manager Gray trying to get a I-24 signed, at the bottom of this exhibit it states (12/20/04 No Response To This E-Mail "<u>1 HAVE PROSSED CASE</u>". Sign JSK in which is Jeffery S. Kostbar. This indicated that examiner Kostbar <u>did</u> <u>not</u> <u>care</u> if the I-24 form was signed in accordance with U.S. Commission policy 28 CFR 2.71(c) he intended to "inflict a wrong" against plaintiff in furtherance of a "single plan", notwithstanding the fact that examiner Rob Haworth was the examiner who held the November 30th hearing where plaintiff was denied to be present, arguably Mr. Haworth was in <u>better</u> <u>position to process the case</u>. This illustrates examiner Kostbar

14

desired motive and objective to "perfect" injury upon plaintiff.
Additionally, in a "unprecedented" move in exhibit R Kostbar
invaded the report made by Rob Haworth and recommended a 15 year
reconsideration date based on un-corroborated threat to kill in
which the D.C. Board never determined, or revocated on, nor
in the "warrant application" identifying the act, which
constituted a parole violation at all, see exhibit S, and
Kostbar "ignoring" and disrgarding Rob Haworth findings
demonstrates the obsessed nature and malice intent to give 15
years was indeed a act to perfect his single plan to "inflict
injury" where the D.C. Board in which revocated plaintiff did
not violate plaintiff's parole, on the claims made by examiner
Kostbar.     These formentioned "acts" are "consistent" with
insidious discriminatory animus, and in agreement with case
manager Albert Wilson and Mike Gray who did not deny the
verified material claims made in plaintiff's (complaint) and
"foretold" that Wilson's Mother Carol Wilson Muller will use
her "contacts" to injure plaintiff and examiner Kostbar did work
as co-workers with Carol Wilson Muller and Mr. Kostbar is the
"link" case-manager Wilson spoke about, as a "contact" in the
stated conspiracy."  On September 22, 2004, U.S. Commissioner
Samuel Robertson conducted a (2) reopening hearing at this
hearing plaintiff had a attorney who "objected" to examiner
Robertson continuation of a hearing without disclosure and that
because plaintiff has leveled racial complaints against case
manager Albert Wilson who works at the prison and Mother Carol

15

Muller worked under him (Robertson) as a employee examiner, while Robertson held the position as the U.S. Parole Commission Chairman" see plaintiff (complaint at #14 is a conflict of interest[1] and he should recuse himself" on tape plaintiff requested for discovery of that hearing. Robertson argued that he was going to have the hearing "anyhow". This statement view in its context demonstrate the intent to hold a "appeared" lawful act, "but by "unlawful" means, a component of conspiracy,[1] examiner Robertson who is a experience parole examiner and ret. U.S. Chairman knew or should have known his conducting a parole hearing without disclosure was a violation of plaintiff's "statutory" hearing rights under Parole Commission and Reorganization Act to base its parole determination hearing on documents that was not accessible to plaintiff in "advance" of hearing 18 U.S.C.A. § 4201 et. seg. title 18 U.S.C. § 4208(b) requires that "at least thirty days" prior to any parole determination proceeding, the prisoner shall be provided with reasonable access to a report or other documents to be used by commission, see **Anderson supra at 1137**, and the Commission's failure to provide plaintiff with reasonable access violated his rights. See **Wilden v. Fields, 510 F.Supp. 1295, 1312 (W.D. Wisc. 1981)** This was done by a friend, and co-worker of Carol Wilson Myuller who's son Albert Wilson foretold to plaintiff that his mother has "connections" in the U.S. Commission and Mike Gray telling plaintiff that Samuel Robertson was "known" for giving favors and will teach

16

plaintiff not to file grievance on Gray and Wilson see plaintiff (complaint at #12). Since defendants never declared Wilson or Gray's statements untrue in plaintiff complaint," this "link" in concert committed a agreement to inflict a wrong to injure plaintiff on behalf of furtherance the conspiracy to do damage against plaintiff for Carol Wilson Muller who's son foretold of the clout she had with the Commission. More importantly in defense (response) and declaration by Samuel Robertson did not deny his "link" to Albert Wilson and Mike Gray or deny that he know Carol Wilson Muller, nor that he does favors on their behalf.

Examiner Robertson in exhibit T in his memo regarding the hearing on September 22, 2004 examiner Robertson "knew" before the Sept. 22, 2004 hearing that plaintiff did not receive disclosure at (1) the tape of victims statements were not available, therefore it was no need to proceed with a hearing, however, Robertson by "unlawful means" held a hearing with prior knowledge that disclosure never occurred. Moreover in exhibit T at #2) examiner Robertson display arrogance and wash it in your face when he boast of the material fact stated that her [friend] ("yours truly") had been called out of retirement by the commission specifically for the purpose of doing the prisoner "in" [as it were]. This statement as it were, read in its proper context is "as it was." This is admittance by examiner Robertson and if it was being sarcastic it revealed a "link". Thus the actions of examiner Robertson to maliciously, willfully, arbitrarily, capriciously, and with intent did conspire in agreement between parties to inflict a wrong against

17

plaintiff and his overt acts were motivated by race invidiously discriminatory animus. These actions did cause injury and violated plaintiff fifth and fourteenth to the U.S. Constitution. U.S. Parole Commission Attorney Pamela Posch acted in concert with Albert Wilson, Mike Gray, Feffery Kostbar and Samuel Robertson in the furtherance of a "conspiracy" against plaintiff to commit a lawful act by unlawful means to "inflict" a wrong and injury to plaintiff. Defendant U.S. Attorney Pamela Posch in her declaration did not respond to plaintiff's factual paragraph in plaintiff's (complaint) pg.4 (F) that she and case manager Albert Wilson's Mother had a "relationship" and did "sway" the outcome of plaintiff hearing by Carol Wilson Muller's "influence". U.S. Attorney Pamela Posch did not deny or respond to claims made by Albert Wilson that Pamela Posch owed Wilson's Mother a favor or two at #7 of plaintiff's (comlaint) U.S. Attorney Pamela Posch did not deny or in her declaration deny that plaintiff did notify her by letter that he was denied his November 30th, 2004, hearing at # 15 of plaintiff's (complaint). Accordance to Rule 8(d) F.R.C.P. states if the defendant answer does not respond to one of the factual paragraphs in the (complaint) that paragraph is taken as admitted." The Court is asked to admit as true admit the above identified paragraphs not responded to by defendant U.S. Attorney Pamela Posch who by virtue of not responding to claims in the (complaint) of plaintiff that must be taken as true in accordance to Rule 8(d) F.R.C.P. indicates that Wilson's Mother

18

had influenced her decision and that she owed a favor or two.[33]
This demonstrates a "agreement" between the parties to inflict a
wrong upon plaintiff, the conspiracy in which U.S. Attorney
Pamela Posch maliciously, capriciously, sadistically, committed a
lawful act by unlawful means. Attorney Posch in her declaration
contradicts herself, defendant Ms. Posch declaration at #8 she
states.. base upon her recollection of the case, the I-24 form
was needed for Boling's file to indicate whether he chose to
waive parole because "he could not waive special reconsideration
hearing see exhibit U."    In fact Boling ["could not waive a
reconsideration hearing"], why did Ms. Posch in her e-mail push
Gray to obtain a waiver if the hearing could not be waived even
if plaintiff signed a waiver?   The e-mail exhibit-N Ms. Posch
stated at (1) "I know he did not appear for the hearing, there
is a "box where he signs waiving parole.[34]   Arguably, since
plaintiff could not waive a special reconsideration hearing
(though in this case plaintiff desired to attend his November
30, 2004, hearing) what meaningful purpose would it be to have
plaintiff sign a I-24 waiving parole?  How come attorney Posch
did not order another "Special Reconsideration" hearing since
plaintiff was not present at his (November 30, 2004, hearing)
that attorney Posch claim in her declaration plaintiff could not
waive?   (Defendant Examiner) Jeffery Kostbar who was not the
examiner holding the November 30, 2004, hearing but stated on
the e-mail [no response to this e-mail "I have processed" the
case "initial JSK indicate the intent of both, attorney Posch

and Kostbar to pursue only one ("single plan)" in which was to inflict a wrong against plaintiff without regard to fair treatment."    Thereafter plaintiff was given a 15 year reconsideration date in excess that can be given to a "D.C. Code Offender", violating even their own rules, regulations, polices and procedures - see 28 C.F.R. 2.75 title "reconsideration proceedings" states (b)The Commission [s]hall not set a reconsideration in "excess" of (5) five years".    Thus the 15 years reconsideration that's lodged against plaintiff is "illegal" and direct "link" by attorney Pamela Posch who is aware of this violation and has "not cured" the inflict of the wrong and is deemed a conspiratorial overt act to appease and complete a favor for "case-manager Albert Wilson's Mother Carol Wilson Muller that was "threaten" to plaintiff that this would happen by case manager Albert Wilson. Moreover, attorney Posch claimed that plaintiff could not "waive a reconsideration hearing" but failed to say why a special reconsideration was not conducted towards the November 30, 2004, special reconsideration; (when it was mistakenly determined that plaintiff waived his July 13, 2004, hearing. They conducted a re-hearing in that matter a (second time over.) see exhibit W. Attorney Posch has seemly implied that her frantic request in the e-mail to case manager Mike Gray for a I-24 form were to "preserve" plaintiff's rights. This is incorrect, and Ms. Posch is being less than candid with this Court," attorney Posch wanted to legally "seal" the "deal", she wanted to used a signed waiver to deny plaintiff no relief." Defendant Posch suggested

20

to Gray (have him sign it (I-24)) before he leaves or if he refuse, interpreted in logic get a I-24 form and "note" plaintiff reused. contrary to Ms. Posch statement," according to 28 C.F.R. § 2.71(c) title application for parole states: a prisoner may knowingly and intelligently (waive) [any] parole on a form [I-24] provided for that purpose." However, a prisoner who declines (refuse) either to apply for or waive parole consideration shall be deemed to have "waived" parole consideration.    The e-mail from Atty. Poch to Mike Gray directing him to the box "where he" signs waiving" parole was in a "effort" to complete the record, and secure the needed document to claim plaintiff did not want parole." On November 30th, 2004, plaintiff sent a letter to Ms. Posch a declaration making known he did not refuse to attend the hearing and that Mike Gray lied about plaintiff denying to attend his November 30, rehearing Rob Haworth examiner in his letter dated April 8, 2005, stated that he acknowledge plaintiff's letter and affidavit and he have a memo from Mike Gray and he chose to believe Gray," see exhibit X.  This is in direct violation of the Commission Rule 28 C.F.R. 2.71 which states a form is used to determine if a inmate waive his parole - I-24 from.   There was no form signed by plaintiff desiring not to attend his hearing nor did case manager Gray a "adverse" defendant produce a I-24 form or any witness who could verify that plaintiff refuse to attend his hearing."   Therefore the commission violated title 28 U.S.C. 4208(E) which states, "the prisoner [shall] be allowed to appear and testify on his own behalf at the parole determination proceeding."   The examiner violated

21

plaintiff's statutory right of due process." Attorney Posch
Knew and was personally involved in the due process deprivations
and fail to correct them. U.S. commission Attorney Pamela Posch
did "conspire" to "conceal" the facts, plaintiff had
"irrefutably" adduced "sufficient evidence to establish a
"conspiracy" by attorney Posch to "conceal" the facts and the
enjoining defendants, examiners U.S. Commission Jeffery S.
Kostbar and Samuel robertson, case manager Albert Wilson and
Mike Gray employees of the Federal Bureau of Prisons.
Conspiracy to "cover-up" thereby obstructing legitimate efforts
through judicial redress interferes with "Due "Process" right to
access to the court which is protected under Civil rights act 42
U.S.C.A. § 1985(2)(3) under the fourteenth amendment.

All defendants in this action are [Caucasions] plaintiff is
[African Decent]. In this case there was a "meeting of the
minds," there was a "agreement" and a single plan" the principle
element of which is an agreement between the defendants to
"inflict a wrong against or injury upon another and an overt act
that results in damage. Evidence including proof that
defendants sought to prevent plaintiff from asserting his rights
because he is "African decent", there was proof of racial
statements in the cause of a parole hearing, evidence of
threats and racial epithets" and use of Federal Positions in the
furtherance of a conspiracy, the arbitrary, calous disregard to
follow rule, regulations and procedure to inflict a wrong to
plaintiff is sufficient to support inference that "conspiracy
was "motivated" at least in part by invidious discrimination

22

against plaintiff as required for recovery under applicable Civil Rights statue 42 U.S.C.A. § 1985, 1985(2,3) 1986. The cited animus actions support findings." Parratt v. Talor, 451 U.S. 527, 531, 535 101 S.Ct. 1908, 1910-1913, 68 LE.d, in which the Supreme Court said, "even a negligent "deprivation" of a constitutional right is sufficient to invoke that right," see Griffin v. Breckinidge, 403 U.S. 88, 102, 91 S.Ct. 1790 (1971) Footnote omitted, Bell v. City of Milwaukee, 746 F.2d. 1205, 1233 (7th Cir. 1984), Brauwer v. Haronitz, 535 F.2d 830, 839-40 (3rd Cir. 1976). Thus plaintiff motion should not be dismissed, but permitted to proceed further."

### Vindictiveness And Retaliation
### Not New Adverse Information :
### Order Injunctive Relief:

The Commission's argument for dismissal, however, rest on the erroneous premise that the Commission has "unrestricted discretion to invent "new" irrational reasons for reopening plaintiff's presumtive parole date, of April 9, 2005, conducted arbitrary and capricious reconsideration hearings deprive plaintiff of his "legal rights by manner in which the reopening's were conducted, held a hearing without permitting plaintiff to attend, intentionally deny disclosure impermissible use of U.S. Commission guidelines, regulations on plaintiff who is a"D.C. offender and D.C. Parole statues were to be applied, conspiring to inflict injury based on vindictiveness, retaliation, and race." The Commission has essentially emptied it's wall lockers of "manufactured" internal notes, and

23

memoransda's of the Commissions which were created in conjunction with plaintiff's parole review proceedings and were appended to the notice of action in the "administrative record (but not forwarded to plaintiff). The Defendants contends that these "contemporaneous" notes and memoranda's which do reference to plaintiff vengeful former wife "show that the relevant commissioners were motivated not by vindictiveness but by a concern for the "alleged" severity of plaintiff's crime as reinforced by victim letter." This is "preposterous", and now the Commission has engaged in a obvious mood to hood-wink, and the "stripes painting" on a horse white and desire someone to call it a zebra." The defendants in their motion to dismiss (on pg. 19 paragraph 3) states plaintiff's case was reopened of the "discovery" of "new" adverse information, and that plaintiff conclusion to the revisiting the parole decision to "narrow" of a decision and cited **Davis v. Brown**, F.Supp.2d. 110, 115 (D.D.C. 2004) is inapposite", in "fact" all of the defendants' case law found on pg 19, 20 21 of the defendants' (motion to dismiss) is inapposite to plaintiff's case." Firstly, plaintiff was revocated on (5) violations on June 30, 1999, 1. travel without approval from parole officer (2), assault with a deadly weapon (walking cane) (3) 3 failures to obey all laws. The Connecticut case and notes, letters from the U.S. Attorney that the "Commission" claims it overlooked on (pg 20 bottom paragraph) were the "evidence the D.C. Parole Board considered and determined, and rendered a 3 year hit" on account of the information and set a reparole hearing for February 7, 2003.

see exhibit C, D, E, F, G, H, . . . . . . .). Therefore the
"claimed" overlooked information the commission used to reopen
plaintiff's hearing and to rescind his presumptive parole date
was not "new adverse information" see **Weinstein v. U.S. Parole
Com'n, 902 F.2d 1451 (9th Cir. 1990)** the Court said, "not only
was the information in existence at the time of plaintiff's
December 3, 2003 reparole hearing but it was also "considered"
by the "D.C. Parole Board" at the initial hearing. The new
documents came to light following the "initial" hearing and
prior to reopening. Moreover, on December 3, 2003, plaintiff
appeared before hearing examiner Stephen J. Husk who conducted
a reparole hearing "using U.S. Commission guidelines "contrary"
to applicable Commission regulation 28 C.F.R. 2.80(4) titled
Guidelines for D.C. Code offenders (4) states: Prisoners
considered under the former District of Columbia Board of
Parole. For a prisoner whose "initial" hearing was held before
August 5th, 1998, the Commission shall render its decision by
reference to the guidelines of the former D.C. Board of Parole
in effect on August 4, 1998, (plaintiff initial hearing occurred
July 24, 1995, thus examiner Husk arbitrarily abused his
discretion see exhibit #11 (D.C. Board Parole Order dated July
24, 1995). Also see **Bryson v. U.S. Parole Com'n, 776 F.Supp 497
(N.D. Cal. 1991), Johson v. Williford, 821 F.2d 1279, 1288 (7th
Cir. 1987), Cosgrove v. Thronburgh, 703 F.Supp. 995, 1001 (D.C.
1988)** and used the "Commission guidelines" even after plaintiff
objected." at that hearing, plaintiff was not afforded

25

disclosure".   Examiner Husk, in his hearing summary exhibit #12 stated that at bottom of pg. 2  the examiner had no other "information" describing this incident available at today's hearing (Connecticut visit to wife's resident.)   Though the regulations at 28 C.F.R. 2.72 title hearing procedure (a) states in (middle) paragraph it states:  "If the examiner, determines that the available "file material" is "not" "adequate" for this purpose, the examiner may order the hearing to be postponed "to the next docket so that the "missing" information can be requested.  Additionally with "missing" information recorded, and on record,  ___  exhibit #13 . 4  commissioners "agreed" to grant plaintiff a presumptive parole date for April 9, 2005. Thus the exhibits in defendants' (motion to dismiss) exhibits R pg. 1 (examiner Husk's claim that at (paragrph "middle") stated "I do believe that the information is significant, and would affect his recommendation relative to parole in this case, thus he believe there is new adverse information, in this case that was not available to him?  Additionally at exhibit (R)(pg. 3 bottom top paragraph) examiner Husk states, all the above information was available to the D.C. Board of Parole. "Therefore Husk knew the D.C. Board "considered" the evidence he claimed as "new adverse information" in which it was not." Defendants submitting the memo form Husk claiming he would have rendered a different decision is not only a dishonest ploy by defendants, but a "out right deceptive practice" given to the court dressed as the truth, but infested with fraud.  At exhibit

26

# 12 attached, Examiner Husk's summary memo "said" he did not have a "complete file" and did not invoke" 28 C.F.R. 2.72 title "hearing procedure" that permits "postponement" and seek out additional information. the commission had the opportunity at that time, to contact the D.C. Board, however, their failure to seek such information about the event, indicates that it ["was not"] important to their "decision" and precludes them from "relying" upon the subsequently "discovered information to rescind plaintiff's parole. See Ready v. United States Parole Com'n, 483 F.Supp. 1273 at exhibit #14 examiner Kathleen A. Pinner "titled to the Commissioners! (meaning herself," and the other (3) commissioners who were aware of examiner Husk's notes and records that at the hearing on December 3, 2003, he did not have some files, and they "signed off" on parole for plaintiff see exhibit #13 and did not invoke rule 28 C.F.R. .72(a) hearing procedures which require, if its inadequate files may order the hearing to be postpone to the next docket so that the "claimed" missing information can be requested additionally the commissioners did not seek information about the events also indicates that it [was not] important to their "decision" and thus precludes them form relying upon so called subsequently "discovered new" information to rescind plaintiff's parole. See Ready supra at 1273. Pinner's memo refers to ("attorney Pamela Posch's "inflammatory memo, dated 5/3/04) see exhibit #15, attorney Posch manage to "persuade" (2) examiners to appease her wish, however 2 refused to play the game." U.S. Commission

27

Attorney Posch's letter was for one purpose and one purpose only."

Plaintiff was granted a presumptive parole date for April 9, 2005, four examiners signed off on the decision. Plaintiff filed against the U.S. Commission on March 2, 2004, in Civil action No. 04-3078RDR in the United States District Court in the District of Topeka Kansas challenging the December 3, 2003, decision of the U.S. Commission (1) to go outside the guidelines and give plaintiff a (2) year presumptive date, (2) the Commission arbitrary use of their guidelines on a D.C. Superior Court Committee which violated due process and expos facto (3) The Commission lacked good cause for going outside the guidelines and impermissible double counting. "Thereafter the Commission ordered a "reopening" on June 5, 2004 see exhibit #16 titled "new adverse information," however it failed "to say void" parole date of December 3, 2003, in violation of 28 C.F.R. 2.28 (F) which states Commissioner may refer the case to the National Commissioners with his recommendation and a vote to void and schedule the case for special reconsideration, in exhibit #17 the Commissioners signed to void parole (5) months later, dated November 30th, 2004. Attorney Pamela Posch "stated" in her response to plaintiff habeas in Civil Action No. 04-3078RDR that the "reasons" for the reopening were (1) misrepresenting the facts (2) discovered documents misfiled by commission, see exhibit #15. "However," on the schedule reopening hearing July 13, 2004, examiner Jeffery Kostbar introduced a tape taken that

28

same day from former wife, see exhibit #19 and <u>no</u> mention of any
misinformation or misfiles that were <u>claimed</u> by Attorney Posch
as the (sole) reason for the reopening.

## DUE PROCESS RIGHTS VIOLATIONS CONTINUED:

The defendants' claim in their <u>response</u> on (pg. 21 #2 3rd
paragraph) that there is no clearly established constitutional
right to notice and disclosure of information that the
commission considers in parole decision making; citing **Brandon
v. D.C. Board of Parole**, 823 F.2d 644, 647 (D.C. Cir. 1987) this
case is inapposite to plaintiff's claim at (complaint #22)
plaintiff did not claim that he had a constitutional right to
notice and disclosure of information that the commission
considers in parole decision making, plaintiff "stated", he was
entitled to disclosure **of documents prior** to parole hearing 28
C.F.R. 2.55(g) states title (reopened cases.) Whenever a case
is reopened for new hearing and there is a document the
commission intends to use in making its "determination" a copy
of the document <u>shall</u> be forward for inclusion in the prisoners
institutional file and the prisoner shall be informed of his
right to request disclosure of the document.  Plaintiff was
entitled in accordance to title 18 U.S.C. §4208(b)(2) requires
that "at least thirty days prior to <u>any</u> parole determination
proceeding shall be provided with documents to be used by the
commission in making its determination.  See **Anderson v. U.S.
Parole Com'n**, 793 F.2d 1136 (9th Cir. 1986).  Thus plaintiff was

entitled to a established constitutional right to review before a hearing documents to be used, and the tape was taken the day of the hearing of July 13th, 2004, and it was arbitrary and capricious and motivated by malice for Kostbar to have a hearing in a illegal manner and more importantly, it was not "new information" nor was it the reason Attorney Posch said were her reasons for the reopening did violate plaintiff's due process. "The defendants in their (response motion on pg. 22 middle paragraph) the defendants said, moreover the record shows that plaintiff was provided with notice and disclosure before the commission conducted the reconsideration hearing on November 30th, 2004. Plaintiff was never afforded disclosure, and defendants are trying to "hood-wink" this Court by confusing the facts. See, exhibit #20 signed by examiner Robertson dated 9-22-04, examiner Husk dated 10-6-04 which "clearly states, "continue for disclosure" of the victims taped testimony and documents enclosed with a letter dated 6-10-2004, provides plaintiff with all of the documents to which you are entitled. This confirm and affirm the fact that at the July 13, 2004, and September 22, 2004, hearing no disclosure was afforded plaintiff and defendants contradicts their claim on (pg 22 paragraph #17 ) of their motion that plaintiff acknowledged receiving documents by his signing cover letter. Plaintiff avers that case manager Gray asked plaintiff to sign that he received the cover letter, there were never no information in regards to the contents of the letter, more importantly the regulation of the commission is

that a I-24 form is initialed if disclosure was conducted, see
exhibit #21 that is the only legal binding "document".
Additionally, there were no creditable "evidence" concerning the
allegations made by former wife, in fact she offered no tangible
evidence, no scars, no bruises, nothing. She used the Commission
to air her wrath and because plaintiff petitioned to the Court
against the U.S. Commission he became ripe circumstance for the
Commission to wage its fury against plaintiff. It is simply
irrationable for the Commission to cite that plaintiff is
dangerous and his former wife is at danger where there is [no]
evidence to support her claim, no corroboration, no hospital
visit, no damage verified by no physician, in fact plaintiff's
former wife has contradicted every claim she has made, in
exhibit #22 (Metropolitan Police Dept.) states charging DW cane.
In parole officer's statement of alleged violations exhibit #23
cites at (1) using a deadly weapon (cane) this charge was
"dismissed" wife refused to show up, did not come, see exhibit
#24, in exhibit 25 (affidavit for an arrest warrant) states, on
3-31-99, assault with a cane, in same document it states 3-30-
99 hit wife in face with a closed fist, bit wife in the chest
closed fist and swollen nose. In exhibit "G" wife changes the
3-30-99 claims she states top 4 paragraph he slapped me in the
face, twisted upper body around wrenching neck, punched in
stomach, ribs, kidney, pulled hair, sat on top of her with
knees, put pillow over her face stomped and kicked her with bare
feet, hit her wrist and forearm as plaintiff tries to hit her

31

face with cane, this went on for a half hour.  However, in the
police's report she stated that plaintiff on 3-3-0-99 hit her in
the face, with close fist chest and swollen nose.  additionally
in examiner Kostbar's notes and recording with wife, exhibit #26
(for the first time) claims that plaintiff threaten to kill her
and her entire family, strangled her but she was able to throw
her leg up and get away and that she felt it was a murder
attempt.  She also said the bruising was severe but she did not
go to the doctor.  Plaintiff weighs and weighed at the time 265
pounds, former wife weighs 130 pounds and it is not unreasonable
to determine that if this measure of beating did occur wouldn't
there be a doctor's report, or a visit to a doctor, or something
creditable to make it believable?  The D.C. Parole Board did a
independent investigation and concluded it was not true, and did
not revocate plaintiff on any assault but the cane, in which was
dismissed because wife failed to appear.  Plaintiff's wife has
been pursuing a career in writing novels and is well versed at
telling stories and the un-corroborated, and undocumented,
unrecorded record of any evidence to support these claims and
the Commission failed to make a independent finding other than
what was told to them by a former wife who felt scorn and
angered at a failed marriage is not a "adequate explanation" of
the facts that best accords with "reason" and probability.  In
relying on information that has not been "proved" in an
adversary setting, the Commission runs the risk of relying on
inaccurate information.  Plaintiff deny's the reports plaintiff

have not, would not and do not desire in the future to harm wife or her family, plaintiff vehemently denies the claims and had the Commission would have sought the truth and sought some evidence in the record would have concluded as the D.C. Board of Parole concluded, the claims were fanciful and suppositions." Thus these claims to reopen a hearing when claims have already been considered by the D.C. Board of Parole at revocation and determine untrue, and then 6 years later the Commission suddenly "discovered" files they did not see at the December 3, 2003, re-pparole hearing only after plaintiff filed against the Commission, is in fact vindictiveness and retaliation. The 15 year reconsideration date is the fruit of vindictiveness that was imposed on plaintiff by the U.S. Commission. In **North Carolina v. Pearce**, 395 U.S. 711, 726 (1969), the Supreme Court held that there is a presumption of vindictiveness whenever a Judge imposes a more severe sentence upon a defendant after a new trial and the reasons for doing so do not "affirmatively appear." Subsequent decision have clarified that this rule applies only to situations, in which there is a reasonable likelihood that the increased in sentence is the product of actual vindictiveness." **Alabama v. Smith**, 490 U.S. 794, 799 (1989). Sentence is impose after trial following of a guilty plea. **Alabama v. Smith**, or when a jury has imposed the sentence, **Chaffin v. Stynchcombe**, 412 U.S. 17 (1973). The presumption of vindictiveness has been applied by several federal courts to parole determinations. See, e.g. **Bono v. Benon**, 197 F.3d 409 (9th Cir. 1999); **Kindred v. Spears**, 894 F.2d

33

1477 (5th Cir. 1990); Marshall v. Lansing, 839 F.2d 933 (3rd
Cir. 1988); Hunterson v. DiSabato, 140 F.Supp.2d 353 (D.N.J.
2001).    In Marshall, 839 F.2d at 947 fn.19, the Court pointed
out that [j]ust as a sentencing judge might resent a challenge
to an underlying conviction which he himself had overseen so to
might the Commission look unkindly to a court challenge to its
[decisions], thus supplying a motive for retaliation. . .
Moreover where a prisoner's challenge could be viewed as a
assault on the Commissions much valued discretion, such a
challenge could provide an additional motive for retaliation."
Of particular significance to this case is the decision of the
District of Columbia Court of Appeals in Hammond v. District of
Columbia Board of Parole, 756 A2d. 896 (D.C. 2000).    In that
case, the Board of Parole revoked Hammond's parole and directed
that he be reconsidered for parole after two years further
imprisonment.    Hammond filed a petition for habeas corpus,
challenging the revocation and the failure to explain why the
Board imposed a setoff above the guideline.    The Parole Board
conceded that it erroneously had failed to provide a written
explanation for imposing a setoff longer than called for by the
applicable guidelines.    The petition was dismissed at its
request and a new hearing was held, although the hearing
examiner found two fewer parole violations than had been found
originally and recommended a one year setoff.    The Board imposed
a setoff one year longer than that originally set (i.e. a total
of 3 years further imprisonment).    The Court of Appeals pointed
it out that because these events occurred in response to

appellant's exercise of "his right to appeal" specifically, his
contention that the Board had erred in failing to explain its
imposition of a setoff that was outside the guidelines - it
concluded that there was the product of actual vindictiveness
and therefore applied the presumption of vindictiveness. The
sequence of events in this case is identical to that in Hammond.
Petitioner challenged the December 3, 2003, re-parole decision
for failure to apply the appropriate parole regulation in which
are the D.C. Board of Parole 28 FMR, and that the Commission
impermissibly double counted, using plaintiff's convictions 30
years ago in which were given by the Commission for continuing
prisoner beyond his guidelines were inadequate in themselves
where they did no more than "describe" the offense for which
prisoner was convicted in the terms that cause him to be
incarcerated in the beginning." In March 2004, plaintiff filed
a petition for habeas relief in Civil Case No. 04-3078RDR in the
District of Topeka Kansas against the U.S. Commission.
Specifically it was plaintiff's petition alone that caused the
Commission to reopen plaintiff's presumptive parole date, set
for April 9, 2005. There is absolutely no indication that the
U.S.P.C. would have, on its own accord reopen plaintiff's
presumptive date. The examiner Husk who conducted the December
3, 2003, re-parole hearing stated in his summary at exhibit #12
(bottom paragraph) stated "he had no other 'information'"
describing this incident (Connecticut documents). Also, 28
C.F.R. 2.72 title "hearing procedure (a) states if the examiner,
determines that the available "file material" is <u>not adequate</u>

for this purpose the examiner may order the hearing postpone to the next docket so that the missing information can be requested. Examiner Husk "chose not to postpone the hearing and granted plaintiff a presumptive parole date for April 9, 2005. Thereafter armed with this regulation Husk, Pinner and two other commissioners signed in agreement to grant plaintiff parole, see exhibit #13. Thus, the commissioners, who where in a "better position" than Attorney Posch, determined that the missing material would not have or [was not] important to their decision." Examiner Husk mentioned in defendant's (motion to dismiss, exhibit R pg. 3 bottom, top paragraph) indicated all the discovered misfiled was available to the D.C. Board of Parole and was considered: Now, the commission wants this Court to believe that the reopening was based on overlooked files, and justified rational reason exists." Plaintiff filed racial grievance against a Albert Wilson who is a case manager at U.S.P. Leavenworth who's Mother Carol Wilson Muller worked and had a relationship with Attorney Posch and plaintiff was told be Wilson that his mother has "connections" in the U.S. Commission see (complaint at #7) and that attorney Posch owe her a "favor" or two, and since this claim has not been denied is a additional motive, and there is a likelihood that the 15 year additional setoff imposed on the reopening was imposed vindictively. The question then becomes whether the longer setoff can be justified by some "objective" information concerning identifiable conduct on the part of [plaintiff] occurring "after" the time of the

36

original . . . proceeding." **Pearce, 395 U.S. at 726.** Clearly
there is no such information and the U.S. Commission have not
attempted to provide any. The examiners were aware of lack of
information concerning the files, and chose not to pursue it.
The Commission cannot now, under the "[g]uise" of new
information rescind plaintiff's presumptive parole date after
receiving a "memo" from Attorney Posch after the December 3,
2003, hearing to grant presumptive date, see **Schisilam v. U.S.
Commission,** 858 F.2d 1232, **Ready v. United States Parole
Commission,** 483 F.Supp 1273 **(1980).** The due process violations
continued once the (reopening) was in motion, the examiners used
the federal guidelines "contrary" to **Cosgrove v. Thornburgh, 703
F.Supp. 995 (D.C. 1988).** Nor did the Commission follow its
regulations 28 C.F.R. 2.80(4) that for a prisoner whose initial
hearing was held before August 5, 1998, the Commission shall
render its decision by reference to the guidelines of the former
D.C. Board of Parole in effect on August 4, 1998. Plaintiff
initial hearing was in July 24, 1995, see exhibit #11, therefore
the Commission abused its discretion and fail to follow their
own regulation in which the must, see **Dankman v. District of
Columbia Board of Elections,** 443 A.2d 507 **(D.C. App.).** The
Commission claim that plaintiff allegations have no merit
(Response pg-21, 14 paragraph). The defendants' claim that
plaintiff's claims are "speculative, conclusory and without
support in the record." The plaintiff however states more than
enough facts to support an inference of retaliation and the

37

warranting the granting of discovery, see **Flaherty v. Coughlin**,
**713 F.2d 10, 13 (2d. Cir. 1983)**. The examiners arbitrary and
capriciously abused their discretion by systematically have
hearings without affording disclosure and "acknowledged" the
denial of disclosure in exhibit 20 indicating "this time", we
will disclose. This violates the commissions regulation 28
C.F.R. § 2.55(g) states whenever, a case is reopen for a new
hearing, and there is a document the commission intends to use
in making its "determination a copy of the document shall be
forwarded for inclusion in the prisoners' institutional file and
the prisoner "shall" be informed of his right to request
disclosure of the document. The examiners Kostbar (memo
regarding hearing) held by him July 13, 2004, see exhibit 26
Kostbar states "plaintiff did not want the 'tape'" of his former
wife played. He was advised to apply for November docket, at
(paragraph 5) of this memo. This tape was contrary to the
defendants claims in (response to dismiss) pg 22, 15 paragraph
where they claimed 34 pages of documents that the commission
would be considering and disclosed." The fact is, 34 pages of
documents were never revealed at this hearing, and examiner
Kostbar used only a tape at this hearing and that to was never
disclosed to plaintiff it was taken on the day of the hearing in
"violation of 18 U.S.C. § 4208(b)(2) requires that at least
(30) days prior to any parole hearing determination the prisoner
shall be provided with . . . reasonable access to a report or
other document to be used by the commission in making its
determination, see **Anderson v. U.S. Parole Commission**, 793 F.2d

38

1136 (9th Cir. 1986). Therefore these practices has deprived plaintiff of his "legal rights" by manner in which the hearing was conducted. See, <u>Stevens v. Quick</u>, 678 A.2d 28 (D.C. App. 1996). It is apparent from the massive chronology that there is far more than a "reasonable likelihood that the reopening and retarding plaintiff April 9, 2005, presumptive date which would have been (6 years) for minor infractions, that the D.C. Parole board determine that 3 year hit was appropriate punishment, to impermissibly violate their own regulation to give plaintiff a 15 year reconsideration was vindictive. The <u>only</u> "intervening" event was plaintiff filing of a petition for habeas corpus challenging the December 3, 2003, presumptive date for 2005. Once there appears to be a presumption of vindictiveness, it is the obligation of the commission to rebut it. See, <u>Bono v. Benon</u>, 197 F.3d 420, citing <u>Wasman v. United States</u>, 424 U.S. 559, 568 (1984); <u>Hammond</u>, 756 A.2d at 900. The Commission has presented <u>no</u> evidence at all to rebut this presumption and its argument about retaliation were not the title subject matter of plaintiff's complaint. The front heading specified "vindictiveness" and defendants do not even come close to carrying its burden to overcome the presumption of vindictiveness". For all these reasons plaintiff is entitled to "<u>immediate injunction</u>" on vindictiveness, in <u>Marshall v. Lansing</u>, 839 F.2d 933 (3rd Cir. 1988) said, vindictiveness shown by use of an infraction that the commission "knew" of but did not cite until petitioner obtain a court order to reduce the

severity of the offense. "Identical" to plaintiff's case, impermissible use of claimed misfiles, that the commission were "aware" of and decided to grant plaintiff parole for April 9, 2005, though they "knew" of the inadequate record, but did not cite until plaintiff's petition against the U.S. Commission. The D.C. Circuit Judge Gladys Kessler stated in **Caldwell v. Brown**, civil action No. 98-0460, 2003, granting vindictiveness claim, said the prisoner is protected from the pettiness of a parole board and that the only intervening event was petitioner filing of a petition for habeas corpus challenging the 2000 notice of action; plaintiff's petition for habeas corpus was challenging his Notice of Action also. Plaintiff's case should not be dismissed on the vindictive claim, the requested injunctive relief requested in plaintiff's complaint is warranted and the continued denial of plaintiff's deprivation of constitutional rights, due process, and illegal manner in which the hearings were held constitute irreparable harm. See, **Elrod v. Burns**, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976), see **Wilkinson v. Dotson**, 125 S.Ct. 1242, 161 L.Ed. 253. Plaintiff is entitled to prevail on his vindictiveness claim and justice so requires.

## "Defendants Are Not Entitled To Qualified Immunity."

The Commission's argument for Qualified Immunity in a quest for dismissal, however rests on the erroneous premise that the Commission essentially can do whatever it wants regardless of "their" parole statue, regulations guidelines in which is a

unrealistic premise.   Qualified Immunity "does not act" as a
shield for individuals who knowingly "violates the law," see
**Tellier v. Fields**, 280 F.3d 69, (2001) U.S. Attorney Posch,
examiner Kostbar, examiner Robertson, case-manager Wilson and
case-manager Gray, two key players the defendants did not
discuss in their motion to dismiss, yet counsel Henault entered
in their behalf whom are defendants in the complaint.   These
actors, examiner Kostbar did deny plaintiff his due process
entitlement by holding a parole hearing with a tape that was
recorded that day of the hearing, without affording plaintiff
disclosure of the tape as proscribed by the Commission's
regulations and "statutory" hearing rights title 18 U.S.C.A.
§4208(b)(2) requires that at least thirty days prior to any
parole determination proceeding the prisoner shall be provided
with... reasonable access to a report or other documents to be
used by the Commission in making its determination.
Additionally examiner Kostbar violated 28 C.F.R. 2.55 of the
U.S. Commission's regulations on disclosure, additionally
examiner Kostbar's use of racial epithets calling plaintiff as
he stated "I got the power nigger Boy" in the course of a parole
proceedings violated plaintiff's equal protection of the law
based on "race" intent did cause violation of his fourteenth and
fifth amendments to the U.S. Constitution in which is an
established statutory and constitutional law.   See, **Block v.
Potter**, 631 F.2d 233 (1980), **Anderson v. U.S. Parole Com'n**, 793
F.2d 1136 (9th Cir. 1986).   Examiner Robertson intentionally
holding a second reopening hearing without affording plaintiff

41

disclosure of the documents he intended to use at the hearing 30 days prior were arbitrary, capricious and malicious did violate plaintiff's due process entitlement of title 18 U.S.C.A. §4208(b)(2), 28 C.F.R. 2.55.

Examiner Robertosn denied plaintiff the right to a "fair" and "impartial" reopening hearing, when it was pointed out to examiner Robertson, that the case manager at the prison and a defendant in this complaint Albert Wilson were as of the hearing, was being grievance against by plaintiff for racial conduct, and that defendant's Mother Carol Wilson Muller worked with (examiner) Robertson as a U.S. Commission Examiner during Robertson's tenure as the U.S. Commission Chairman and worked together at U.S.P. Leavenworth Kansas together Robertson as a case manager, and Carol Wilson Muller as the school administrator. Thus Robertson should have disqualified himself from holding the hearing where it reasonably appears that his participation in the hearing involves a "conflict of interest" and places the Commission in an adverse situation. Examiner Robertson violated 28 C.F.R. 2.72(F) states, because parole decisions must be reached through a record based hearing and voting process, [n]o contacts shall be permitted between any persons "attempting" to influence the commission's decision making process, defendant Albert Wilson and Examiner Robertson conversed prior to the hearing. Examiner Robertson violated title 18 U.S.C.A. § 4208(b), 28 C.F.R. 2.55. See, **Anderson supra, at 1136.** "Thus examiner Robertson violated plaintiff's due process entitlement of established statutory and

42

constitutional law."    Defendant case manager Albert Wilson,
bragging about his intention to injure plaintiff and secure the
"retarding" of plaintiff presumptive parole date and that his
Mother Carol Wilson Mullers have "connections" in the commission
and commission attorney Pamela Posch "owe" her a favor...
additionally, calling plaintiff a "nigger smart ass coon", and
that plaintiff's lucky's he is alive, altering files in the
course of official duties placing plaintiff in solitary without
reason, conspiring to discourage plaintiff's right to grievance
violates plaintiff's first amendment, fourteenth and eight
amendment to the U.S. Constitutional did violate plaintiff's
civil rights. See, **Haddle v. Garrison**, 525 U.S. 121, 142
L.Ed.2d. 502, 119 S.Ct. 489 (1998), in which is an established
statutory , constitutional law.    Defendant case manager Mike
Gary, threaten to cut plaintiff's throat, bragging that Carol
Wilson Muller contacted examiner Robertson who will teach him
(plaintiff) not to file grievance against him and Wilson did
deprive plaintiff of his "Equal Protection" of the law and
conspiracy to deprive plaintiff of his Civil Rights and First
Amendment Right to grievance, interfered with the "Due Process"
of plaintiff's to pursue his claims against him and Albert
Wilson.    thus violation of plaintiff's right s and established
statutory and constitutional law.    See, 42 U.S.C. §1981, 1983,
1985(2), 1985(3).    A conspiracy existed and the actions of case
manager Gray deprived plaintiff of rights protected "by Federal
Law."    U.S. Attorney Pamela Posch, e-mail to defendant Gray,
pushing him to get plaintiff to sign waiver on a I-24 form, 16

43

days after the hearing that was held by the commission ("depriving plaintiff to be present" and having being previously notified by plaintiff that he did desire to attend (letter dated Nov. 30, 2004) and knowledge that wrongs were conspired to be done, and or about to be committed and possess the "power" to to prevent or aid in preventing them, and that "reasonable diligence" by Attorney Posch could have prevented the commission of any of the wrongs conspired to be done violates plaintiff's rights, 42 U.S.C. §1986 see **Vietnamese Fishermens Association v. Knights of the Ku Klux Klan**, 518 F.Supp. 993, 1006 (S.D. Tex. 1981).

Attorney Posch artificial reasons to reopen plaintiff's case was unwarranted, because the D.C. parole Board held a revocation and considered the claims the examiner used to assist Attorney Posch and to appease her. Attorney Posch was "personally involved" in the architecture of the due process violations in which took place at the July 13, 2004, September 22, 2004, and November 30, 2004 reopening hearings U.S. Commission Posch as evidenced by accompanying exhibits along with defendant Wilson, Gray, Kostbar, Robertson conspired to distort key facts surrounding the (actual reason) for the reopening and thereby interfered with plaintiff's due process motivated by invidious racial discrimination on the basis of Section 1985(2), and (3) conspiracy to deprive constitutional rights, 1981 interference with right to grievance the court,and neglect to prevent section 1985 conspiracy. "Thus attorney Posch did violate established statutory and constitutional laws. Qualified Immunity protects all but the "plainly" incompetent

44

and those "willingly" violated the law.    See, **King v. Beavers**,
**148 F.3d 1031 (8th Cir. 1998)** The proffered facts in regards to
plaintiff's complaint, defendants were incompetent and those
"willingly" violated the law, and should not after their
conduct, be allowed to run for cover".    Qualified Immunity
"analysis" is, if a person makes a "reasonable" "mistake" as to
what the law requires they are entitled to immunity.    See, Price
v. Roark, 256 F.3d 364 (5th Cir. 2001).    **There were** **no** **mistakes**
in this case, the flagrant disregard for their regulations and
law, can only be deemed intentional."    Therefore, the
defendants' request for qualified immunity should be denied.
The threshold inquiry a court must undertake in a qualified
immunity analysis is whether plaintiff's allegations if true,
establish a constitutional violation."    **Hope v. Pelzer**, 122
S.Ct. 2508 2513 (2002).    Despite their participation in
constitutionally impermissible conduct, government officials
"may nevertheless be shielded from liability for civil damages
if their actions did not violate clearly established statutory
or constitutional rights of which a reasonable person would have
known."    Id. at 2515 (quoting **Harlow v. Fitzgerald, 457 U.S.**
**800, 818 (1982)).**    Qualified Immunity operates to ensure that
before they are subject to suit, officers are on notice that
their conduct is unlawful.    Id.    "If the law was clearly
established, the immunity defense ordinarily should fail, since
a reasonably competent public official should know the law
governing his conduct."    **Harlow, supra, 457 U.S. at 818-15.**    The
threshold question in the qualified immunity analysis in this
case is whether the plaintiff's allegations if true establish a

fifth, fourteenth, first amendments, and civil rights conspiracy claims, 42 U.S.C. § 1985. 1986.

Fifth Amendment provides no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, except in cases arising in the land or Naval forces  or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself... nor be deprived of [life, liberty or property without due process of law,] nor shall private property be taken for public use without just compensation."

Fourteenth Amendment in part:

> All persons born or naturalized in the United States and subject to the jurisdiction, no state shall make or enforce any law which shall abridge the ... privileges or immunities of citizens of the United States . . . nor shall any state deprive any person of life, liberty, or property without "due process of law" . . . nor deny to any person within it's jurisdiction the equal protection of the law."

First Amendment in part:

> Congress shall make no law . . . abridging the right to petition the government for a redress of grievances.

"Civil Rights Conspiracy claim" 42 U.S.C. 1885, 1986 in part:

> Person who "conspire to deter, by force intimidation, or threat, obstruct 'the due course of justice'" with intent to deny any citizen the equal protection of the laws or of equal privileges and immunities or harm a citizen for enforcing or attempting to enforce the right to equal protection who having "knowledge that a [1985 conspiracy is about to be committed and does nothing about it and discriminate based on race

46

violates this provision.

Defendants' actions contravene plaintiff's constitutional protections, plaintiff in his complaint claims that he was denied due process at the 3 reopening hearings he was not provided the document, tape (30) days prior to the hearing. Plaintiff was threaten by defendants, called a "nigger boy" and acts of intimidation to harm plaintiff for filing grievance, defendants had knowledge of the harm intended to be heaped upon plaintiff and id nothing about it.    Plaintiff's race was mentioned by defendants as they abridged his equal protection of the law.    Defendants obstructed the due course of justice with intent to "cover-up" the misdeeds, defendants all were "linked" by attachments of "being friends" conspired by concerted denial of rights plaintiff was entitled to, defendants "intentionally" violated.

The next step in the qualified immunity analysis is to determine whether the rights at issue was clearly established at the time in question.    **Saucier v. Katz**, 533 U.S. 194, 201 (2000).    "The contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates the right"    Id. 202 "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

It is clearly established that officials must provide a parolee disclosure before a parole determination hearing, it is established that the hearing is to be conducted in accordance to

47

the commission regulations. it is established that no privilege
shall be abridged without due process of law, it is established
that no person can conspire to deter by force, intimidation or
threat deny any citizen the equal protection of the law or
discriminate based on race." It is a established law that
knowledge that a conspiracy is being committed and have the
power to avert . . . and do not, violates Civil Rights
Conspiracy. Thus the defendants request for qualified immunity
should be denied in regards to this case.

### Defendants Are Not Entitled To Absolute Immunity

Defendants claim absolute immunity at (c) pg. 13 of their
motion to dismiss. Defendants are not entitled to absolute
immunity, in the defendants' response pg. 15, paragraph-3
states, commission officials are similar and closely to judges.
That is erroneous -- Parole officials and employees are entitled
to qualified immunity when they perform [administrative or
executive functions]. See, **Anderson v. Boyd**, **714 F.2d 906, 909
(9th Cir. 1983)** Additionally the degree of immunity of parole
personal can not be determined without factual inquiry into
their duties. See, **Stewart v. Lallanzi**, **832 F.2d 12, 13 (2d
Cir. 1987)**; **King v. Simpson**, 189 F.3d 284 (2d Cir. 1999). Also,
absolute immunity protecting acts closely associated with
judicial process does not extend to investigative or
administrative acts. Defendants Pamela Posch, Jefery Kostbar,
Samuel Robertson, Albert Wilson and Mike Gray, all through
investigative and administrative actions deprived plaintiff of

48

established constitutional law. See, **Miller v. City of Philadelphia**, 174 F.3d 368 (3rd Cir. 1999). Thus defendants are not entitled to absolute immunity. Supreme Court held that government agents may be held liable for violating constitutional rights. See, **Bivens v. Six Unknown Agents**, 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct. 1999 (1970). Moreover, under plaintiff's 42 U.S.C. §1985(3), Federal Employees do not have absolute immunity from liability simply because of their employment status, Federal Employees who use their office to commit a federal constitutional violation is not allowed to claim that office as ground for absolutely immunity defense, and do conspire and commit such constitutional violation with racially discriminatory animus, the federal officer is a "person" within the meaning of § 1985(3). **Kenyatta v. Moore**, 623 F.Supp. 224 (S.D. Miss. 1985). By its specific terms § 1985(3) defines any conspiracy which has the aim of depriving either directly or indirectly any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . **United States v. Guest**, 383 U.S 745, 755, 86 S.Ct. 1170, 1176, 16 L.Ed.2d 239 (1966); **Monroe v. Pape**, 365 U.S. 167, 174-77, 81 S.Ct. 473, 477-78, 5 L.Ed.2d (1961). Defendants on page 16, paragraph-4 of motion to dismiss states, defendant Posch is an attorney for the Parole Commission's Office her role includes preparation for parole proceedings, at paragraph-12 states General Counsel, who recommended the Commission to conduct a special reconsideration

hearing to revise charges, prosecutors as defendants identify with, are not entitled to "absolute immunity" for activities not "intimately" associated with <u>judicial</u> process, such as "giving advice to police" during the preliminary investigative stage to present to a grand jury, making comments to the press.'" See, **Mastroianni v. Bouwers**, 160 F.3d 671 (11th Cir. 1998) Defendant Posch in her declaration indicates that her actions were "investigative", giving advice. See declaration at 3 states I make the following statements on the basis of personal knowledge my "review of the memorandum" I prepared to examiner Husk, at 4 she stated I discovered material in Bolings files . . . These acts were not judicial, it was administrative investigative internal office activity and fail to meet standards claimed by defendants or in which needs to be met, there were no "adjudicatory process" occurring.    There were no release or revocation action associated with the administrative actions, the gist was, did examiner Husk see some files that attorney Posch said was missing?    There were <u>no</u> claims of denial of parole, plaintiff was granted a presumptive parole date -- defendants' message was did you review files that she was in possession of and this falls extremely short of being classified, as adjudication.    Defendants are not entitled to absolute immunity in this case, see 42 U.S.C. § 1985(3) and the particular acts or responsibilities performed were that of administrative and defendants are not entitled to absolute immunity.  See **Scott**, 143 F.3d at 111-13.

Plaintiff Did Perfect Service Against Individual Defendants

Defendants appear to claim that the U.S. District Court Clerk did not properly serve summons on the defendants, "and therefore complaint should be dismissed." Plaintiff motioned the Court to proceed in forma pauperis entered 8/31/2005a, the Honorable Judge Richard W. Roberts granted the motion. According to 28 U.S.C. § 1915(c) officers of the Court shall issue and serve all process and perform all duties [in forma pauperis cases]. Since plaintiff was granted leave to proceed in forma pauperis, it is the District Courts responsibility to serve process upon all defendants and thus plaintiff should not be penalized for failure to effect service where it failed through no fault of his own. See **Welch v. Folson**, 925 F.2d 666, 669-70 (3rd Cir. 1991) **Puett v. Bland Ford**, 895 F.2d 630, 635 (9th Cir. 1990). Defendants are well aware of this provision, and seems to subtly suggest that incompetence played a part in their failure to be served. This motion is absurd, the clerk, on 9/26/2005, issued summons to Pamela Posch, Jeffery Kostbar, Samuel Robertson, Albert Wilson, Mike Gray U.S. Attorney and U.S. Attorney General entered on 9/27/2005.    Returned of service/affidavit as to the U.S. Attorney on 9/29/2005. Return of service/affidavit of summons as to Albert Wilson ("who have not responded") on 10/3/2005. Return of service/affidavit as to Mike Gray 10/3/2005, again, return of service/affidavit (individual capacity) entered on 12/8/2005 . . . . Albert Wilson return service/affidavit 10/27/2005, return of service/affidavit

51

Pamela Posch 9/27/2005, Jeffery Kostbar 9/27/2005, Mike Gray
12/07/2005 ("Source") U.S. District Court Docket Report.
Accordingly the Court acknowledged the service and return to all
defendants thus plaintiff's complaint must not be dismissed.
See, Young v. Quinlan, 960 F.2d 351 (3rd Cir. 1992).

## Plaintiff Is Entitled To Damages For
## Mental Or Emotional Distress

Defendants are under the false premise that they may
inflict mental or emotional stress and that if so, must, "show"
physical injury. (See motion to dismiss,pg. 32 G). Their claim
must fail, the District Court for the District of Columbia said,
"mental and emotional stress are compensatable under § 1983 even
in the ["absence"] of physical injury. See Daskalea v. District
of Columbia, 227 F.3d 443 (D.C. Cir. 2000). Plaintiff who
brings a civil rights claim may be compensated for "intangible"
psychological injuries, as well as financially or property or
physical harm. See Ferrill v. Parker Group Inc., 168 F.3d 468
(11th Cir. 1999). Additionally contrary to defendants claims
Plaintiff can "recover reasonable cost" in Civil Rights case.
See, Lathen v. Dept. of Chidren and Youth Service, 172 F.3d 786
(11th Cir. 1999). Thus the claim made by defendants is without
merit and should be denied.

## Defendants Did Discriminate Against Plaintiff
## Based On Race.

Defendants on pg. 23 of their motion to dismiss alleges
that defendants did not discriminate against plaintiff based on
race, and that there is nothing in the record that support the

52

claim.    Defendants are mistaken, defendant Albert Wilson stated
he didn't know plaintiff's wife was "white" and that a domestic
against her is a bad scenario. (See exhibit I") Additionally,
that plaintiff is a "smart-ass, coon nigger", telling plaintiff
that he's lucky that he's alive.    Wilson also (see exhibit J£),
said man-to-man that he doesn't like niggers and especially
"D.C.-niggers",  remarks  which  another  inmate  heard,  and
submitted a verified affidavit. Mike   Gray,   prior   to   being
assigned as plaintiff's case-manager, threatened another inmate
with racist remarks who had also filed grievances.

Defendant Cray also threatened to "cut plaintiff's throat".
Examiner Jeffery Kostbar told plaintiff in a
statement, "I got the power 'nigger-boy'".  (See exhibit O & P)
Two   inmates   signed   affidavits   regarding   this   incident.
Additionally plaintiff's verified claims in his complaint is
more than sufficient (record) to rebut defendants' denial that
"race" did not play a part in the unconstitutional misdeeds.
The  defendants  Albert  Wilson  or  Mike  Gray  did  not,  in
defendants' motion to dismiss, deny the racial claims, nor
offered declarations.    Defendant Examiner Jeffery Kostbar was
heard telling plaintiff that he "had the power, nigger-boy" --
two prisoners who were present submitted affidavits to that
effect under the penalty of perjury.    See exhibit O-P.    The
defendants claim that plaintiff was not discriminated based upon
"race" is in fact untrue.    What has startled defendants is the
fact that they believed they could just say racist remarks and
do illegal things and that plaintiff would not report them.

53

Plaintiff was in a interracial marriage, a incident of claimed abuse by plaintiff to his former wife who just happen to be caucasian was to have taken place, the defendants Albert Wilson was grievanced against by plaintiff for racial remarks stating "they will teach me not to smack a white woman or face the fate of Emmitt Till," who was lynched for whistling at a caucasian woman.  Defendants Albert Wilson, Mike Gray, Jeffery Kostbar, Samuel Robertson and Pamela Posch are all caucasians who conspired by way of a "single plan" to inflict a wrong against or injury upon plaintiff based upon his "race" (black) and violated established statutory and constitutional rights to "achieve" their goal.  The Supreme Court said in **Gomillion v. Lightfoot**, 364 U.S. 339, 5 L.Ed.2d 110, 81 S.Ct. 125 (1960) "One must be ever aware 'that the Constitution forbids sophisticated as well as simple minded modes of discrimination."  See also, **Lane v. Wilson**, 307 U.S. 368, 95 L.Ed. 110, 59 S.Ct. 872 (1951) Thus the touch stone of a "civil" conspiracy is demonstrate that the existence of a conspiratorial agreement, it simply must be shown that there was a "single plan", the essential nature and general scope of which [was] known to each person whow is to be held "responsible" for its consequences.  Upon examination the "intentional" flagrant violation of the commissions regulations and actions therein distinguish plaintiff form typical applicant on the ground that he was black, indicating that "race" undoubtedly was a "factor" in its decision.  It is not Unreasonable to believe that, had plaintiff's wife was black, "these actions would not have occurred."  Therefore the

54

defendants violated plaintiff's fundamental due process right to be free from arbitrary governmental actions, as well as his right to the equal protection of the law." Thus plaintiff's civil rights and fourteenth amendment to the constitution were violated and defendants' denial that discrimination did not occur is erroneous.

The evidence in this case is not muddy, there is tangible evidence (proof) that racial epithets were said to plaintiff by case-manager Albert Wilson, Mike Gray and examiner Kostbar, there is evidence that at each reopening hearing, was held with "intentional denials" of due process, conducting hearings without documents disclosed to plaintiff prior to hearing, racist remarks in the course of a parole hearing by the U.S. Commissioner who was conducting the parole hearing. Examiner Robertson intentionally held a hearing, knowing that disclosure was not afforded to plaintiff, also additionally, having work related ties and family friendship with case manager Wilson and his mother Carol Wilson Muller whom plaintiff had prior to the hearing filed racial grievance for threats and racial epithets and this was made known to examiner Robertson that he should recuse himself because of the likelihood of conflict of interest. Robertson's hostile response that , in spite of these facts he intended to have the hearing anyhow. U.S. Commission Attorney Pamela Posch's personal involvement when she sent a personal e-mail 16 days after plaintiff's November 30, 2004, hearing improperly trying to have defendant Gray have plaintiff

55

sign a I-24 form at the <u>waiver</u> of parole line, when she was notified by plaintiff that he desired to be at the hearing. The act of cover-up by Posch to complete the "record" in which to hide the discriminatory actions. These actions <u>cannot</u> be viewed other than intentional, malicious, capricious, willfully and discriminatory. The defendants claim that their actions were not discriminatory is without merit and must be denied.

### Plaintiff's Constitutional Violations Are Sufficient To State A Claim Under §1983

Defendants, in their motion to dismiss claims that, plaintiff does not have a valid § 1983 claim (see pg. 36 of defendants' motion to dismiss, middle paragraph). Defendants at <u>bottom</u> paragraph "erroneously" claims that . . . Bureau of Prisons and Parole Commission are neither a "person nor a state actor" for purposes of § 1983, and accordingly the courts lacks jurisdiction to hear plaintiff's claim . . . The United States Court of Appeals for the District of Columbia recently addressed the claims made by defendants. In **Warren v. District of Columbia**, 353 F.3d. 36 (D.C. Cir. 2004), the Court said, "it is often stated that pro se prisoner complaints should be "liberally construed." E.g., <u>Boag v. MacDougall</u>, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The general rule, applicable in all cases is "that the complaint will be construed liberally on a Rule 12(b)(6) motion." 5A Charles Alan Wright & Arthur R. Miller Federal Practice and

Procedure § 1357 (2d Ed. 1987). In pro se prisoner cases, courts frequently add after noting the "liberal construction" rule - that the complaint should not be dismissed under rule 12(b)(6) unlesss "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him relief'". **Estelle**, 429 U.S. at 106, 97 S.Ct. at 292 (quoting **Conley v. Gibson**, 355 U.S. 41, 45 - 46, 78 S.Ct. at 101-102. Here in this case there are federal bureau of prison officials and U.S. Parole Commission Officials engaging in racist and discriminatory actions in the course of normal business in which violated plaintiff's constitutional rights. There were threats against plaintiff's life to cut his throat, being called "niggers" and "nigger boy" -- told, "a good nigger is a dead nigger", hearings (parole) being conducted by friends of the actors whom plaintiff grievance against, bragging about connections they have within the ranks of the U.S. Parole Commission, expressing hostility towards plaintiff for marrying a caucasian woman and claims that plaintiff assaulted her therefore plaintiff must pay the ultimate price. Maliciously and intentionally using the U.S. Commission jobs to make true the claimed threats, experienced parole examiners "flagrantly" ignoring the commission regulations to arrive at a particular harmful outcome, U.S. Attorney for the Commission was "personally involved" in the "conspiracy" to seal the deal. E-mails instructing a federal employee how to "cover their trail", instructing this actor to get plaintiff to sign waiver before he

57

transfer.  U.S. Attorney for the Commission was aware of the violations and failed to stop them, instead used her office to wage discriminatory actions based on race, lying to the Court in her declaration, abusing her authority and deliberate cover up. The defendants knew or should have known their actions were illegal plaintiff notified U.S. Attorney Pamela Posch of the misdeeds, she increased the mistreatment.  However, at this stage of the litigation, plaintiff needed only to supply a short and plain statement of the claim showing that the pleader is entitled to relief, Fed.R.Civ.P. 8(a) which has been done. See, e.g., **Swierkiewicy v. Sorema N.A.**, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1  (2002);  **Leatherman  v.  Tarrant  County Narcotics Intelligence & Coordination Unit**, 507 U.S. 163, 113 S.Ct. 1160, 122 LEd.2d 517 (1993) Thus if plaintiff can prove the violations he will have established defendants liability. On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must <u>assume</u> the truth of all well pleaded allegation.  it follows that plaintiff has stated a cause of action and that his complaint should not be dismissed. See **Warren** **supra**, at 39.

### Defendants' Claim That Bureau Of Prison And Parole Commission Are Neither Person Nor A State Actor For Purpose Of § 1983

Defendants' claim that the Bureau of Prison and Parole Commission are neither person nor a state actor for purpose of § 1983.  "The United States District Court of Appeals for the District of Columbia recently in **Fletcher  v.  District  of Columbia**, 370 F.3d 1223 (D.C. Cir. 2004) said:

> "Pro Se prisoners §1983 complaint against the United
> States Parole Commission would be "construed" as
> complaint against (individual) members of the
> Commission for purpose of ruling on motion to dismiss
> complaint on ground that the commission was not a
> a "person" within meaning of §1983 42 U.S.C.A. §1983.

additionally, in this cause, each "individual were named in the

title of the complaint and identified of exactly what each

person did to violate plaintiff Civil and Constitutional Right."

The Court further stated, "that members of the Unite States

parole Commission are "amenable to suit" under §1983 for actions

taken pursuant to the District of Columbia Renitalization Act in

actions taken under the color or "Federal Statue" applicable

exclusively to the District of Columbia.    42 U.S.C.A. § 1983;

Balanced Budget Act of 1997, § 11231(a)(1) 111 Stat. 712.    The

Commission takes the position that it is not amenable to suit

under 42 U.S.C. 1983 because 'it does not act under color of

State law, the Court in **Flectcher supra** at **1223** said "not so ...

with respect to D.C. prisoners."

> "Actions taken by the Commission pursuant to the D.C.
> Revitalization Act, Section 1983 provides for
> "recovery" against any "person" who deprive the
> plaintiff of a Constitutional Right "under the color
> of [a]ny statue . . . of any State or territory or
> the District of Columbia," including any act Congress
> applicable exclusively to the District of Columbia.
> 42 U.S.C. §1983. Because the D.C. Revitalization Act
> is such a statue, we have no doubt the defendants
> members of the United States Parole Commission are
> amenable to suit under §1983 for actions taken
> pursuant to that Act."

Therefore, the "persons" named in the complaint who are

U.S. Commission employees can be sued under 42 U.S.C.A § 1983

and are not entitled to qualified immunity or absolute immunity

as claimed by the defendants in their motion to dismiss, and in

59

addition defendants can be sued in their individual capacity for
monetary liability and in official capacity for declaratory and
injunctive relief, contrary to defendants' position <u>cited</u> in
their motion to dismiss.  See **Bevens v. Six Unknown Agents**, 403
U.S. 388, 29 L.Ed.2d. 619, 91 S.Ct. 1999 (1970); See,
(Declaratory and Injunctive relief from 42 § 1983) **Wilkinson v.**
**Dotson**, 125 S.Ct. 1242, 161 L.Ed. 253. See, **Flectcher v.**
**District of Columbia**, 370 F.3d 1223 (D.C.Cir. 2004).  Therefor
these claims made by defendants that hey are neither persons nor
state actors must fail and that it is clear, defendants can be
sued, and that Declaratory and injunctive relief is applicable
to 42 U.S.C.A. § 1983.

### District Of Columbia Is The Proper Venue Invokement Of Diversity Jurisdiction Domicile

Defendants claim that the District of Columbia is improper
venue cited in their motion to dismiss is erroneous.  in
defendants quest to "forum shop", defendants have "arbitrarily"
acted outside the scope of its authority to <u>label</u> plaintiff's
complaint as a Bivens Action and used case law that relates to
some advantage to a Bivens Action.  Again, plaintiff filed
before the United States District Court for the District of
Columbia "captioned" Racial Discrimination, Racial Conspiracy
cover up, Racial favors given by the U.S. Parole Commission, and
Federal Bureau of Prisons sued <u>under</u> 42 U.S.C. § 1983, 1985(3),
1986 Civil Rights Violation.  Thus, the applicable cited case
used by defendants is in fact inapposite to, the complaint.
Difference generally give to plaintiff's choice of forum in

ruling on motion for change of venue is tempered when forum chosen by defendants is outside plaintiff's home jurisdiction. 28 U.S.C.A. § 1404(a) see **Stewart v. Capitol Area Parmanente medical Group. P.C.**, 720 F.Supp. 3.   Venue in diversity action was proper in District of Columbia where plaintiff resided.  28 U.S.C.A. §1391(a)  **Masterson - Cook v. Criss Bros. Irou Works In.**, 722 F.Supp. 810.  Plaintiff invokes Diversity Jurisdiction "domicile" is presumed to be the State (District of Columbia) he lived in before being imprisoned.  See, **Sullivan v. Freeman**, 944 F.2d 334, 337 (7th Cir. 1991).

Venue is proper in the District of Columbia the "Federal Bureau of Prison" is located in the <u>District of Columbia</u> and thet decision to place plaintiff in solitary "arose" from the principle office through its <u>agents</u> Albert Wilson, Mike Gray who both are employees of Federal Bureau of Prisons, and plaintiff was told by them that they consulted, and was authorized by the main office that they should lock plaintiff up provides nexus between the main office in D.C. for venue to be proper in District of Columbia with respect to plaintiff's claim.  See 28 U.S.C.A. § 1402(b), **Kimberlin v. Quinlan**, 774 F.Supp. 1, 9-10 **(D.D.C. 1991)** The court said, "prisoners claimed the 'impetus' for his being placed in solitary came from polices regulations decision of the Bureau provided sufficient nexus - between D.C. for venue to be proper in the District of Columbia with respect to claim citing 28 U.S.C.A. §1402(b).  Additionally the defendants have been "less" than candid with this Court in their forum maneuver, on pg. 40 middle paragraph of defendants' motion

to dismiss, the defendants claims that "the majority" of witnesses and records that would be involved are all at U.S.P. Leavenworth. This is misleading the Court, firstly, the Federal Bureau of Prison records of the main office and the consultation with the defendants Albert Wilson and Mike Gray by the main office is not in Kansas as claimed by defendants, the necessary records are in D.C. of that contact. "Additionally these (2) defendants have 'ignored' the Court's order to respond and have not been mentioned in defendants' motion to dismiss at all." This arbitrary behavior is reflective of the "likelihood" that they will not be a factor in this complaint. The Defendants U.S. Parole Commission, Attorney Pamela Posch, Examiner Jeffery Kostbar, Examiner Samuel Robertson operate from the principle office of Chevey Chase Md. a metro train line away from D.C. and they are (3) defendants more than the (2) defendants, claimed as the majority made by defendants in motion to dismiss. The defendants again, has dictated what this Court will do, where the defendants made reference that, "this is a pro se case, so communication with counsel is not a issue," on page 40 middle paragraph, of motion to dismiss, the Court has the "descretion" to appoint plaintiff counsel which would erase such claim unless, defendants are in possession of a "pre-knowledge" that plaintiff is unaware of. Moreover, plaintiff is a District of Columbia Code Offender, sentenced in the District of Columbia and Venue in this case is proper in the District of Columbia. Federal question jurisdiction is authorized by 28 U.S.C. § 1331(a), which gives the District Courts "original jurisdiction" of all Civil Actions under the Constitution, laws or treaties or

"District of Columbia" including "any" Act of Congress applicable "exclusively" to the District of Columbia 42 U.S.C. §1983. See, **Fletcher v. District of Columbia**, 370 F.3d 1223 (D.C. Cir. 2004). Because the D.C. Reutalization Act is such a "Statute" that Venue in the District of Columbia in a § 1983 Action authorize jurisdiction over a D.C. Code Offender.

### District Of Columbia Have Jurisdiction Under D.C. Code § 13-423, The "Long Arm" Statue

Personam Jurisdiction may be maintained by the United States District Court for the District of Columbia by the "long arm" laws of the District of Columbia **Crane v. Carr**, 814 F.2d 758, 762 (**D.C. Cir. 1987**). The District Of Columbia exercises personal jurisdiction based upon D.C. Code's "long arm" statue D.C. Code § 13-423 (2000) in which states:

> (a) A District of Columbia court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim for relief arising from the perons -

(1) Transacting any business in the District of Columbia

(2) Contracting to supply services in the District of Columbia

(3) Causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia

(4) Causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or service rendered in the District

63

of Columbia.

(5)    Having an interest in, using, or possessing real property in the District of Columbia, (6) contracting to insure or act as surety . . . or (7) marital or parent and child relationship . . (b) When jurisdiction over a person is based solely upon this section, only a claim of relief arising from acts enumerated in this section may be asserted against him. Number (4) The Federal Bureau of Prisons have a office in the District of Columbia, directed defendants Wilson, Gray to have plaintiff placed in solitary confinement "after their consultation with the Bureau, and was told to plaintiff that his isolation was ordered by the main office and through the Bureau agents plaintiff suffer tortous injury outside the district of Columbia. Number (1) the Federal Bureau of Prison's main office is in D.C. and they transact business in the District of Columbia.    The U.S. Parole Commission is in Chevey Chase Maryland, and Number (1) transact business in the District of Columbia pursuant to National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act) Pub.L. No. 104-33, 111 STAT. 712, 734-37) (Codified at D.C. Code § 24-101 et. seq. (2001 & Supp. 2005)) D.C. Code 13-423(A) see **Cohen v. U.S. Dept. of Air Force, 707 F.Supp. 12** "District of Columbia was proper venue for suits against military defendants, based in Pentagon."

## Personam Jurisdiction

Plaintiff is not a Federal prisoner, plaintiff is a D.C. Code Committee, sentence in D.C., domicile in D.C. and Congress

adopted the National Capitalization and Self Improvement Act of 1997 (Revitilization Act) Pub. L. 104-33 § 11231(a)(1) effective Aug. 5, 1998 which is codified at D.C. Code § 24-131 (2001). This legislation transferred the parole jurisdiction of D.C. Code Prisoners to U.S. Parole Commission, and transferred housing of D.C. Code felons to the Federal Bureau of Prisons. However, Plaintiff's § 1983 suit against these agencies who do, transact business in the District of Columbia and there are "persistent course of conduct" such as parole hearings at C.D.F. D.C. Jail, all halfway houses in the District of Columbia, the Commission hold hearings (2). in essences are "contracted" to supply services in the District of Columbia to D.C. Code prisoners. This demonstrates "minimum" contacts necessary to confer personal jurisdiction upon the District Court for the District of Columbia contrary to defendants' claim, the constitutional violations did not occur in Kansas, the "room" of a hearing do not qualify as jurisdiction, the decisions in the Federal Bureau of Prison office in D.C. and the decision at the U.S. Commission in Chevey Chase Md. were the impetus for the Civil Rights Violation Racial Conspiracy, Vindictiveness, Cover-up and is the nexus - between D.C. for jurisdiction with respect to plaintiff's claim. 28 U.S.C.A. §1402(b) **Kimberlin v. Quinlan**, 774 F.Supp. 1, 9-10 (D.C. 1991).

It was Attorney Posch who from her office, in Chevey Chase MD. conducting traffic, calling the "shots" arose from her office, not from any office in Kansas. Additionally (none) of the defendants live or reside in Leavenworth Kansas, there are

65

absolutely no records in Kansas, no clue to the events, because all wheeling and dealing "originated" from Attorney Posch office in Chevey Chase Md. The (2) defendants who are in Kansas only foretold of the events that would occur, and matters did materialize as they had predicted. These defendants Albert Wilson, Mike Gray through declaration or verification would not be unnecessary inconvenience, in fact these defendants has failed to file an answer to the Court's order within the proscribe time by law, apparently they answer to no one. Behind this back dropp, the only relevant witnesses and parties who did respond are located in the District of Columbia (Federal Bureau of Prisons office) and Chevey Chase Md. all files records are in and on the outline of the District of Columbia called the Washington Metropolitan area. Also there is a "compelling" reason that venue in D.C. is warranted. it was foretold to plaintiff also by defendant Wilson, that he has family members and friends within the Court in Topeka Kansas and that they are subject to his Mother's influence, and being that defendant Wilson has proved creditable in regards to the U.S. Commission and his Mother's association there; giving rise to all sorts of arbitrary actions due to her connections, it is not unreasonable to believe that defendant Wilson foretelling plaintiff his family and friends are controlling in Topeka Kansas Court system shouldn't be believed. . .

Thus, venue and jurisdiction is proper in the District of Columbia under District of Columbia law acts of agents can be

66

attributed to agents principal for purpose of asserting personal jurisdiction.  D.C. Code 1981 § 13-423(a)  see, **Goffe v. Blake**, 605 F.Supp. 1151.

## 12(b)(6) Rule

Defendants responded to plaintiff's complaint under 12(b)(6), however, this rule forbids the attachments of affidavits or other evidence contesting allegations made in plaintiff's complaint, if they do this the Court should either exclude the evidence or convert the motion into Rule 56 motion for summary judgement Fed.R.Civ.P. 12(b) see **United States v. Gaubert**, 499 U.S. 315, 327 (1991) and should the Court do so, plaintiff submit this motion for cross summary judgement on his verified facts.

## CONCLUSION

For all of the foregoing reasons, the defendants, motion to dismiss should be denied in its entirety and plaintiff's motion to proceed further, granted.

*Oliver Boling-Bey*

Respectfully submitted

Oliver Boling-Bey
No. 36688-118 F-Unit
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

67

I, Oliver Boling_Bey hereby verify with knowledge that the forgoing is true and correct.    *Oliver Boling-Bey*


## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day, of March 2006 cause service of the foregoing pre-paid first class to U.S. Attorney John F. Henault D.C. Bar No. 472590 Judiciary Center Building, 555 4th Street, N.W. - Civil Division, Washington D.C. 20530.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Oliver Boling-Bey,
        Plaintiff,

                                Civil  Action  No.  05-1732

    v.


U.S. Parole Commission, et. al.
        Defendants.



ORDER

    Upon consideration of plaintiff's motion in opposition to
defendants' motion to dismiss and plaintiff support thereof, the
grounds stated therefore and the entire record in this matter it
is by the Court this_____day of _____ 2006, hereby

        Ordered  that  Defendants'  motion  to  dismiss  is  hereby
        denied and

        That plaintiff's opposition motion is hereby granted.

        Further  ordered  that  discovery  request  that  was  stayed
        in this case is granted in plaintiff's behalf.



                                _____
                                United States District Judge