June, 28 1998

To Whom it May Concern;

Oliver M. Boling 166-863, my husband, has rehabilitated and educated himself over the years by reading, self-examination, lengthy discussions with me and the medical doctor at Central. He attended the drug program, Unfoldment, until the new program was brought in, attended Na, enrolled in technical school, and is seeking psychiatric counsel.

For years he has been remorseful for his crimes, has understood the devastating effect it had on the victims, families (including his own) and his own life. His entire thinking has changed from society owing him something to him wanting to succeed in life and give back to society. He is a loving, caring human being with compassion and has been a great husband to me, very helpful and supportive. (We'll celebrate our tenth wedding anniversary in

Doc 1 Pg 1 Ln 1" Pos 1"

July). He is well-respected by my family, the other residents and officers at Central.

When he comes home, I will be helping him to re-adjust to society; teaching him the ins and outs of everyday living, helping him to get an entry level job and assisting him on every level to succeed. I am employed by the D.C. government in Public Works and have been there since October 1992. I am well-respected, stable and a very strong individual who is well-qualified to assist Oliver in becoming a productive citizen. We've both worked hard together over the years to reach this point and will continue even after his release. We're determined, persevering and fortitudinous people with great resolve and character.

We love and respect each other and are looking forward to the challenges ahead. I need my husband at home. He's been incarcerated for over 24 years and we're at an age of maturity, stability, and understanding. Oliver's past record belies his present state of strength, character and faith which he's developed over the years to his credit.

Thanking you ahead of time for your positive decision.

Very Sincerely,

Doc 1 Pg 1 Ln 4.83" Pos 2.5"

Mrs. Tyra M. Boling          ExhibiT A

219     REVOCATION OF PAROLE:   PRELIMINARY INTERVIEWS AND REVOCATION HEARING
         (Continued)

219.1    (Continued)

(a) The condition(s) of parole alleged to have been violated or
    offense(s) alleged to have been committed;'

(b) The right to written notice of the claimed violations or parole;
    disclosure to the parolee of evidence against him or her; and
    opportunity to be heard in person, to present witnesses and
    documentary evidence, and to confront and cross-examine adverse
    witnesses (unless the hearing officer specifically finds good
    cause for not allowing confrontation) at a hearing before the
    Board or a member of the Board; and a written statement of the
    Board's final determination;

(c) The approximate time, place, and purpose(s) of the revocation
    hearing; and

(d) That if he or she admits the charge(s) and waives his or her
    right to be represented by counsel, and to present and confront
    witnesses at a revocation hearing before the Board or a member
    thereof, the person conducting the preliminary interview will
    conduct the revocation hearing at that time and place.

219.2    The Board or a member may review the record in lieu of conducting a
         revocation hearing upon a written determination that at the
         preliminary interview the following occurred:

(a) The parolee knowingly and intelligently admitted committing the
    alleged offense or violating conditions of parole; and

(b) The parolee knowingly and intelligently waived his or her right
    to be represented by counsel, and to present and confront
    witnesses at a revocation hearing before the Board or a member
    thereof.

219.3    If the parolee chooses to exercise his or her right to a revocation
         hearing before the Board or a member of the Board, the revocation
         hearing shall be held at or reasonably near the place of the alleged
         parole violation or arrest, within sixty (60) days of the preliminary
         interview.

219.4    If the revocation hearing is conducted by a member of the Board or an
         examiner, that member or examiner shall submit proposed findings,
         conclusions and recommendations in writing to the Board.  Only the
         Board may thereafter terminate parole or modify the terms and
         conditions of parole.

219.5    If the Board finds after a revocation hearing that the preponderance
         of evidence does not establish a violation of the conditions of
         parole, the Board shall immediately reinstate the parolee to parole
         supervision.

Exhibit·B

Allegation # **)** :  Subject committed a ☒noncriminal ☐ criminal

violation of Parole Condition # _505_ by the following

alleged conduct on or about_____199_ : _Used a deadly weapon_

_(cane) to strike his wife, on March 31, 1999. Subject_

_was charged with Assault on 4-2-99_

---

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:_____

Case # _M-3741-99 B_    Status: _4/2/99- Nolled Dismissed_

_for Want of Prosecution_

| Findings of Fact | Evidence |
|---|---|
| _Denies_ | _Compl. Didn't show_ _+ case was dismissed_ • _163 stated seily assaulted_ _his wife with 2 canes_ • _Letters from wife_ _Corroberated police_ _report_ |

<u>CONCLUSION</u>

☒✓  Parole Violation Sustained

☐   Parole Violation Not Sustained

☐   No Finding



Allegation # 3.: Subject committed a ☒ noncriminal ☐ criminal
iolation of Parole Condition # 0201 by the following
alleged conduct on or about_____199__: Traveled outside the
limits of parole to Hartford Connecticut, on
4-10-99; Without permission from P.O.

_____

Evidence: ☐ Police Report ☐ Field Sheet ☒ Other: 2/25/00 Letter from
                                    Deandre Smith, Victim advocate, U.S attorn
Case #_____    Status:_____ office

| Findings of Fact | Evidence |
|---|---|
| Admits | Admission |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding

EXHIBIT-D

US PAROLE COMMISSION                                          Ø 009



# State of Connecticut
## DIVISION OF CRIMINAL JUSTICE

### OFFICE OF THE STATE'S ATTORNEY
JUDICIAL DISTRICT OF HARTFORD / NEW BRITAIN

JAMES E. THOMAS
STATE'S ATTORNEY

101 LAFAYETTE ST.
HARTFORD, CT 06106
TELEPHONE:
□ PART A 566-3190
□ PART B 566-5996

February 17, 2000

Diedre Smith
U.S. Attorney's Office
555 Fourth NW
Room 4443
Washington, D.C. 20001

Dear Ms. Smith,

   Per our telephone conversation of February 15th I am writing to confirm that on
December 9, 1999, Oliver Boling was convicted in G.A. 14, Hartford, CT, of two counts of
Criminal Violation of a Protective Order, a class A misdemeanor carrying a maximum of one
year in jail for each count, under docket number H14H-CR99-535194 and received a sentence of
time served. Additionally, on January 11, 2000 he was convicted in G.A. 16, West Hartford, CT,
of one count of Disorderly Conduct under docket number H16W-CR99-98630 and one count of
Criminal Violation of a Protective Order under docket number H16W-CR99-98840 and was
sentenced to time served. As part of the West Hartford plea agreement, the state entered nolles to
charges of Stalking in the Second Degree and Criminal Trespass.
   With respect to the Hartford matter, I can represent that this plea was arrived at based on
the understanding that Mr. Boling faces substantial exposure to incarceration in Washington
based on his parole status.
   I have enclosed a copy of the West Hartford police report and have requested certified
copies of his convictions from the state record center which will be forwarded to you has soon as
they become available. If I can be of any further assistance please contact me at 860 566-5996.

Sincerely,

Thomas R. Garcia
Assistant State's Attorney

Exhibit-D

AN EQUAL OPPORTUNITY EMPLOYER

RE: *Boling, Glenn*

Allegation # 5: Subject committed a ☐ noncriminal ☐ criminal

violation of Parole Condition # _0901_ by the following

alleged conduct on or about_____ 199_: *Failed to obey all laws*
*as evidenced by his arrest for criminal Trespass*
*and Stalking 2nd Degree in regards to his*
*estranged wife. Mr. Boling filed a civil protection order*
*on 4-1-99.*

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:_____

Case # _99 E SF 824_    Status: _12/9/99 - Convicted of 2 cts. of_
*Crim. Violation of a Protective Order*

| Findings of Fact | Evidence |
|---|---|
| *Admits* | *Admission* |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding


EXHIBIT-E

RE: _Boling, Eliva_

Allegation # 4 :   Subject committed a ☐ noncriminal ☐ criminal

violation of Parole Condition # _0901_ by the following

alleged conduct on or about_____199__: _Failed to obey all laws_
_as evidenced by his arrest for Criminal Trespass_
_Disorderly Conduct, and Stalking 2nd Degree in_
_West Hartford, Conn. on 4-10-99, held on 85000 bond_

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:_____

Case #_____          Status: _Sentenced to time served_
                        _between 4/16/99 - 2/7/00 in Connecticut_

| Findings of Fact | Evidence |
|---|---|
| Admits he shouldn't have gone to CT or tried to get in touch w/wife. Says he was "lured there" by her relatives to set him up for arrest | new Conviction |

CONCLUSION

☐✓  Parole Violation Sustained

☐   Parole Violation Not Sustained

☐   No Finding

EXHIBIT-F

3-1999  18:21

99018011

202 307 3228     P.09/10

STATEMENT BY LYNN BOLING



3-30-99-Tuesday around 8p.m.  After returning from Haines Point, we had sex and
Oliver began afterwards to accuse me of being bi-sexual; of lying to him about "the guy
at the laundromat and having an affair with "that guy" (Joe Garnett).  He slapped me
about the face, pulled my hair(twisting my upper body around and wrenching my neck).
He punched me in the chest, stomach, ribs and kidney area (left side), sat on top of
me with his knees holding my arms back, put a pillow over my face and pushed it back
and forth really hard on my face repeatedly.  He said he would pull my hair out small
clumps at a time and began to pull it.(Later when I brushed my hair, alot of hair came
out in the brush).  He stood up and stomped and kicked me with his bare feet.

_____ he was saying things like "You're a lying motherfucker.  I know you had sex with

RE: _Boling, Oliver_          DCDC#: _186281_          _229182_

Allegation # 2.   Subject committed a ☐ noncriminal ☒ criminal

violation of Parole Condition # _0901_ by the following

alleged conduct on or about____199_: _Failed to obey all laws_

_when arrested for Assault with a Deadly_

_Weapon. on 4/2/99_

Evidence: ☒ Police Report  ☐ Field Sheet  ☐ Other:_____

Case # _M3741-99B_          Status: _6-29-99 Dismissed for want_
                                     _of Prosecution_

| Findings of Fact | Evidence |
|---|---|
| Denies | Compl. didn't show<br>Case dismissed<br><br>163, Complainants<br>statement + letter from<br>office of the US Attorney<br>Victims advocates ofc<br>are convincing evidence<br>that an assault took<br>place |

CONCLUSION

☒   Parole Violation Sustained

☐   Parole Violation Not Sustained

☐   No Finding

EXHIBIT-H

.MENT OF JUSTICE  *B-P-9*

REQUEST FOR ADMINISTRATIVE REMEDY

Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Boling, Oliver _____  #36688-118 ___  A-3 _____  Leavenworth U.S.P.
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　　UNIT　　　　　INSTITUTION

**Part A– INMATE REQUEST** On or about October 2, 2003 Mr. Wilson informed me that I was
cheduled for a parole hearing in December 2003. At this meeting I was allowed to review my
.le. Upon doing so, I noticed inaccurate time sheest. I brought this finding to Mr. Wilson, who
)ld me just he just started as a case manager and did not know and that he would ask Ms. Ashman,
is boss, about what to do. Thereafter, Mr. Wilson said he spoke with Ms. Ashman concerning my
ime sheets and that she said I violated parole for a domestic, therefore, Mr. Wilson should
eave my files alone. Mr. Wilson then indicated to me that he didn't know my wife was white and
nat it's a bad scenario for me. A few days later I approached Mr. Wilson, inquiring about the
rogress report needed for the parole hearing. Mr. Wilson told me to stop bugging him and get out
f his face and that I shouldn't have hit my wife and than I wouldn't have to face Kansas finest.
n December 3, 2003 before entering the office where the parole Commission was holding session,
r. Wilson approached me. I asked him where was my progress report. He told me, "don't worry about
hat, your're lucky your ass is alive to be at a meeting," as he smiled and stuck his hand in the
rout of his pants with three (3) fingers hanging out. I did not know what that meant. On December
, 2003, Mr. Wilson called me into the main office. Mildner, Chiles, Flugrant were all present.
ir. Wilson told me that my wife had written the warden and said that I had tried to contact her.
: asked Mr. Wilson to provide the evidence because I never wrote her. He began to threaten me in a

[Continuation of following page]

February 27 2004 ___
　　　　DATE

*Oliver Boling #36688-118*
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED
2004 MAR -2 AM 11: 45
WARDEN'S OFFICE
USP LEAVENWORTH



_____
　　　DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

THIRD COPY: RETURN TO INMATE

CASE NUMBER: 324008-F1

_____

CASE NUMBER: _____

**Part C- RECEIPT**
Return to: *Boling, Oliver M.* ___  36688-118 ___ A-3 ___ *USP Leav.*
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　REG. NO.　　UNIT　　INSTITUTION

SUBJECT: _____

2-1-04 ___  _____
　　　　　　　　RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

disrespectful manner and told me that he was going to put the F.B.I. on me to investigate
and that he will have to write an incident report and get the Parole Board to retard my
presumtive parole date recently obtained (december 3, 2003). On December 8, 2003, I spoke
to Unit Manager Mildner concerning the December 5, 2003 incident and that I was humiliated
and felt Mr. Wilson's actions were abusive in nature. Mr. Mildner advised me that he had
talked to Wilson and that he told him he didu't handle the situation too well and advised
Mr. Wilson to talk to me. Thereafter, Mr. Wilson called me into his office and said man to
man I don't care too much for D.C. niggers and you, Boling, are getting on my nerves. He
continued to explain that if I were "wise" and observed how the Black staff behaved, they
stay in their place and you better too. On January 12, 2004, I was on call out for Lab at
the Hospital and Mr. Wilson requested that I take a blood test, which he said was mandatory
before release. I declined due to my religions beliefs. On January 13, 2004 Mr. Wilson and
case Manager Pierce called me into the office. They told me I had to give blod or never go
home. I asked them to show me a policy statement. Mr. Wilson said, **"you're a smart ass coon
huh?"** I said "I resent that type of talk," and left the office. On January 14, 2004, I was
called before Team. Mildner, Chiles, A-3 Secretary, and Wilson, who was the spokesperson
conducted the meeting. He handed me a paper which he claimed was policy about my having to
take a blood test before he started on my half-way house package. The discussion then turned
for my request to transfer to an F.C.1. Mr. Wilson said I was at 15 points. I said for two
years I was at 7 points, how did I get up to a 15 ? Mr. Wilson began to hollar and say it
was because of your 1976 case and the domestic on your wife. I advised him that **P.S. 5100.06
Policy** does't include the reasons he's advocating. Mr. Wilson then became angered and very
hostile. I then said if you would help me correct my file this problem wouldn't exist.
Mr. Wilson screamed, **"I ain't here to help you, my job is not suppose to help you."** This was
said so loud inmates began to peer into the office. Mildner, Chiles, and the Secretary
heard these statements. No one intervened, so i removed myself from the office. Thereafter,
I learned that the policy for blood, in which Mr. Wilson presented to me before the team,
was a policy that was rescinded **(See attached P.S. 6190.02)**. Mr. Wilson continued to seek
means to humiliate me. I was called to Psychology on January 16, 2004. Dr. Donnovan told me
that Mr. Wilson wrote a Memo, gave it to Ms. Ashman, who gave it to his boss, asking him to
see me. with suggestions that I may be participating in homosexual activities and that's
why I don't want to give blood. On January 22, 2004, Mr. Wilson gave me my notice of action
from parole, in which, indicated it was faxed December 19, 2003 to Leavenworth. However,
30 days later, Mr. Wilson gives it to me, which prevents me from appealing within the pro-
scribed time.

### SUMMARY

These unprofessional comments, bias, discriminatory practices, are in direct conflict
of **Program Statement OP1, Number 3420.09 Employee Conduct and Responsibility, (E)** Employees
will uphold the ethical governing this profession.(3) Employees may not use profane, obscene,
or otherwise abusive language when communicating with inmates, staff or others. Employees
shall conduct themselves in a manner which will not be demeaning to inmates, or fellow
employees, nor are they to display open or cloase bias, or **RACIAL SLURS.**

### REQUEST

Because of the gravity of this abuse, the racial overtures, the propensity to conduct
himself in such a manner unmonitored, with what seems to be immunity, to express intentions
to harm, retaliate, and the resources to achieve it, I request that Case Manager Wilson
be **immediately** removed from my case and that I be assigned a new person to review my case
and be given another team meeting to consider issues Wilson's bias prevented him from
reviewing in a fair and impratial manner. I further request that because Ms. Ashman failed
to detect the personal bias and vindictiveness of Wilson, and the professionlism to restrain,
instead to condone, encourage, co-conspire, I ask that she not interfere in my reconsoder-
ation. Additionally, I ask that Mr. Wilson receive psychological counseling for his anger
and racial problem, and that he be cautioned against retalitory actions, either direct or
indirect, and that he be investigated to the fullest extent of the law.



Exhibit - I

AFFIDAVIT and Verification

I _Nathan Harris_ Afficant who is of sound mind hereby can testify to the following and sware under the penalty of perjury that the foregoing statement is true and correct.

On or about December 9,2003 while in A-3 unit at Leavenworth U.S.P. I was standing at the doorway of casemanager Albert Wilson office the door was open and inmate Boling-Bey was sitting inside I heard Wilson tell Boling-Bey that he should not have married a white woman and that he dont approve of this and that O.J. made him feel this way, Boling-bey said he resent that type of, talk at that point Wilson said man to man, he dont like niggers and especially dont like D.C. niggers.

I became upset and expressed my resentment to Wilson for his statement and that it was unprofessional Wilson told me to get to stepping.

VERIFICATION

I _Nathan Harris_ have read the foregoing statement and and hereby verify and testify to the above statement I have made therein and the statement is true and correct.

_Nathan Harris_ 39359-066
Nathan Harris # 39359-066
U.S.P. Leavenworth
P.O.Box 1000
Leavenworth Kansas 66048

January, 7 2004



REQUEST FOR ADMINISTRATIVE REMEDY

RTMENT OF JUSTICE
Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: _Howard, Clinton_    _92588-011_    _B-lower_    _USP-Leavenworth_
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST

I am requesting that the Service described in my BP-8 by Case Manager Luey
be immediately ceased and his racial comments, threats, and disrepect to
me be ceased and there be no related retaliatory measures from him
through any officer to me.

I further request the Relief Requested in my BP-8. (see BP-8)

_6-20-03_
DATE

SIGNATURE OF REQUESTER

Part B- RESPONSE

RECEIVED
2003 JUN 24  PM 12:46
WARDEN'S OFFICE
USP LEAVENWORTH

Exhibit-K

_____    WARDEN OR REGIONAL DIRECTOR
DATE

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

CASE NUMBER: _302777-F1_

SECOND COPY: RETURN TO INMATE

CASE NUMBER: _____

Part C- RECEIPT

Return to: _____    _____    _____    _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

epartment of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: _Oliver, Oliver_     _36688-118_     _A-3_     _Leavenworth_
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL** My Complaint is against Albert Wilson and Mike Gray casemanagers, on June 25, 2004 I was stoped in the hallway by these two case managers and told they talked to my former Wife and they will pay for her flight to Kansas for my July 15, 2004 reopening and that Wilson Mother worked for the U.S. Commission and the attorney Resch sent her a favor or two. Also in the marshall I heard Wilson say to Gray, that he is and they looked me in the face and smiled. Wilson manufactured documents sent them to the U.S. Commission against me. Wilson is not my case manager and have been calling my former wife instigating her and coaching her to help Gray, Wilsons custody and my present case manager to misplace me, my cell was shaken down every day for orders of Wilson and my legal mail destroyed.

_7-24-2004_                              _Oliver Oliver_
DATE                                     SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Exhibit L

_____ DATE                              _____ REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: _____

**Part C—RECEIPT**
                                                 CASE NUMBER: _____

Return to: _Oliver, Oliver_     _36688-118_     _A-3_     _Leavenworth_
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _Retaliation misconduct intimidation interference of Wilson Mother clout._

BP-230(13)

**U.S. Department of Justice**
United States Parole Commission

Notice of Hearing-Parole Application
Representative and Disclosure Request

Date  7-13-04

Name: Boling, Oliver

Register No: 36688-118                Institution  USP-LVN

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

---

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for  Reconsideration hearing
to  July                              , 19 2004

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

_____         I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days
(Initials)        advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

---

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

_Oliver Boling_                              _July 13, 2004_
(Signature)                                    (Date)

---

3. WAIVER OF PAROLE/PAROLE HEARING:
XOB ~~at this time without~~              A. I wish to waive parole consideration at this time.
(Initials)

_____         B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary
(Initials)        Committee infractions since my last hearing.

_____         C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE:
(Initials)        *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists
in your case.*)

_____         D. I wish to waive mandatory parole.
(Initials)

NOTE:    1) If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

2) Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

---

4. REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.
Name of Representative: _Attorney as Representative time will be obtain_

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER:

_____         I do not wish a representative at my hearing.     EXHIBIT-M
(Initials)

PAROLE FORM I-24

**Posch, Pamela A. (USPC)**

| | |
|---|---|
| **From:** | Posch, Pamela A. (USPC) |
| **Sent:** | Friday, December 17, 2004 12:19 PM |
| **To:** | 'Gray, Michael' |
| **Subject:** | RE: Boling, Oliver |

I did not receive a copy of the I-24.  Do you know if it was sent to me?
Thanks,

Pamela A. Posch
Assistant General Counsel
U.S. Parole Commission
301-492-5959

-----Original Message-----
From: Gray, Michael
Sent: Wednesday, December 15, 2004 5:34 PM
To: Posch, Pamela A. (USPC)
Subject: RE: Boling, Oliver


I have pulled it from his central file and will have my secretary fax a
copy
of it in the morning.


Mike


>>> Pamela Posch 12/15/2004 4:25:07 PM >>>
The form that I need is the I-24 parole application in regard to his
November
30, 2004.  I know that he did not appear for the hearing but if he
completed
the I-24 form there is a box where he signs waiving parole.  I only need
this
form from this most recent hearing.  (I am not interested in any earlier
I-24
forms that he might have completed for past hearings.)  If he did not
complete
the I-24 form in connection with this hearing, can you have him complete
it
now before he leaves?  If that is not possible or if he refuses, please
note
it on the I-24.

My fax number is (301) 492-5563.

Thank you,

Pamela A. Posch
Assistant General Counsel
U.S. Parole Commission
301-492-5959, ext. 239

-----Original Message-----
From: Gray, Michael
Sent: Wednesday, December 15, 2004 4:46 PM
To: Posch, Pamela A. (USPC)
Subject: Boling, oliver


Is the I-29 all you need?  He transfers in the morning to USP Lewisburg,

### AFFIDAVIT and Verification

I _Gary Garther_ #05902-007 _____ Afficant who is of sound mind can testify
to the following statement in which is true and correct,and I further
declare under the penalty of perjury that the foregoing statement is
true and correct.


On or about July 13,2004 while in the education department at USP-
Leavenworth Kansas I observed casemanager Albert Wilson,Mike Gray
and U.S.Parole Commission examiner Jeffery Koastbar in the halway,
as inmate Boling-bey approached the officials  Jeffery Koastbar
pointed at Boling-Bey and hollered we have the power nigger boy."
This occurred between 11:am and  2pm.

### Verification

I _Gary Garther_ #05902-007 _____  have read my foregoing statement and hereby
verify and can testify to the above statement in which is true
and correct.



                              _Gary Garther_ #05902-007 _____
                              Gary Garhers # 05902-007
                              U.S.P.Leavenworth
                              P.O.Box 1000
July 18,2004                  Leavenworth Kansas 66048


# Exhibit - O

AFFIDAVIT and Verification

I _____ Afficant who is of sound mind can testify to the following statement in which is true and correct, and I further declare under the penalty of perjury that the foregoing statement is true.

On or about July 13,2004 while in the education department at U.S.P. Leavenworth Kansas I heard U.S. Parole Commission examiner Jeffery Koastbar call Boling-bey a nigger boy, this was done in the presence of casemanager Albert Wilson and Mike gray,this occured between 11am and 2pm.

I _____ have read my foregoing statement and hereby verify and can testify to the above statemant which is true and correct.

_____
Gary Byrd # 98411-131
U.S.P. Leavenworth
P.O. Box 1000
Leavenworth Kansas 66048

July 22,2004



# HEARING SUMMARY

**.ae:  Boling, Oliver**                                                          Reg No:  36688-118

## Hearing Parameters

Hearing Type ..............................: **Special Reconsideration**

Hearing Date .............................: 11/30/04

Examiner ....................................: Rob Haworth

Institution ..................................: Leavenworth USP

## Sentence Parameters

Sentence Type.............................: **DC Parole Eligible**

MR/Statutory Release ..................: 7/1/2032

Full Term Date............................: 5/22/2048

Months in Custody.......................: 68 as of 12/9/04

Fines/Restitution/Assessment ......: None

Detainer.......................................: None



EXHIBIT-R

**Additional text regarding the above parameters:** The subject refused to attend his hearing on this date. Case Manager Michael Gray prepared a Memorandum dated 11/30/04 that includes his attempts to have subject to attend the hearing and subject's refusal.

The subject is not allowed to waive the hearing ordered under 28 C.F.R. 2.28(f). Case Manager Gray was instructed to inform the subject that if he did not attend his hearing a decision would be made in his absence. Case Manager Gray informed subject of that fact and subject still refused to attend the hearing.

## Prior Action & Institutional Factors

**Prior Action:**  This case now contains a large volume of information relating to previous Commission Action and current information. This examiner has attempted to simplify the review process by labeling important documents that need to review by anyone making a decision in this case. Those documents have been arranged and labeled for review.

There is a Prehearing Assessment that was prepared by Examiner Price on 6/7/04. That 5-page document should be reviewed first.  Following that is a copy of the hearing summary from 12/3/03 prepared by Mr. Husk with the NOA dated 12/19/03 showing that a presumptive parole was granted 4/9/05 after service of 72 months.

Subsequent to the NOA dated 12/19/03 additional information was received concerning subject's violent behavior toward his former wife, Lynn Boling. There's a Memorandum in the file dated 5/3/04 from USPC Attorney Posch to Administrator Husk pointing out some of the new information and asking if Mr. Husk knew about that information at the time of 12/3/03 hearing. Mr. Husk responded with a memorandum dated 5/13/04 explaining that some very important information was not available to him at the time he conducted the hearing. Ultimately, a NOA was ordered 6/5/04 reopening the case and ordering this Special Reconsideration Hearing.

r former wife were much more serious than previously thought. It is likely that you would pose a serious ~~~ her if you were to be released into the community anytime in the near future.

**Additional Text:** None.

**Executive Reviewer's Comments:** Kostbar – 12/20/04 – 

I agree with Examiner Haworth to a point. However, I disagree with him regarding awarding the subject a parole date at any foreseeable date. The subject has exhibited a violent history toward the victim and her family.

While we rated the offense severity a category five for the revocation behavior based upon the one assault with a cane (upon which we had little information at the time), the testimony of the victim suggests that he had engaged in other assaults that rose to the level of attempted murder, but were not part of the warrant application.

The victim reported that our subject has twice attempted to strangle her and she fought him off or she believes she would have otherwise been killed. She also reports that he has threatened to kill her and her family.

The subject has refused to participate in the "reopen" hearing process and has refused to listen to the tape of the victim relative to disclosure. He has had an attorney but due to conflict with the attorney, no longer has an attorney.

Examiner Haworth desires to reparole the subject after 132 months, which is above the gl's (40-60 months) for the Category Five behavior listed on the warrant application. I disagree. I believe this person is of extreme risk to the victim and the victim's family if he is every released on this term. His revocation behavior involved stalking and he has exhibited obsessive traits relative to the victim.

I believe that the subject should be continued to a 15 year reconsideration hearing (4/2014)

Note – The subject cannot "waive" this type of hearing. Thus, in spite of the fact that he has refused to appear repeatedly, the hearing has been appropriately held. The subject was told his hearing would be held in his absence but he refused to attend.

RECOMMENDATION –

VOID THE NOTICE OF ACTION DATED 12/19/03 AS IT RELATES TO PRESUMPTIVE PAROLE 4/9/05 AFTER SERVICE OF 72 MONTHS. CONTINUE TO A 15 YEAR RECONSIDERATION HEARING, APRIL, 2014.

SIH – 11/2006

GUIDEINE USE: A DECISION ABOVE THE GUIDELINES IS WARRANTED AS YOU ARE A MORE SERIOUS RISK THAN INDICATED BY THE GUIDELINES DUE TO A PRIOR HISTORY OF FELONY VIOLENCE AS EVIDENCED BY YOUR CONVICTIONS FOR SODOMY AND ASSAULT WITH A DANGEROUS WEAPON IN 1975 AND ARMED ROBBERY IN 1983. YOUR CURRENT VIOLATION BEHAVIOR INVOLVED ASSAULT WITH A CANE ON A FEMALE VICTIM WITHIN 2 MONTHS OF YOUR RELEASE. ALSO, ADDITIONAL ADVERSE INFORMATION WAS FOUND IN YOUR CASE

 

GOVERNMENT OF THE DISTRICT OF COLUMBIA
District of Columbia Board of Parole
300 Indiana Avenue NW, 2nd Floor
Washington, DC 20001

DATE: April 5, 1999

From: _____ Eric Mays _____                    PAROLE UNIT # SSU
          Parole Officer

SUBJECT: REPORT OF ALLEGED VIOLATION(S)          [ ] UPDATE

RE: Boling, Oliver _____    166-863    229-182    378976H
        Client's Name        DCDC #      PDID #      FBI #

    M    ████/54    Active/Intensive    2/17/99    6/29/2047
  Sex    DOB      Supv. Type/Level    Date Supv.      FTD
                                          Began

    Special Conditions(s): Nar. Surveillance, OPDP & Refer Inten Sup

    _____ Robbery W/Any WPN _____
              Offense(s) On Which Parole May Be Revoked

    16-48yrs,40mos-20yrs, 40mos-20yrs        10/30/85 & 5/25/77
          Aggregate Sentence              Date Sentence Began

    Discretionary 2-16-99 _____        1              0
          Release Type and Date      # Releases    # Revocations

ACTION RECOMMENDED:  [X] Warrant  [ ] OAR  [ ] OAPC  [ ] PA

                    Other: _____
    CODE   ALLEGATION(S)/DATE(S):                EVIDENCE - SOURCE & TYPE
           District of Columbia Violation (s)

1. 0505    Used a Deadly Weapon (cane) on         D.C. Superior Court
           3-31-99                                    Affidavit

2. 0901    Failed to Obey All Laws on 4-2-99      D.C. Superior Court
                                                       Affidavit



## MEMO REGARDING HEARING

**Boling, Oliver**                                   Reg No:  **36688-118**

To .........................................: **File**
Hearing Date .....................................: 9/22/04
Examiner.............................................: Samuel R. Robertson
Institution ............................................: Leavenworth USP

Reply to the Attention of S. Robertson to File.

~~FOIA EXEMPT – DO NOT DISCLOSE~~  *Disclosable Per*

The above-captioned prisoner was scheduled for a Special Reconsideration Hearing (Continued Rehearing After Revocation) to occur the week of 9/20/2004 at USP Leavenworth, KS. The prisoner did appear for this hearing as scheduled and was accompanied by his attorney/representative; Jean Phillips, Director of Defender Project, University of KS, School of Law. Attorney Phillips was accompanied by her intern, Norah Clark, a law student.

This examiner would note that the prisoner's parole was revoked by the DC Board of Parole on 7/10/2000 for criminal and non-criminal violations to include:  Criminal Trespass and Stalking, Second Degree and Assault With Deadly Weapon. The DC Board also ordered a Rehearing to occur on 2/7/2003.

Special Reconsideration Hearing (Rehearing After Revocation) was conducted by the USPC on 12/3/2003. Via NOA dated 12/19/03, the Commission determined that the most serious aspect of the violation behavior, Assault With Deadly Weapon, was rated as Category 5. The offense severity assessment of 5, in conjunction with a SFS of 5 produced a base parole guideline of 48-60 months. A decision to parole on 4/9/2005, after the service of 72 months, was ordered with the Special Drug and Special Mental Health Aftercare Conditions.

The decision to parole after the service of 72 months represented a departure above the guidelines and was warranted on a determination that the prisoner represented a more serious risk then his SFS reflected. Cited specifically was the prisoner's criminal history reflecting convictions for Assault With Deadly Weapon and Sodomy in 1975; convictions for Armed Robbery in 1983, which coupled with his 1999 charge for Assault With Deadly Weapon on a female victim (occurring while on parole from the 1975 and 1983 convictions) established the qualitative determination for more serious risk.

Subsequent to this hearing, the Commission issued a NOA dated 6/5/2004 to reopen and schedule a Special Reconsideration Hearing pursuant to 28CFR, 2.28(f), New Adverse Information.

A memorandum from the Commission's Legal Office, dated 5/3/2004, details much of the evidence (certainly adverse to the prisoner) that was not discussed and/or considered at the December 2003 Reconsideration Hearing.

Subsequently, the Rehearing was convened on 7/13/2004 at USP Leavenworth. It is noted that a victim/witness (specifically the victim of the 1999 Assault) did appear, and did provide a statement on the record

**Boling, Oliver, Reg. No. 36688-118**          **Page 1 of 3**

EXHIBIT 7

The hearing was not concluded, however, as the prisoner waived this hearing. The Commission correctly concluded upon review that the waiver constituted actually a continuance of hearing, inasmuch as the prisoner was not entitled to waive this Rehearing After Revocation.

Nonetheless, it is noted that the prisoner, for whatever reason, refused or did not hear the tape recording of the victim/witness statements. It is noted that the Commission had prepared a disclosure packet for this hearing, dated 6/10/2004, and that, the prisoner did apparently review this packet on/around 6/24/2004. The packet did contain a Hartford, CT, Police Report and several letters that he (the prisoner) apparently wrote to his sister.

The examiner at today's hearing, of course, noted that the prisoner is now represented by counsel, this appointment occurring approximately 3 weeks prior to today's hearing.

Counsel for the prisoner did acknowledge, that they had been allowed to review the prisoner's file but offered that nothing in the BOP's file was relevant to the conduct that would be considered at today's hearing.

To make a very long story short, counsel obviously objected regarding disclosure or more specifically, the lack of it. This examiner did contemplate the argument that the decision to revoke and to assess the offense severity at Category 5, had been made at prior hearings, in the presence of the prisoner. Well certainly this is true, and those decisions are essentially immutable, the Commission has reopened the case in contemplation of assessing the conduct as more severe then Category 5 and/or at least determining that new evidence would establish that the prisoner's risk is even greater then previously established. In this regard, the Commission arguably will rely both on previously disclosed and considered evidence as well as new, not previously disclosed evidence.

This examiner did provide a brief reading from Examiner Kostbar's memorandum summarizing the victim/witness statement. The tape of the victim's statement was not available at this hearing however. Moreover, other documents referred to in the reopening discussion have not been disclosed.

The issue of disclosure, both in determining what and/or what not, could be disclosed was beyond what could be managed at an in-person hearing. As indicated, this examiner did provide a brief summary of the victim/witness statement as was provided in Kostbar's memorandum for continuance. Other relevant documents, as mentioned in the reopening memorandum, as well as the original material, may need to be disclosed however. In any event, the Commission will need to resolve this.

The second issue, which is only mentioned in passing, involved the prisoner's contention that this examiner should recuse himself from this hearing. In this regard, the prisoner alleged that his CM, Mr. Gray, had been told ostensibly by another CM, Mr. Wilson, that Wilson's mother, Carole Wilson Mueller, a former Commission employee, and who had also worked at the Leavenworth Penitentiary until retirement, that her friend (yours truly) had been called out of retirement by the Commission, specifically for the purposes of doing the prisoner "in", as it were.

Painful as it was, this examiner did address the allegations on the record as being ludicrous and absolutely without substance. Moreover, this examiner dismissed any notion that such a farcical charge would be the basis for this examiner's recusal.

Off the record, this examiner would privately conclude that staff may have made some remarks of the nature alleged, just to mess with the prisoner. Certainly, the staff exercised bad judgment and to some extent, have

Boling, Oliver, Reg. No. 36688-118                    Page 2 of 3      Exhibit-T

Posch, Pamela A. (USPC)

From:        Husk, Steve (USPC)
Sent:        Friday, July 16, 2004 6:17 PM
To:          Posch, Pamela A. (USPC)
Subject:     Boling, Oliver 36688-118

Pam,

Boling is the prisoner I heard at Leavenworth last December. However, there were some
letters from victim and other critical documents that I didn't have in making release
decision. Thus, USPC reopened the case.

Jeff attempted to hear him this week at Leavenworth. Victim actually came and provided a
statement. However, Boling elected to waive parole consideration because he did not want
to be heard again before 10/2004.

Two questions re: this case:

(1) Jeff wants victim's testimony transcribed. Is this advisable or do we just want tape
of her testimony available?
(2) When we reopened the case, we didn't specifically state to reopen and retard the
presumptive parole date and schedule the reconsideration hearing (mainly because the pp
date was not until 4/2005). He now has signed the box on the I-24 form "waiving parole
consideration at this time" (rather than "waiving the presumptive parole date previously
determined by the Commission"). Do we need a new NOA specifically retarding the previous
presumptive parole date?

Please let me know what you think proper actions are re: these two items. I'm sending file
down to you (with packet including tape) in case you need to look/review it. However, I'm
out until 7/26/04.

Can we discuss it upon my return? If you think we need to take more urgent action, Jeff
will be in Thursday and Friday of next week.

Let me know.

Thanks.

*Exhibit - W*

7/27/04

Steve —
       In response to your questions:

1) The tape does not need to be transcribed. ~~If Boling reapplies for~~ The tape can be sent to his attorney
if he retains an attorney or it can be sent to his
case manager who can allow him to listen to it but
not keep a copy of the tape.

2) He cannot waive a hearing under 28 CFR 2.28(f).
See 2.11-03(b). I recommend ~~that~~ A NOA be issued
continuing him to the next docket ~~and~~ stating that
2.28(f) hearing cannot be waived. P. Posch



U.S. DEPARTMENT OF JUSTICE
United States Parole Commission

5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
Telephone: (301)492-5821
Facsimile: (301)492-5525

April 8, 2005

Mr. Oliver Boling 36688-118
Lewisburg USP
R.D. #5
Lewisburg, PA 17837

Dear Mr. Boling:

Your letter of November 30, 2004 was just referred to me for a response. You included in your letter a signed affidavit, which shows you did not refuse to attend your hearing on November 30 at USP Leavenworth.

Case Manager Michael Gray provided the Commission with a written statement indicating you refused to attend your hearing. Mr. Gray stated he gave you several opportunities to attend the hearing but your refused to accompany him to the hearing room.

Your letter and affidavit have been considered. The Commission chooses to accept Case Manager Gray's version as being more believable. Your next opportunity for a hearing will be in November 2006, as stated on your Notice of Action.

Sincerely,

Rob Haworth
Hearing Examiner

JRH



  

# The Board of Parole
## *of the*
## District of Columbia

## NOTICE OF BOARD ORDER

Order # 1 of 1

In reference to:

DCDC  166-863

DOB ▮▮▮▮▮

DOCKET  H9507-0029

NAME  OLIVER M BOLING

SSN - -        LOCATION  COMPLEX

CONSIDERATION TYPE  H:INITIAL

The District of Columbia Board of Parole issues the following **ORDER:**

DENY PAROLE; RECONSIDER FOR PAROLE BY 08/04/1998

Implementation of this Order shall include the following:
Special Instructions for Reconsideration

COMPLETE VOC TRAINING
INTENSIVE DRUG PROGRAM
NO NEW DISCP. REPORTS
PSYCHOLOGICAL COUNSELING

Remarks:

07/24/1995

Date

Seal

A TRUE COPY
TEST

Director, Michael Green
Parole Determination
D.C. Board of Parole

*Margaret Quick* - ¹

_____

Chairman
on behalf of the Board of Parole

[ Institution ]

The subject states that he does work as a utility person in the unit at USP Leavenworth. He previously worked in the Kitchen. He has not completed any significant programs at the USP.

**Discipline:** None

**Program Achievement:** As noted above, subject has not completed any significant programs. He does participate in a work detail in the unit. He previously worked in the Kitchen at USP Leavenworth. He states he has been at Leavenworth for 2 years. He previously was confined on this PV term at the Red Onion State Prison in VA, the Maximum Security Facility in Lorton, VA, and the DC Jail.

**Release Plans:** If released to the community, the subject will reside with his brother, Donnell Boling, at 1500 Massachusetts Avenue, Apartment No. 12, NW, Washington, DC 20008. The subject states that he can resume his employment with the Department of Public Works in the District of Columbia. He is a refuse operator with that department, according to the information he provided to the examiner at the hearing.

<u>**Guideline Parameters, Evaluation & Recommendation**</u>

**Severity Justification:**   Category 5 because it involved Assault With a Weapon, Stalking and Administrative Violations of Parole.

**Salient Factor Score:**   5

**Modifications From Prehearing:** The examiner has modified the SFS to 5. The Pre-Hearing Examiner counted a commitment for Prison Breach imposed on 5/25/77 as a separate commitment from a 20-year sentence for Sodomy imposed on the same date. It does not appear that Boling was serving one sentence when he escaped from that sentence and received another sentence. Therefore, the examiner does not believe that the 7/18/76 offense for Prison Breach should be counted as a separate commitment. The examiner finds there are only 2 prior commitments that suggest the SFS to 5.

Disciplinary Guideline Range:...............................0
Total Guideline Range: ....................... 48-60 months

**Evaluation:** Subject appeared before this examiner for a Rehearing following the revocation of his parole by the DC Board of Parole. As noted above, the DC Board of Parole made findings of fact that the subject committed Assault With a Weapon. The subject admitted at today's hearing that he threw a cane at his wife during the course of an argument. He also admitted that he violated a Civil Protection Order that the wife's sister had issued against him to protect his wife. The subject did not provide any significant details other then to say that he did attempt to go visit his wife at her residence. The examiner had no other information describing this incident available at today's hearing. The subject stated that he no longer has any contact with his wife.

As noted above, the subject's guidelines are 48-60 months. He verified at today's hearing that he has been in continuous custody since April of 1999. Therefore, the examiner finds that, as of the time of this hearing, he had been in custody for 56 months toward the guideline range.

This subject does have a history of violence, including a Sodomy conviction from 1975 and an Armed Robbery conviction from 1983. The BOP file did not contain a copy of the Pre-Sentence Report for the Sodomy

Boling, Oliver, Reg. No. 36688-118           EXHIBIT - 12

U.S. Department of Justice
U.S. Parole Commission



BOLING, OLIVER                                    R

36688-118      PR002212

Name _

Register DC REHEARIN   LVNVLN 12/3/2003  Institution _

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

Continue to a presumptive Parole after the service of 72 months on 4/9/2005 with the special drug and mental health aftercare conditions.

*Stephen O. Husk* 12/3/03
*K. L. Pinner* 12/12/03
*John R. Simpson* 12/17/2003
*Cranston J. Ratcliffe* 12-18-03

Date_

Date_

**E>|Hibit-13**

DEC 1 9 2003

*(Date Notice sent)*                                    *(Region-specify)*

National Appeals Board _____
                                             *(check)*

National Commissioners _____
                                             *(check)*

Full Commission _____
                                             *(check)*

PAROLE FORM H-6
APR. 83

# Memorandum



| **Subject** | **Date** |
|---|---|
| Boling, Oliver 36688-118 | June 1, 2004 |

| **To** | **From** |
|---|---|
| The Commissioners | Kathleen A. Pinner |
| U.S. Parole Commission | Hearing Examiner |
| | U.S. Parole Commission |

Please see the memoranda dated 05/03/04 from Attorney Posch and 05/13/04 from Case Operations Administrator Husk for background information regarding this case.

I do not recall considering the information outlined in Mr. Husk's memorandum when voting to parole the subject after service of 72 months. However, if during my review of a case I discover adverse information that was not available to the examiner at the time of the hearing, I generally recommend that the Commission remand the case for a special reconsideration hearing to consider the information after it has been disclosed to the inmate. Since I did not follow my usual procedure, more likely than not I was unaware of the adverse information misfiled in Section 2 of the file.



Exhibit 14

 morandum  

| Subject | Date |
|---|---|
| Oliver Boling<br>Reg. No. 36688-118 | May 3, 2004 |

| To | From |
|---|---|
| Stephen J. Husk<br>Case Operations Administrator<br>U.S. Parole Commission | Pamela A. Posch<br>Attorney<br>U.S. Parole Commission |

## Introduction

This memorandum recommends reopening petitioner's case if it is determined that the Commission did not consider all of the available information regarding petitioner's violation behavior.

## Background

A rehearing was conducted in petitioner's case on December 3, 2003, following the revocation of his parole by the D.C. Board of Parole. Petitioner's parole was revoked based on charges of assault against his wife, violating a civil protection order, stalking, criminal trespassing and disorderly conduct. At the time of his re-hearing, petitioner claimed that in regard to the assault charge, he had an argument with his wife and that she threw water on him and, in return, he threw a cane at her. The hearing summary indicates that no detailed information regarding the incident was available at the time of the hearing. But the parole file (on side 2) contains a police report describing a different scenario than that provided by petitioner.

During the hearing, petitioner was questioned as to whether or not he had any contact with his former wife. He claimed that he no longer had any contact with her. However, one month prior to the hearing, petitioner's former wife wrote to the Commission and attached several letters dated from August 2002 to May 2003, that petitioner had sent to her. These letters are located on side 3 of the file. Petitioner claimed during the hearing that in regard to the stalking charge, he was not convicted of this offense but only convicted of violating a civil protection order obtained by his wife's sister. This statement is not accurate. Petitioner's wife obtained a civil protection order from the District of Columbia before fleeing to Connecticut. The documents describing the stalking offense along with the civil protection order are located on side 2 of the file. These documents include a Connecticut police report in which petitioner's wife states that petitioner threatened to kill her and members of her family. Further, also on side 2 of the file is a letter from a victim advocate in the U.S. Attorney's Office in the District of Columbia who stated that, based on her experience, petitioner's wife was at extreme risk of

 EXHIBIT 15

05/03/04

murdered by pe⎯⎯⎯⎯. Again, according to the hearing summary, it does not appear that this information was available or considered at the time of the hearing.

In addition, it is not clear whether or not the Executive Hearing Examiner (EHE) considered the information in the file. The guidelines were calculated as 48-60 months, and a presumptive parole date was set for April 2005, after the service of 72 months. A decision above the guidelines was made based on petitioner's prior assaultive history.

### Recommendation

I recommend that you review the hearing summary and the documents to determine if the information on sides 2 and 3 would have made a difference in your recommendation and/or if you believe the case should be reopened. I also recommend that the file be forwarded to the EHE so that she can determine if she considered the information on sides 2 and 3 of the file in making her recommendation. It appears that the information may not have been considered because it was not filed in the correct section of the parole file. The EHE should prepare a memorandum for the file explaining whether or not the information on side 2 and side 3 was considered in her recommendation and whether or not she believes that the case should be reopened. If the case is reopened for a new hearing, the documents will most likely have to summarized for petitioner prior to the hearing. During the hearing, petitioner should be questioned regarding the information that shows that he did contact his former wife and the information that shows that he threatened to kill his wife and members of her family. A special condition requiring him to stay away from his former wife should also be added.

Also, petitioner's former wife wrote to the Commission in December 2003, requesting information regarding petitioner's release date and inquiring as to where he was actually going to be released in 2005. If the Commission determines to reopen petitioner's case, a letter should be sent to petitioner's former wife advising her that the Commission has reopened the case.



05/03/04

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: BOLING, Oliver | Institution: Leavenworth USP |
| Register Number: 36688-118 | |
| DCDC No: 166-863 | Date:    June 5, 2004 |

In the case of the above-named, the following parole action was ordered:

Pursuant to 28 C.F.R. §2.28(f), reopen and schedule for a special reconsideration hearing on the next available docket.

**REASONS:**

The Commission has determined that there is significant adverse information in your file that was not considered in making the decision contained in the Notice of Action dated December 19, 2003.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001



U.S. Department of Justice
U.S. Parole Commission

BOLING, OLIVER

ER

36688-118    PR006897
Name DC RECONSID    LVNVLN
Register    Week Beginning 11/29/2004

Institution _USP Leavenworth_

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

_Void the Notice of action dated December 19, 2003 as it relates to presumptive parole April 9, 2005 after service of 72 months._

Date _November 30, 2004_

Date _____

(Date Notice sent)

(Region-specify)

National Appeals Board _____
(check)

National Commissioners _____
(check)

Full Commission _____
(check)

PAROLE FORM H-6
APR. 83

on your former wife were much more serious than previously thought. It is likely that you would pose a serious risk to her if you were to be released into the community anytime in the near future.

**Additional Text:** None.

**Executive Reviewer's Comments:** Kostbar – 12/20/04 –

I agree with Examiner Haworth to a point. However, I disagree with him regarding awarding the subject a parole date at any foreseeable date. The subject has exhibited a violent history toward the victim and her family.

While we rated the offense severity a category five for the revocation behavior based upon the one assault with a cane (upon which we had little information at the time), the testimony of the victim suggests that he had engaged in other assaults that rose to the level of attempted murder, but were not part of the warrant application.

The victim reported that our subject has twice attempted to strangle her and she fought him off or she believes she would have otherwise been killed. She also reports that he has threatened to kill her and her family.

The subject has refused to participate in the "reopen" hearing process and has refused to listen to the tape of the victim relative to disclosure. He has had an attorney but due to conflict with the attorney, no longer has an attorney.

*Exhibit 19*

Examiner Haworth desires to reparole the subject after 132 months, which is above the gl's (40-60 months) for the Category Five behavior listed on the warrant application. I disagree. I believe this person is of extreme risk to the victim and the victim's family if he is every released on this term. His revocation behavior involved stalking and he has exhibited obsessive traits relative to the victim.

I believe that the subject should be continued to a 15 year reconsideration hearing (4/2014)

Note – The subject cannot "waive" this type of hearing. Thus, in spite of the fact that he has refused to appear repeatedly, the hearing has been appropriately held. The subject was told his hearing would be held in his absence but he refused to attend.

RECOMMENDATION –

VOID THE NOTICE OF ACTION DATED 12/19/03 AS IT RELATES TO PRESUMPTIVE PAROLE 4/9/05 AFTER SERVICE OF 72 MONTHS. CONTINUE TO A 15 YEAR RECONSIDERATION HEARING, APRIL, 2014.

SIH – 11/2006

GUIDEINE USE: A DECISION ABOVE THE GUIDELINES IS WARRANTED AS YOU ARE A MORE SERIOUS RISK THAN INDICATED BY THE GUIDELINES DUE TO A PRIOR HISTORY OF FELONY VIOLENCE AS EVIDENCED BY YOUR CONVICTIONS FOR SODOMY AND ASSAULT WITH A DANGEROUS WEAPON IN 1975 AND ARMED ROBBERY IN 1983. YOUR CURRENT VIOLATION BEHAVIOR INVOLVED ASSAULT WITH A CANE ON A FEMALE VICTIM WITHIN 2 MONTHS OF YOUR RELEASE. ALSO, ADDITIONAL ADVERSE INFORMATION WAS FOUND IN YOUR CASE



**U.S. Department of Justice**
**U.S. Parole**

BOLING, OLIVER

ORI  36688-118    PR006055
DC RECONSID    LVNVLN
Week Beginning 9/20/04

me _____

gister Number _____ Institution _____

the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action th regard to parole, parole status, or mandatory release status is hereby ordered:

Continue for disclosure of the victim's taped testimony. The disclosure of the tape along with the documents enclosed with the letter dated 6/10/2004, provides you with all of the documents to which you are entitled. There are no further documents to be disclosed for the upcoming hearing. This is your second continuance

Samuel R Robertson  9-22-04

Stephen J Husk  10/6/04

ate _____

E×hibiT - 20

)ate _____

(Date Notice sent) _____    (Region-specify) _____

National Appeals Board _____
                                    (check)

National Commissioners _____
                                    (check)

Full Commission _____
                                    (check)

PAROLE FORM H-6
APR. 83

**U.S. Department of Justice**
United States Parole Commission

Notice of Hearing-Parole Application
Representative and Disclosure Request

Date _____    _____

Name: _____

Register No: _____    _____ Institution _____    _____

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for _____    _____ , __
to __    _____    , 19.

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

_____    I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days
(Initials)    advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

_____    _____
(Signature)    (Date)

3. WAIVER OF PAROLE/PAROLE HEARING:

_____ A. I wish to waive parole consideration at this time.
(Initials)

_____ B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary
(Initials)    Committee infractions since my last hearing.

_____ C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE:
(Initials)    *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists
in your case.*)

_____ D. I wish to waive mandatory parole.
(Initials)

NOTE:    1) If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

    2) Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

4. REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.
Name of Representative: _____

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER:

_____ I do not wish a representative at my hearing.
(Initials)

Exhibit-21

1. INMATE COPY

PAROLE FORM I-34
OCT. 85

| METROPOLITAN POLICE DEPARTMENT WASHINGTON, D.C. CONTINUATION REPORT FOR USE WITH PD163 AND PD379 ONLY | 1-COMPLAINT NO. 99-171111 | 2-ARREST NUMBER 04990 |
|---|---|---|
| | 3-UNIT OR DIST. 4DSU | |

On April 1, 1999 USW 520-99 was issued for the defendant (BOLLING) charging W Cane. The warrant was granted by Judge Barnes of DC Superior Court.


On 4-2-99 the defendant Bolling was arrested pursuant to an outstanding arrest warrant on file, warrant number USW-520-99. The defendant was place under arrest and transported to the fourth district by ofc. Martinez.



| 4-SIGNATURE OF REPORTING OFFICER - UNIT - BADGE NO.   4DSU | 5-SUPERVISOR APPROVING   5-6 T | 6-REVIEWER |
|---|---|---|
| M - a R.ith-   1003 | | |



GOVERNMENT OF THE DISTRICT OF COLUMBIA
District of Columbia Board of Parole
300 Indiana Avenue NW, 2nd Floor
Washington, DC 20001



---

STATEMENT OF ALLEGED PAROLE VIOLATIONS

Date: April 5, 1999

PAROLEE: Oliver Boling

DCDC # __166-863__

ALIAS (ES): Alvin Boling, John Johnson

PDID # __229-182__

_____Carl Johnson_____

FBI # __378976H__

LAST KNOWN ADDRESS: 3636 16th Street NW

DOB: ████████

_#B865 Washington, DC 20001_

RACE: Blk    SEX: M

HGT: 6'0" WT: 225   EYES: Brn   HAIR: Blk   COMPLEXION: Dark

IDENTIFYING SCARS/MARKS:_____

SENTENCE TYPE: X Adult __YRA __FYCA __YRA & Adult __FYCA & Adult

___Subject is at large  X Subject is confined in D.C. Jail___

PAROLE OFFICER:____Eric Mays____    PAROLE UNIT: SSU

The parolee identified above is alleged to have committed the
following violation(s) of parole:

1. Mr. Boling is being cited for using a deadly weapon(cane) to
   strike his wife, Lynn Boling, on March 31, 1999.  Subject was
   charged with assault as a result of this incident and taken
   into custody here in the District of Columbia on 4-2-99.(0505)

2. Mr. Boling failed to obey all laws after being arrested
   here in the District of Columbia on the charge of Assault
   with a Deadly Weapon, case no: M-3741-99B, on 4-2-99.  The ADW
   offense was nollo here in D.C. Superior Court following his
   arraignment on 4-2-99.  Subject was released on his own
   personal recognizance in regards to the Assault-Domestic
   case, and ordered to appear for a status hearing on April 20,
   1999. (0901)



EXHIBIT-23

Allegation # 1.: Subject committed a ☑ noncriminal ☐ criminal

iolation of Parole Condition # _505_ by the following

alleged conduct on or about_____199_ : *Used a deadly weapon*
*(cane) to strike his wife, on March 31, 1999. Subject*
*was charged with assault on 4-2-99*

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:_____

Case # _M-3741-99 B_    Status: *4/2/99 - Nolled - Dismissed*
*for Want of Prosecution*

| Findings of Fact | Evidence |
|---|---|
| *Denies* | *Compl. didn't show*<br>*+ case was dismissed*<br>*· 163 stated seeing assaulted*<br>*his wife with + cane*<br>*· Letters from wife*<br>*corroborated police*<br>*report* |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding

**ExhibiT-24**

| PROSECUTION REPORT | Complaint # 99-171111 | ID # | | CID # 4DDU99-2200 |
|---|---|---|---|---|

**55. EMPLOYMENT HISTORY** (List present employment if any, on Line 1)

| DATE - TO | EMPLOYER | ADDRESS | BUS. PHONE | OCCUPATION |
|---|---|---|---|---|
| al present | DPE | 212 Fl AVE. nk. | unk | veture concess |

**56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES** - (Begin with Immediate Family)

| | DOB / AGE | NAME - LAST, FIRST, M.I. | ADDRESS - STREET, CITY, STATE, ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|
| D | Adult | Bolling, Lynn | 363616th st. N.W. B-865 | |

| ARY SERVICE/ BRANCH / DATE FROM - TO | | 58. TELEPHONIC CALL MADE | 59. PHONE NUMBER |
|---|---|---|---|
| O MILITARY | | ☐ YES  ☐ NO  ☐ REFUSED | 30-863-5122 |

**ATEMENT OF FACTS:**

n-03-31-99 at about 1900 hrs. The complainant reports to the police that
: was assaulted with a cane by the defendant, and as a result of the attack
the complainant. She received injuries which consisted of a bruised to her
ttocks, left arm, and back.

Investigation: The complainant stats to the affiant that after a verbal
:gument with the defendant. Over their relationship the argument turned
hysical at which point the defendant became upset and retrieved two walking
anes from the closet and started hitting the complainant through out the
ody with one of the canes. The complainant cried out for the defendant to
top hitting her however; the defendant did not stop his assault, and as a
:esult of the attack on the complainant. She received injuries which consisted
of a bruised to her back, buttocks, left arm.

On 04-01-99 the complainant states to the affiant that she also was
assaulted by the defendant on 03-30-99 at about 2030 the complainant states
after a verbal argument with the defendant over their relationship. The
argument escalated into a physical altercation, at which time. The defendant
punched the complainant in the face with a closed fist, and punched the
complainant in the chest several times with a closed fist. As a result of the
attack on the compliant she received a swollen nose.

The above defendant is the complainant's husband of eleven years known to
her as Oliver Mcclain Bolling. The complainant states to the affiant that she
is afraid of the defendant due to years of domestic abuse.

**61. DEFENDANT'S VERSION / REMARKS:**

Ididi not assault her we were wrestling

*Exhibit-25*

| 62. RECORD CLERK'S NAME | 2. | 3. | 64. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY |
|---|---|---|---|
| Culver | | | N/A |
| 63. ARREST RECORD SUMMARY | | | |
| 1. | 2. | 4. | 6. |

**65. BAIL REFORM ACT CASES:**  Was a statement made by defendant in reference to his/her failure to appear?  ☐ Yes  ☒ No

| INTED NAME - OFFICER MAKING STATEMENT.. | BADGE NUMBER 1003 | RANK OFF | 66. SIGNATURE OF REVIEWING OFFICIAL | 5-6 |
|---|---|---|---|---|
| | UNIT | DATE 4-2-99 | UNIT 400 | DATE 4-2-99 |

TIM LYNN BOLING WAS THE SUBJECT'S WIFE. SHE STATED THAT SHE BELIEVED THAT HE AS CAPABLE OF COMMITTING NEW CRIMES IF HE WAS RELEASED. SHE STATED THAT HE AS THREATENED IN THE PAST TO KILL HER AS WELL AS HER ENTIRE FAMILY. SHE INDICATED THAT HE WAS VIOLENT TO HER WHEN HE WAS OUT ON PAROLE BEFORE AND SHE BELIEVES HE IS UN-REPENTIVE.

SHE STATED THAT TWICE HE TRIED TO STRANGLE HER. THE FIRST TIME HE WAS IN A JEALOUS RAGE BUT HE LET HER GO ULTIMATELY. THE SECOND TIME HE ATTEMPTED TO STRANGLE HER SHE THOUGHT SHE WAS GOING TO DIE AND THAT IT WAS HIS INTENT TO KILL HER. SHE STATED THAT DURING THE STRANGULATION HE SAID HE WANTED HER DEAD. SHE INDICATED THAT SHE WAS JUST ABOUT TO GIVE UP AND DIE BUT SHE TRIED ONE MORE TIME TO STRUGGLE FREE. SHE WAS ABLE TO THROW HER LEG UP WHICH HIT A HAITIAN STATUE. THE STATUE TUMBLED DOWN AND THIS STARTLED HIM AND HE JUMPED AWAY FROM HER. SHE STATED THAT AS A RESULT OF THIS STRANGULATION SHE WAS SEVERELY BRUISED ALL AROUND HER NECK. SHE INDICATED THAT HE HAD PREVIOUSLY TOLD HER HE WAS GOING TO KILL HER AND THE ONLY THING KEEPING HER ALIVE WAS THE FACT THAT HE HAD NOT YET FIGURED OUT WHAT TO DO WITH HER BODY. SHE FELT THAT THIS WAS DEFINITELY A MURDER ATTEMPT BUT THAT DUE TO HER OWN STRUGGLING SHE MANAGED TO SAVE HER LIFE.

SHE ALSO DESCRIBED A CANE BEATING WHICH SHE TOOK AT THE SUBJECT'S HANDS. SHE STATED THAT HE WAS CAREFUL TO BRUISE HER SEVERELY IN PLACES WHERE IT COULD NOT BE SEEN BY THE GENERAL PUBLIC. SHE INDICATED THAT THIS WAS BEHIND HER LEGS AND ON HER BUTTOCKS. SHE STATED THAT THE BRUISING WAS VERY SEVERE AND THEY TURNED BLACK.

SHE INDICATES THAT HE NEVER BROKE ANY BONES ON HER BODY BUT THAT ONCE HE TWISTED HER CHEEK SO HARD IT BROKE HER SKIN AND SHE NOW HAS A SCAR ON HER CHEEK. SHE DID GO TO THE DOCTOR ONCE BUT HE STAYED WITH HER. HE PULLED HER HAIR OUT IN CLUMPS FROM HER SCALP.

The examiner will need to review the statement of the victim and, hopefully the transcription.

The Parole Commission will have to determine how to rate this case. The victim's statements of today's hearing many suggest a Category Eight Attempted Murder which would carry guidelines of 150 + months. Or, the case may be rated as a Category Seven for Serious Bodily Injury or Serious Bodily Injury Intended. It may also be rated as a Category Five for Bodily Injury/Weapon Used.

As noted above, the subject has now placed himself into waiver status. He feels that he should be disclosed more information and that he has not had enough time to prepare his case nor to get his attorney/representative at today's hearing. This examiner is requesting that the victim tape be transcribed. Again, the victim has indicated that everything she stated is disclosable to the inmate.

JSK/PAH
July 15, 2004

Exhibit-26

Boling, Oliver, Reg. No. 36688-118    Page 2 of 3