

Relevant

U.S. Parole Comm.

Regulations

court under Rule 32(c)(3)(A), m.P.

ope of disclosure. The scope of re under this section is limited its and other documents to be the Commission in making its nation. At statutory interim s conducted pursuant to 28 CFR Commission only considers in- on concerning significant devel- or changes in the prisoner's ince the initial hearing or a terim hearing. Therefore, pre- disclosure for interm hearings imited to such information.

emption to disclosure (18 U.S.C. A document may be withheld sclosure to the extent it con-

agnostic opinions which, if the prisoner, could lead to a disruption of his institutional

terial which would reveal a information obtained upon a of confidentiality; or

other information which, if might result in harm, phys- herwise to any person.

mmarizing nondisclosable docu- any document or portion of a is found by the Commission, au of Prisons or the origi- ency to fall within an exemp- sclosure, the agency shall:

tify the material to be with-

e the exemption to disclosure agraph (c) of this section; and

ide the prisoner with a sum- he basic content of the mate- eld with as much specificity le without revealing the able information./

r of disclosure. When a timely s been made for disclosure, if ment or summary of a docu- iant to the parole determina- not been disclosed 30 days he hearing, the prisoner shall the opportunity to waive dis- such document without prej- is right to later review the or a summary of the docu- examiner panel may disclose ent and proceed with the long as the prisoner waives o advance disclosure. If the

prisoner chooses not to waive pre-hearing disclosure, the examiner panel shall continue the hearing to the next docket to permit disclosure. A continuance for disclosure should not be extended beyond the next hearing docket.

(f) *Late received documents.* If a document containing new and significant adverse information is received after a parole hearing but before all review and appellate procedures have been concluded, the prisoner shall be given a rehearing on the next docket. A copy of the document shall be forwarded to the institution for inclusion in the prisoner's institutional file. The Commission shall notify the prisoner of the new hearing and his right to request disclosure of the document pursuant to this section. If a late received document provides favorable information, merely restates already available information or provides insignificant information, the case will not be reopened for disclosure.

(g) *Reopened cases.* Whenever a case is reopened for a new hearing and there is a document the Commission intends to use in making its determination, a copy of the document shall be forwarded for inclusion in the prisoner's institutional file and the prisoner shall be informed of his right to request disclosure of the document pursuant to this section.

[50 FR 40374, Oct. 3, 1985]

### §2.56 Disclosure of Parole Commission file.

(a) *Procedure.* Copies of disclosable records pertaining to a prisoner or a parolee which are contained in the subject's Parole Commission file may be obtained by that prisoner or parolee upon written request pursuant to this section. Such requests shall be answered as soon as possible in the order of their receipt. Other persons may obtain copies of such documents only upon proof of authorization from the prisoner or parolee concerned or to the extent permissable under the Freedom of Information Act or the Privacy Act of 1974.

(b) *Scope of disclosure.* Disclosure under this section shall extend to Commission documents concerning the prisoner or parolee making the request. Documents which are contained in the regional file and which are prepared by agencies other than the Commission which are also subject to the provisions of the Freedom of Information Act, shall be referred to the appropriate agency for a response pursuant to its regulations, unless the document has previously been prepared for disclosure pursuant to §2.55, or is fully disclosable on its face, or has been prepared by the Bureau of Prisons. Any Bureau of Prisons documents in a parole file are duplicates of records in the inmate's institutional file. Before referring these documents to the Bureau of Prisons (BOP), the Commission will ask the requestor whether he also wants the BOP documents in his parole file processed.

(1) Requests that are only for a copy of the tape recording of a hearing will be processed ahead of requests seeking multiple documents from the Parole Commission file (priority processing). A requester may limit the scope of the request to a tape recording only (or to a tape recording and/or up to two documents) and thereby qualify for priority processing. For example, a request for the tape recording and the examiner's summary of a hearing qualifies for priority processing.

(2) [Reserved]

(c) *Exemptions to disclosure.* A document or segregable portion thereof may be withheld from disclosure to the extent it contains material exempt from disclosure under the Freedom of Information Act. 5 U.S.C. 552(b)(1)–(9).

(d) *Specification of documents withheld.* Documents that are withheld pursuant to paragraph (c) of this section shall be identified for the requester together with the applicable exemption for withholding each document or portion thereof. In addition, the requester must be informed of the right to appeal any non-disclosure to the Office of the Chairman.

(e) *Hearing record.* Upon request by the prisoner or parolee concerned, the Commission shall make available a copy of any verbatim record (e.g., tape recording) which it has retained of a hearing, pursuant to 18 U.S.C. 4208(f).

(f) *Costs.* In any case in which billable costs exceed $14.00 (based upon the provisions and fee schedules as set forth in the Department of Justice regulation

**rity and functions of the ole Commission with re- District of Columbia Code**

Parole Commission shall iority over District of Co- offenders pursuant to sec- the National Capital Revi- nd Self-Government Im- ct of 1997, Public Law 105- 712, and D.C. Code 24-409. this subpart shall govern n of the U.S. Parole Com- respect to D.C. Code of- shall constitute the parole District of Columbia, as supplemented pursuant to a)(1) of the Act.

mmission shall have sole grant parole, and to estab- ditions of release, for all Columbia Code prisoners ing sentences for felony of- vho are eligible for parole including offenders who turned to prison upon the f parole or mandatory re- Code 24-404 and 408). The ity shall include youth of- are committed to prison t and rehabilitation based nvictions under the D.C. ode 24-904(a).)

mmission shall have au- ecommend to the Superior District of Columbia a re- e minimum sentence of a olumbia Code prisoner, if ssion deems such rec- n to be appropriate. (D.C. ).)

mmission shall have au- rant parole to a prisoner d to be geriatric, perma- acitated, or terminally ill, ing the minimum term he sentencing court. (D.C. hrough 467.)

mmission shall have au- all District of Columbia offenders who have been arole or mandatory release including the authority to offenders to prison upon an ocation. (D.C. Code 24-406.)

uly 26, 2000, as amended at 68 14, 2003]

**§2.71 Application for parole.**

(a) A prisoner (including a committed youth offender) desiring to apply for parole shall execute an application form as prescribed by the Commission. Such forms shall be available at each institution and shall be provided to a prisoner who is eligible for parole consideration. The Commission may then conduct an initial hearing or grant an effective date of parole on the record. A prisoner who receives an initial hearing need not apply for subsequent hearings.

(b) To the extent practicable, the initial hearing for an eligible adult prisoner who has applied for parole shall be held at least 180 days prior to such prisoner's date of eligibility for parole. The initial hearing for a committed youth offender shall be scheduled during the first 120 days after admission to the institution that is responsible for developing his rehabilitative program.

(c) A prisoner may knowingly and intelligently waive any parole consideration on a form provided for that purpose. A prisoner who declines either to apply for or waive parole consideration shall be deemed to have waived parole consideration.

(d) A prisoner who waives parole consideration may later apply for parole and be heard during the next visit of the Commission to the institution at which the prisoner is confined, provided that the prisoner has applied for parole at least 60 days prior to the first day of the month in which such visit of the Commission occurs. In no event, however, shall such prisoner be heard at an earlier date than that set forth in paragraph (b) of this section.

**§2.72 Hearing procedure.**

(a) At the initial hearing the examiner shall review with the prisoner the guidelines at §2.80, and shall discuss with the prisoner such information as the examiner deems relevant, including the prisoner's offense behavior, criminal history, institutional record, health status, release plans, and community support. If the examiner determines that the available file material is not adequate for this purpose the examiner may order the hearing to be postponed to the next docket so that the missing information can be requested.

(b) A prisoner may have a representative at the hearing pursuant to §2.13(b) and the opportunity for prehearing disclosure of file material pursuant to §2.55.

(c) A victim of a crime, or a representative of the immediate family of a victim if the victim has died, shall have the right:

(1) To be present at the parole hearings of each offender who committed the crime, and

(2) To testify and/or offer a written or recorded statement as to whether or not parole should be granted, including information and reasons in support of such statement. A written statement may be submitted at the hearing or provided separately. The prisoner may be excluded from the hearing room during the appearance of a victim or representative who gives testimony. In lieu of appearing at a parole hearing, a victim or representative may request permission to appear before an examiner (or other staff member), who shall record and summarize the victim's or representative's testimony. Whenever new and significant information is provided under this rule, the hearing examiner will summarize the information at the parole hearing and will give the prisoner an opportunity to respond. Such summary shall be consistent with a reasonable request for confidentiality by the victim or representative.

(d) Attorneys, family members, relatives, friends of the prisoner, or other interested persons desiring to submit information pertinent to any prisoner, may do so at any time, but such information must be received by the Commission at least 30 days prior to a scheduled hearing in order to be considered at that hearing. Such persons may also request permission to appear at the offices of the Commission to speak to a Commission staff member, provided such request is received at least 30 days prior to the scheduled hearing. The purpose of this office visit will be to supplement the Commission's record with pertinent factual information concerning the prisoner, which shall be placed in the record for consideration at the hearing. An office visit at a time other than set forth in

this paragraph may be authorized only if the Commission finds good cause based upon a written request setting forth the nature of the information to be discussed. See § 2.22.

(e) A full and complete recording of every parole hearing shall be retained by the Commission. Upon a request pursuant to § 2.56, the Commission shall make available to any eligible prisoner such record as the Commission has retained of the hearing.

(f) Because parole decisions must be reached through a record-based hearing and voting process, no contacts shall be permitted between any person attempting to influence the Commission's decision-making process, and the examiners and Commissioners of the Commission, except as expressly provided in this subpart.

[65 FR 45888, July 26, 2000, as amended at 68 FR 41530, July 14, 2003; 69 FR 5274, Feb. 4, 2004]

### § 2.73 Parole suitability criteria.

(a) In accordance with D.C. Code 24-404(a), the Commission shall be authorized to release a prisoner on parole in its discretion after the prisoner has served the minimum term of the sentence imposed, if the following criteria are met:

(1) The prisoner has substantially observed the rules of the institution;

(2) There is a reasonable probability that the prisoner will live and remain at liberty without violating the law; and

(3) In the opinion of the Commission, the prisoner's release is not incompatible with the welfare of society.

(b) It is the policy of the Commission with respect to District of Columbia Code offenders that the minimum term imposed by the sentencing court presumptively satisfies the need for punishment for the crime of which the prisoner has been convicted, and that the responsibility of the Commission is to account for the degree and the seriousness of the risk that the release of the prisoner would entail. This responsibility is carried out by reference to the Salient Factor Score and the Point Assignment Table at § 2.80. However, there may be exceptional cases in which the gravity of the offense is sufficient to warrant an upward departure from § 2.80 and denial of parole.

[65 FR 45888, July 26, 2000, as amended at 68 FR 41530, July 14, 2003]

### § 2.74 Decision of the Commission.

(a) Following each initial or subsequent hearing, the Commission shall render a decision granting or denying parole, and shall provide the prisoner with a notice of action that includes an explanation of the reasons for the decision. The decision shall ordinarily be issued within 21 days of the hearing, excluding weekends and holidays.

(b) Whenever a decision is rendered within the applicable guideline established in this subpart, it will be deemed a sufficient explanation of the Commission's decision for the notice of action to set forth how the guideline was calculated. If the decision is a departure from the guidelines, the notice of action shall include the reasons for such departure.

(c) Relevant issues of fact shall be resolved by the Commission in accordance with § 2.19(c). All final parole decisions (granting, denying, or revoking parole) shall be based on the concurrence of two Commissioner votes, except that three Commissioner votes shall be required if the decision differs from the decision recommended by the examiner panel by more than six months. A final decision releasing a parolee from active supervision shall also be based on the concurrence of two Commissioner votes. All other decisions may be based on a single Commissioner vote, except as expressly provided in these rules.

### § 2.75 Reconsideration proceedings.

(a)(1) Following an initial or subsequent hearing, the Commission may—

(i) Set an effective date of parole within nine months of the date of the hearing;

(ii) Set a presumptive parole date at least ten months but not more than three years from the date of the hearing;

(iii) Continue the prisoner to the expiration of sentence if the prisoner's mandatory release date is within three years of the date of the hearing;

**§ 2.54 Reviews pursuant to 18 U.S.C. 4215(c).**

The Attorney General, within thirty days after entry of a Regional Commissioner's decision, may request in writing that the National Appeals Board review such decision. Within sixty days of the receipt of the request the National Appeals Board shall, upon the concurrence of two members, affirm, modify, or reverse the decision, or order a rehearing at the institutional or regional level. The Attorney General and the prisoner affected shall be informed in writing of the decision, and the reasons therefor.

[42 FR 39821, Aug. 5, 1977, as amended at 43 FR 17470, Apr. 25, 1978; 44 FR 3408, Jan. 16, 1979]

**§ 2.55 Disclosure of file prior to parole hearing.**

(a) *Processing disclosure requests.* At least 60 days prior to a hearing scheduled pursuant to 28 CFR 2.12 or 2.14 each prisoner shall be given notice of his right to request disclosure of the reports and other documents to be used by the Commission in making its determination.

(1) The Commission's file consists mainly of documents provided by the Bureau of Prisons. Therefore, disclosure of documents used by the Commission can normally be accomplished by disclosure of documents in a prisoner's institutional file. Requests for disclosure of a prisoner's institutional file will be handled under the Bureau of Prison's disclosure regulations. The Bureau of Prisons has 15 days from date of receipt of a disclosure request to respond to that request.

(2) A prisoner may also request disclosure of documents used by the Commission which are contained in the Commission's regional office file but not in the prisoner's institutional file.

(3) Upon the prisoner's request, a representative shall be given access to the presentence investigation report reasonably in advance of the initial hearing, interim hearing, and a 15-year reconsideration hearing, pursuant and subject to the regulations of the U.S. Bureau of Prisons. Disclosure shall not be permitted with respect to confidential material withheld by the sentencing court under Rule 32(c)(3)(A), F.R.Crim.P.

(b) *Scope of disclosure.* The scope of disclosure under this section is limited to reports and other documents to be used by the Commission in making its determination. At statutory interim hearings conducted pursuant to 28 CFR 2.14 the Commission only considers information concerning significant developments or changes in the prisoner's status since the initial hearing or a prior interim hearing. Therefore, prehearing disclosure for interm hearings will be limited to such information.

(c) *Exemption to disclosure (18 U.S.C. 4208(c)).* A document may be withheld from disclosure to the extent it contains:

(1) Diagnostic opinions which, if known to the prisoner, could lead to a serious disruption of his institutional program;

(2) Material which would reveal a source of information obtained upon a promise of confidentiality; or

(3) Any other information which, if disclosed, might result in harm, physical or otherwise to any person.

(d) *Summarizing nondisclosable documents.* If any document or portion of a document is found by the Commission, the Bureau of Prisons or the originating agency to fall within an exemption to disclosure, the agency shall:

(1) Identify the material to be withheld; and

(2) State the exemption to disclosure under paragraph (c) of this section; and

(3) Provide the prisoner with a summary of the basic content of the material withheld with as much specificity as possible without revealing the nondisclosable information.

(e) *Waiver of disclosure.* When a timely request has been made for disclosure, if any document or summary of a document relevant to the parole determination has not been disclosed 30 days prior to the hearing, the prisoner shall be offered the opportunity to waive disclosure of such document without prejudice to his right to later review the document or a summary of the document. The examiner panel may disclose the document and proceed with the hearing so long as the prisoner waives his right to advance disclosure. If the

prisoner chooses not
hearing disclosure, the
shall continue the hear
docket to permit disclo
ance for disclosure sho
tended beyond the next

(f) *Late received docum*
ment containing new
adverse information is
parole hearing but be
and appellate procedu
concluded, the prisoner
rehearing on the next do
the document shall be fo
institution for inclusio
oner's institutional file
sion shall notify the
new hearing and his ri
disclosure of the docum
this section. If a late
ment provides favorabl
merely restates alread
formation or provides i
formation, the case w
opened for disclosure.

(g) *Reopened cases.* Whe
reopened for a new heari
a document the Commis
use in making its de
copy of the document
warded for inclusion in
institutional file and th
be informed of his right
closure of the documen
this section.

[50 FR 40374, Oct. 3, 1985]

**§ 2.56 Disclosure of Par file.**

(a) *Procedure.* Copies
records pertaining to a
parolee which are contai
ject's Parole Commissio
obtained by that priso
upon written request pu
section. Such requests
swered as soon as possib
of their receipt. Other p
tain copies of such do
upon proof of authoriza
prisoner or parolee conc
extent permissable unde
of Information Act or t
of 1974.

(b) *Scope of disclosu*
under this section shall
mission documents c
prisoner or parolee maki
Documents which are co

committed, shall be considered in determining whether or not a geriatric parole should be granted prior to completion of the prisoner's minimum sentence.

(d) A prisoner, or a prisoner's representative, may apply for a geriatric parole by submitting an application to the institution case management staff, who shall forward the application, accompanied by a medical report and any recommendations, within 30 days. The Commission shall render a decision within 30 days of receiving the application and report.

(e) In determining whether or not to grant a geriatric parole, the Commission shall consider the following factors (D.C. Code 24–465(c)(1)–(7)):

(1) Age of the prisoner;

(2) Severity of illness, disease, or infirmities;

(3) Comprehensive health evaluation;

(4) Institutional behavior;

(5) Level of risk for violence;

(6) Criminal history; and

(7) Alternatives to maintaining geriatric long-term prisoners in traditional prison settings.

(f) A prisoner, the prisoner's representative, or the institution, may request the Commission to reconsider its decision on the basis of changed circumstances.

(g) Notwithstanding any other provision of this section:

(1) A prisoner who has been convicted of first degree murder or who has been sentenced for a crime committed while armed under D.C. Code 22–4502, 22–4504(b), or 22–2803, shall not be eligible for geriatric parole (D.C. Code 24–467); and

(2) A prisoner shall not be eligible for geriatric parole on the basis of a physical or medical condition that existed at the time the prisoner was sentenced (D.C. Code 24–462).

[65 FR 45888, July 26, 2000, as amended at 68 FR 41530, July 14, 2003]

### §2.79 Good time forfeiture.

Although a forfeiture of good time will not bar a prisoner from receiving a parole hearing, D.C. Code 24–404 permits the Commission to parole only those prisoners who have substantially observed the rules of the institution. Consequently, the Commission will consider a grant of parole for a prisoner with forfeited good time only after a thorough review of the circumstances underlying the disciplinary infraction(s). The Commission must be satisfied that the prisoner has served a period of imprisonment sufficient to outweigh the seriousness of the prisoner's misconduct.

[65 FR 45888, July 26, 2000, as amended at 68 FR 41531, July 14, 2003]

### §2.80 Guidelines for D.C. Code offenders.

(a)(1) *Applicability in general.* Except as provided below, the guidelines in paragraphs (b)–(n) of this section apply at an initial hearing or rehearing conducted for any prisoner.

(2) *Reparole decisions.* Reparole decisions shall be made in accordance with §2.81.

(3) *Youth offenders.* A prisoner sentenced under the Youth Rehabilitation Act shall be considered for parole under these guidelines pursuant to paragraph (a)(1) of this section, except that the prisoner shall be given rehearings in accordance with the schedule at §2.75(a)(2)(ii) and the prisoner's program achievements shall be considered in the parole release decision in accordance with §2.106. The guidelines at paragraphs (k)–(m) of this section for awarding superior program achievement and subtracting the award in determining the total guideline range shall not apply.

(4) Prisoners considered under the guidelines of the former District of Columbia Board of Parole. For a prisoner whose initial hearing was held before August 5, 1998, the Commission shall render its decision by reference to the guidelines of the former D.C. Board of Parole in effect on August 4, 1998. However, when a decision outside such guidelines has been made by the Board, or is ordered by the Commission, the Commission may determine the appropriateness and extent of the departure by comparison with the guidelines of §2.80. The Commission may also correct any error in the calculation of the D.C. Board's guidelines.

(5) Prisoners given initial hearings under the guidelines in effect from August 5, 1998 through December 3, 2000 (the guidelines formerly found in 28



Divider

June, 28 1998

To Whom it May Concern:

Oliver M. Boling 166-863, my husband, has rehabilitated and educated himself over the years by reading, self-examination, lengthy discussions with me and the medical doctor at Central. He attended the drug program, Unfoldment, until the new program was brought in, attended Na, enrolled in technical school, and is seeking psychiatric counsel.

For years he has been remorseful for his crimes, has understood the devastating effect it had on the victims, families (including his own) and his own life. His entire thinking has changed from society owing him something to him wanting to succeed in life and give back to society. He is a loving, caring human being with compassion and has been a great husband to me, very helpful and supportive. (We'll celebrate our tenth wedding anniversary in

~~Doc 1 Pg 1 Ln 1" Pos 1"~~

July). He is well-respected by my family, the other residents and officers at Central.

When he comes home, I will be helping him to re-adjust to society; teaching him the ins and outs of everyday living, helping him to get an entry level job and assisting him on every level to succeed. I am employed by the D.C. government in Public Works and have been there since October 1992. I am well-respected, stable and a very strong individual who is well-qualified to assist Oliver in becoming a productive citizen. We've both worked hard together over the years to reach this point and will continue even after his release. We're determined, persevering and fortitudinous people with great resolve and character.

We love and respect each other and are looking forward to the challenges ahead. I need my husband at home. He's been incarcerated for over 24 years and we're at an age of maturity, stability, and understanding. Oliver's past record belies his present state of strength, character and faith which he's developed over the years to his credit.

Thanking you ahead of time for your positive decision.

Very Sincerely,

~~Doc 1 Pg 1 Ln 4.83" Pos 2.5"~~

Mrs. Lynn M. Boling

Exhibit- A

219 REVOCATION OF PAROLE: PRELIMINARY INTERVIEWS AND REVOCATION HEARING (Continued)

219.1 (Continued)

(a) The condition(s) of parole alleged to have been violated or offense(s) alleged to have been committed;'

(b) The right to written notice of the claimed violations or parole; disclosure to the parolee of evidence against him or her; and opportunity to be heard in person, to present witnesses and documentary evidence, and to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) at a hearing before the Board or a member of the Board; and a written statement of the Board's final determination;

(c) The approximate time, place, and purpose(s) of the revocation hearing; and

(d) That if he or she admits the charge(s) and waives his or her right to be represented by counsel, and to present and confront witnesses at a revocation hearing before the Board or a member thereof, the person conducting the preliminary interview will conduct the revocation hearing at that time and place.

219.2 The Board or a member may review the record in lieu of conducting a revocation hearing upon a written determination that at the preliminary interview the following occurred:

(a) The parolee knowingly and intelligently admitted committing the alleged offense or violating conditions of parole; and

(b) The parolee knowingly and intelligently waived his or her right to be represented by counsel, and to present and confront witnesses at a revocation hearing before the Board or a member thereof.

219.3 If the parolee chooses to exercise his or her right to a revocation hearing before the Board or a member of the Board, the revocation hearing shall be held at or reasonably near the place of the alleged parole violation or arrest, within sixty (60) days of the preliminary interview.

219.4 If the revocation hearing is conducted by a member of the Board or an examiner, that member or examiner shall submit proposed findings, conclusions and recommendations in writing to the Board. Only the Board may thereafter terminate parole or modify the terms and conditions of parole.

219.5 If the Board finds after a revocation hearing that the preponderance of evidence does not establish a violation of the conditions of parole, the Board shall immediately reinstate the parolee to parole supervision.

ExhibiT-B

RE: [illegible] DCDC#: [illegible] FBI#: [illegible]

Allegation # 1: Subject committed a ☑ noncriminal ☐ criminal violation of Parole Condition # 505 by the following alleged conduct on or about ______199__: Used a deadly weapon (cane) to strike his wife, on March 31, 1999. Subject was charged with assault on 4-2-99

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:

Case # M-3741-99B Status: 4/2/99- Nolled Dismissed for Want of Prosecution

| Findings of Fact | Evidence |
| --- | --- |
| Denies | Compl Didn't show & case was dismissed<br>. 163 stated sub assaulted his wife with a cane<br>. Letter from wife corroborated police report |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding



RE: Boling Oliver DCDC#:

Allegation # 3: Subject committed a ☑ noncriminal ☐ criminal

iolation of Parole Condition # 0201 by the following

alleged conduct on or about ______ 199__: Traveled outside the limits of Parole to Hartford Connecticut, on 4-10-99; without permission from P.O.

Evidence: ☐ Police Report ☐ Field Sheet ☑ Other: 2/25/00 Letter from Deardre Smith, Victim advocate, U.S. Atty Office

Case #__________ Status:__________

| Findings of Fact | Evidence |
|---|---|
| Admits | Admission |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding



US PAROLE COMMISSION ☒009

# State of Connecticut

## DIVISION OF CRIMINAL JUSTICE

### OFFICE OF THE STATE'S ATTORNEY

JUDICIAL DISTRICT OF HARTFORD / NEW BRITAIN

JAMES E. THOMAS
STATE'S ATTORNEY

101 LAFAYETTE ST.
HARTFORD, CT 06106
TELEPHONE:
☐ PART A 566-3190
☐ PART B 566-5998

February 17, 2000

Diedre Smith
U.S. Attorney's Office
555 Fourth NW
Room 4443
Washington, D.C. 20001

Dear Ms. Smith,

Per our telephone conversation of Febraury 15th I am writing to confirm that on December 9, 1999, Oliver Boling was convicted in G.A. 14, Hartford, CT, of two counts of Criminal Violation of a Protective Order, a class A misdemeanor carrying a maximum of one year in jail for each count, under docket number H14H-CR99-535194 and received a sentence of time served. Additionally, on January 11, 2000 he was convicted in G.A. 16, West Hartford, CT, of one count of Disorderly Conduct under docket number H16W-CR99-98630 and one count of Criminal Violation of a Protective Order under docket number H16W-CR99-98840 and was sentenced to time served. As part of the West Hartford plea agreement, the state entered nolles to charges of Stalking in the Second Degree and Criminal Trespass.

With respect to the Hartford matter, I can represent that this plea was arrived at based on the understanding that Mr. Boling faces substantial exposure to incarceration in Washington based on his parole status.

I have enclosed a copy of the West Hartford police report and have requested certified copies of his convictions from the state record center which will be forwarded to you has soon as they become available. If I can be of any further assistance please contact me at 860 566-5996.

Sincerely,

Thomas R. Garcia
Assistant State's Attorney

Exhibit-D

RE: Boling, Alonzo DCDC#: [illegible]

Allegation # 5: Subject committed a ☐ noncriminal ☑ criminal violation of Parole Condition # 0901 by the following alleged conduct on or about ______199__: Failed to obey all laws as evidenced by his arrest for Criminal Trespass and Stalking 2nd Degree in regards to his estranged wife. Ms. Boling filed a Civil protection order on 4-1-99.

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:________

Case # 99 I SF 824 Status: 12/9/99 - Convicted of 2 cts. of Crim. Violation of a Protective Order

| Findings of Fact | Evidence |
| --- | --- |
| Admits | Admission |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding

Exhibit - E

Allegation #4: Subject committed a ☐ noncriminal ☒ criminal violation of Parole Condition # 0901 by the following alleged conduct on or about ______199__: Failed to obey all laws as evidenced by his arrest for Criminal Trespass Disorderly Conduct, and Stalking 2nd Degree in West Hartford, Conn on 4-10-99. Held on $5000 bond.

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:____________

Case #________________ Status: Sentenced to time served between 4/10/99 - 2/7/00 in Connecticut

| Findings of Fact | Evidence |
|---|---|
| Admits he shouldn't have gone to CT or tried to get in touch w/ wife. Says he was "lured there" by her relatives to set him up for arrest | new Conviction |

CONCLUSION

☒ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding

Exhibit - F

99018011

STATEMENT BY LYNN BOLING

3-30-99-Tuesday around 8p.m. After returning from Haines Point, we had sex and Oliver began afterwards to accuse me of being bi-sexual; of lying to him about "the guy at the laundromat and having an affair with "that guy" (Joe Garnett). He slapped me about the face, pulled my hair(twisting my upper body around and wrenching my neck). He punched me in the chest, stomach, ribs and kidney area (left side), sat on top of me with his knees holding my arms back, put a pillow over my face and pushed it back and forth really hard on my face repeatedly. He said he would pull my hair out small clumps at a time and began to pull it.(Later when I brushed my hair, alot of hair came out in the brush). He stood up and stomped and kicked me with his bare feet. [illegible]

... "You're a lying motherfucker ..."



RE: Boling, Olison DCDC#: 166262 229182

Allegation # 2 Subject committed a ☐ noncriminal ☑ criminal violation of Parole Condition # 0901 by the following alleged conduct on or about ______ 199__: Failed to obey all laws when arrested for Assault with a Deadly Weapon. On 4/2/99

Evidence: ☑ Police Report ☐ Field Sheet ☐ Other: ____________

Case # M3741-99B Status: 6-29-99 Dismissed for want of Prosecution

| Findings of Fact | Evidence |
|---|---|
| Denies | Compl. didn't show. Case dismissed. 163, [struck] complainants statement + letter from Office of the US Attorney Victims Advocates Ofc are convincing evidence that an assault took place |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding

Exhibit-H

.MENT OF JUSTICE B-P-9 REQUEST FOR ADMINISTRATIVE REMEDY

Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Boling, Oliver (LAST NAME, FIRST, MIDDLE INITIAL) #36688-118 (REG. NO.) A-3 (UNIT) Leavenworth U.S.P. (INSTITUTION)

**Part A– INMATE REQUEST** On or about October 2, 2003 Mr. Wilson informed me that I was cheduled for a parole hearing in December 2003. At this meeting I was allowed to review my ile. Upon doing so, I noticed inaccurate time sheest. I brought this finding to Mr. Wilson, who old me just he just started as a case manager and did not know and that he would ask Ms. Ashman, is boss, about what to do. Thereafter, Mr. Wilson said he spoke with Ms. Ashman concerning my ime sheets and that she said I violated parole for a domestic, therefore, Mr. Wilson should eave my files alone. Mr. Wilson then indicated to me that he didn't know my wife was white and hat it's a bad scenario for me. A few days later I approached Mr. Wilson, inquiring about the rogress report needed for the parole hearing. Mr. Wilson told me to stop bugging him and get out f his face and that I shouldn't have hit my wife and than I wouldn't have to face Kansas finest. n December 3, 2003 before entering the office where the parole Commission was holding session, r. Wilson approached me. I asked him where was my progress report. He told me, "don't worry about hat, your're lucky your ass is alive to be at a meeting," as he smiled and stuck his hand in the ront of his pants with three (3) fingers hanging out. I did not know what that meant. On December , 2003, Mr. Wilson called me into the main office. Mildner, Chiles, Flugrant were all present. r. Wilson told me that my wife had written the warden and said that I had tried to contact her. asked Mr. Wilson to provide the evidence because I never wrote her. He began to threaten me in a

[Continuation of following page]

February 27 2004
DATE

Oliver Boling #36688-118
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
2004 MAR -2 AM 11:45
WARDEN'S OFFICE
USP LEAVENWORTH

Exhibit-I

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

THIRD COPY: RETURN TO INMATE

CASE NUMBER: 324008-F1

CASE NUMBER:

**Part C– RECEIPT**

Return to: Boling Oliver W. (LAST NAME, FIRST, MIDDLE INITIAL) 36688-118 (REG. NO.) A-3 (UNIT) Leavenworth (INSTITUTION)

SUBJECT: [illegible]

3-1-04
DATE

[illegible signature]
RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

disrespectful manner and told me that he was going to put the F.B.I. on me to investigate and that he will have to write an incident report and get the Parole Board to retard my presumtive parole date recently obtained (december 3, 2003). On December 8, 2003, I spoke to Unit Manager Mildner concerning the December 5, 2003 incident and that I was humiliated and felt Mr. Wilson's actions were abusive in nature. Mr. Mildner advised me that he had talked to Wilson and that he told him he didn't handle the situation too well and advised Mr. Wilson to talk to me. Thereafter, Mr. Wilson called me into his office and said man to man I don't care too much for D.C. niggers and you, Boling, are getting on my nerves. He continued to explain that if I were "wise" and observed how the Black staff behaved, they stay in their place and you better too. On January 12, 2004, I was on call out for Lab at the Hospital and Mr. Wilson requested that I take a blood test, which he said was mandatory before release. I declined due to my religions beliefs. On January 13, 2004 Mr. Wilson and case Manager Pierce called me into the office. They told me I had to give blod or never go home. I asked them to show me a policy statement. Mr. Wilson said, **"you're a smart ass coon huh?"** I said "I resent that type of talk," and left the office. On January 14, 2004, I was called before Team. Mildner, Chiles, A-3 Secretary, and Wilson, who was the spokesperson conducted the meeting. He handed me a paper which he claimed was policy about my having to take a blood test before he started on my half-way house package. The discussion then turned for my request to transfer to an F.C.I. Mr. Wilson said I was at 15 points. I said for two years I was at 7 points, how did I get up to a 15 ? Mr. Wilson began to hollar and say it was because of your 1976 case and the domestic on your wife. I advised him that **P.S. 5100.06 Policy** does't include the reasons he's advocating. Mr. Wilson then became angered and very hostile. I then said if you would help me correct my file this problem wouldn't exist. Mr. Wilson screamed, **"I ain't here to help you, my job is not suppose to help you."** This was said so loud inmates began to peer into the office. Mildner, Chiles, and the Secretary heard these statements. No one intervened, so i removed myself from the office. Thereafter, I learned that the policy for blood, in which Mr. Wilson presented to me before the team, was a policy that was rescinded **(See attached P.S. 6190.02).** Mr. Wilson continued to seek means to humiliate me. I was called to Psychology on January 16, 2004. Dr. Donnovan told me that Mr. Wilson wrote a Memo, gave it to Ms. Ashman, who gave it to his boss, asking him to see me. with suggestions that I may be participating in homosexual activities and that's why I don't want to give blood. On January 22, 2004, Mr. Wilson gave me my notice of action from parole, in which, indicated it was faxed December 19, 2003 to Leavenworth. However, 30 days later, Mr. Wilson gives it to me, which prevents me from appealing within the pro-scribed time.

**SUMMARY**

These unprofessional comments, bias, discriminatory practices, are in direct conflict of **Program Statement OP1, Number 3420.09 Employee Conduct and Responsibility, (E)** Employees will uphold the ethical governing this profession. **(3)** Employees may not use profane, obscene, or otherwise abusive language when communicating with inmates, staff or others. Employees <u>shall</u> conduct themselves in a manner which will not be demeaning to inmates, or fellow employees, nor are they to display open or cloase bias, or **RACIAL SLURS.**

**REQUEST**

Because of the gravity of this abuse, the racial overtures, the propensity to conduct himself in such a manner unmonitored, with what seems to be immunity, to express intentions to harm, retaliate, and the resources to achieve it, I request that Case Manager Wilson be **<u>immediately</u>** removed from my case and that I be assigned a new person to review my case and be given another team meeting to consider issues Wilson's bias prevented him from reviewing in a fair and impratial manner. I further request that because Ms. Ashman failed to detect the personal bias and vindictiveness of Wilson, and the professionlism to restrain, instead to condone, encourage, co-conspire, I ask that she not interfere in my reconsoder-ation. Additionally, I ask that Mr. Wilson receive psychological counseling for his anger and racial problem, and that he be cautioned against retalitory actions, either direct or indirect, and that he be investigated to the fullest extent of the law.

ExhibiT - I

A

AFFIDAVIT and Verification

I Nathan Harris Afficant who is of sound mind hereby can testify to the following and sware under the penalty of perjury that the foregoing statement is true and correct.

On or about December 9,2003 while in A-3 unit at Leavenworth U.S.P. I was standing at the doorway of casemanager Albert Wilson office the door was open and inmate Boling-Bey was sitting inside I heard Wilson tell Boling-Bey that he should not have married a white woman and that he dont approve of this and that O.J. made him feel this way, Boling-bey said he resent that type of, talk at that point Wilson said man to man, he dont like niggers and especially dont like D.C. niggers.

I became upset and expressed my resentment to Wilson for his statement and that it was unprofessional Wilson told me to get to stepping.

VERIFICATION

I Nathan Harris have read the foregoing statement and and hereby verify and testify to the above statement I have made therein and the statement is true and correct.

Nathan Harris 39359-066

Nathan Harris # 39359-066
U.S.P. Leavenworth
P.O.Box 1000
Leavenworth Kansas 66048

January, 7 2004



[DEPA]RTMENT OF JUSTICE

Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Howard, Clinton — 46268-011 — B-lower — USP-Leavenworth

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A- INMATE REQUEST**

I am requesting that the practice described in my BP-8 by Case Manager Gray be immediately ceased and his racial comments, threats, and disrespect to me be ceased and there be no related retaliatory measures from him through any officer to me.

I further request the Relief Requested in my BP-8. (see BP-8)

6-20-03

DATE

Clinton Howard

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED
2003 JUN 24 PM 12:46
WARDEN'S OFFICE
USP LEAVENWORTH

Exhibit-K

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**

CASE NUMBER: 302727-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to:

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

[D]epartment of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Bolino Oliver — LAST NAME, FIRST, MIDDLE INITIAL | 36688-118 — REG. NO. | A-3 — UNIT | Leavenworth — INSTITUTION

**Part A—REASON FOR APPEAL** My Complaint is against Albert Wilson and Mike Gray casemanagers, on June 25, 2004 I was stoped in the hallway by these two case Managers and told they talked to my former Wife and they will pay for her flight to Kansas for my July 13, 2004 reopening and that Wilson Mother worked for the U.S. Commission and the Attorney [illegible] owe her a favor or two. Also in the marshall I heard Wilson say to Gray there he is and they looked me in the face and smiled. Wilson manufactured documents sent them to the U.S. Commission against me. Wilson is not my case manager and have been calling my former wife instigating her and coaching her to help Gray Wilsons Buddy and my present case manager to misused me. my cell was shaken down every day per orders of Wilson and my legal mail destroyed.

7-24-2004 — DATE

Oliver Bolino — SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Exhibit L

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE

CASE NUMBER: ________

**Part C—RECEIPT**

CASE NUMBER: ________

Return to: Bolino Oliver — LAST NAME, FIRST, MIDDLE INITIAL | 36688-118 — REG. NO. | A-3 — UNIT | Leavenworth — INSTITUTION

SUBJECT: Racism misconduct intimidation informing of Wilson MoTher clout.

7-24-2004

BP-230(13)

U.S. Department of Justice
United States Parole Commission

Notice of Hearing-Parole Application
Representative and Disclosure Request

Date 7-13-04

Name: Boling, Oliver

Register No: 36688-118 Institution USP-LVN

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for Reconsideration hearing to July, ~~19~~2004

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

______ (Initials) I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled.

Oliver Boling (Signature) July 13, 2004 (Date)

3. WAIVER OF PAROLE/PAROLE HEARING:

X O.B. A. I wish to waive parole consideration at this time.
(Initials)

______ B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary Committee infractions since my last hearing.
(Initials)

______ C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE: *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists in your case.*)
(Initials)

______ D. I wish to waive mandatory parole.
(Initials)

NOTE: 1) If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

2) Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

4. REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.

Name of Representative: Attorney as Representative one will be obtain.

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER:

______ I do not wish a representative at my hearing.
(Initials)

EXHIBIT-M

**Posch, Pamela A. (USPC)**

**From:** Posch, Pamela A. (USPC)
**Sent:** Friday, December 17, 2004 12:19 PM
**To:** 'Gray, Michael'
**Subject:** RE: Boling, Oliver

I did not receive a copy of the I-24. Do you know if it was sent to me?
Thanks,

Pamela A. Posch
Assistant General Counsel
U.S. Parole Commission
301-492-5959

-----Original Message-----
From: Gray, Michael
Sent: Wednesday, December 15, 2004 5:34 PM
To: Posch, Pamela A. (USPC)
Subject: RE: Boling, Oliver

I have pulled it from his central file and will have my secretary fax a copy of it in the morning.

Mike

>>> Pamela Posch 12/15/2004 4:25:07 PM >>>
1) The form that I need is the I-24 parole application in regard to his November 30, 2004. I know that he did not appear for the hearing but if he completed the I-24 form there is a box where he signs waiving parole. I only need this form from this most recent hearing. (I am not interested in any earlier I-24 forms that he might have completed for past hearings.) 2) If he did not complete the I-24 form in connection with this hearing, can you have him complete it now before he leaves? If that is not possible or if he refuses, please note it on the I-24.

My fax number is (301) 492-5563.

Thank you,

Pamela A. Posch
Assistant General Counsel
U.S. Parole Commission
301-492-5959, ext. 239

-----Original Message-----
From: Gray, Michael
Sent: Wednesday, December 15, 2004 4:46 PM
To: Posch, Pamela A. (USPC)
Subject: Boling, oliver

Is the I-29 all you need? He transfers in the morning to USP Lewisburg,

Exhibit-N

12/20/04 — No Response — You Committed — BK — I Have Been Robbed — BB

## AFFIDAVIT and Verification

I *[signature]* #05902-007 Afficant who is of sound mind can testify to the following statement in which is true and correct,and I further declare under the penalty of perjury that the foregoing statement is true and correct.

On or about July 13,2004 while in the education department at USP-Leavenworth Kansas I observed casemanager Albert Wilson,Mike Gray and U.S.Parole Commission examiner Jeffery Koastbar in the halway, as inmate Boling-bey approached the officials Jeffery Koastbar pointed at Boling-Bey and hollered we have the power nigger boy." This occurred between 11:am and 2pm.

## Verification

I *[signature]* #05902-007 have read my foregoing statement and hereby verify and can testify to the above statement in which is true and correct.

*[signature]* #05902-007

Gary Garhers # 05902-007
U.S.P.Leavenworth
P.O.Box 1000
Leavenworth Kansas 66048

July 18,2004

ExhibiT-O

AFFIDAVIT and Verification

I Garry Byrd Afficant who is of sound mind can testify to the following statement in which is true and correct, and I further declare under the penalty of perjury that the foregoing statement is true.

On or about July 13,2004 while in the education department at U.S.P. Leavenworth Kansas I heard U.S. Parole Commission examiner Jeffery Koastbar call Boling-bey a nigger boy, this was done in the presence of casemanager Albert Wilson and Mike gray,this occured between 11am and 2pm.

I Garry Byrd have read my foregoing statement and hereby verify and can testify to the above statemant which is true and correct.

Garry Byrd

Gary Byrd # 98411-131
U.S.P. Leavenworth
P.O. Box 1000
Leavenworth Kansas 66048

July 22,2004



# HEARING SUMMARY

**..ne: Boling, Oliver** **Reg No: 36688-118**

**Hearing Parameters**

Hearing Type ................................: **Special Reconsideration**
Hearing Date ................................: 11/30/04
Examiner ......................................: Rob Haworth
Institution ....................................: Leavenworth USP

**Sentence Parameters**

Sentence Type ..............................: **DC Parole Eligible**
MR/Statutory Release ..................: 7/1/2032
Full Term Date ..............................: 5/22/2048
Months in Custody.........................: 68 as of 12/9/04
Fines/Restitution/Assessment ......: None
Detainer ........................................: None

**Additional text regarding the above parameters:** The subject refused to attend his hearing on this date. Case Manager Michael Gray prepared a Memorandum dated 11/30/04 that includes his attempts to have subject to attend the hearing and subject's refusal.

The subject is not allowed to waive the hearing ordered under 28 C.F.R. 2.28(f). Case Manager Gray was instructed to inform the subject that if he did not attend his hearing a decision would be made in his absence. Case Manager Gray informed subject of that fact and subject still refused to attend the hearing.

---

**<u>Prior Action & Institutional Factors</u>**

**Prior Action:** This case now contains a large volume of information relating to previous Commission Action and current information. This examiner has attempted to simplify the review process by labeling important documents that need to review by anyone making a decision in this case. Those documents have been arranged and labeled for review.

There is a Prehearing Assessment that was prepared by Examiner Price on 6/7/04. That 5-page document should be reviewed first. Following that is a copy of the hearing summary from 12/3/03 prepared by Mr. Husk with the NOA dated 12/19/03 showing that a presumptive parole was granted 4/9/05 after service of 72 months.

Subsequent to the NOA dated 12/19/03 additional information was received concerning subject's violent behavior toward his former wife, Lynn Boling. There's a Memorandum in the file dated 5/3/04 from USPC Attorney Posch to Administrator Husk pointing out some of the new information and asking if Mr. Husk knew about that information at the time of 12/3/03 hearing. Mr. Husk responded with a memorandum dated 5/13/04 explaining that some very important information was not available to him at the time he conducted the hearing. Ultimately, a NOA was ordered 6/5/04 reopening the case and ordering this Special Reconsideration Hearing.



r former wife were much more serious than previously thought. It is likely that you would pose a serious ɔ her if you were to be released into the community anytime in the near future.

**Additional Text:** None.

**Executive Reviewer's Comments:** Kostbar – 12/20/04 –  

I agree with Examiner Haworth to a point. However, I disagree with him regarding awarding the subject a parole date at any foreseeable date. The subject has exhibited a violent history toward the victim and her family.

While we rated the offense severity a category five for the revocation behavior based upon the one assault with a cane (upon which we had little information at the time), the testimony of the victim suggests that he had engaged in other assaults that rose to the level of attempted murder, but were not part of the warrant application.

The victim reported that our subject has twice attempted to strangle her and she fought him off or she believes she would have otherwise been killed. She also reports that he has threatened to kill her and her family.

The subject has refused to participate in the "reopen" hearing process and has refused to listen to the tape of the victim relative to disclosure. He has had an attorney but due to conflict with the attorney, no longer has an attorney.

Examiner Haworth desires to reparole the subject after 132 months, which is above the gl's (40-60 months) for the Category Five behavior listed on the warrant application. I disagree. I believe this person is of extreme risk to the victim and the victim's family if he is every released on this term. His revocation behavior involved stalking and he has exhibited obsessive traits relative to the victim.

I believe that the subject should be continued to a 15 year reconsideration hearing (4/2014)

Note – The subject cannot "waive" this type of hearing. Thus, in spite of the fact that he has refused to appear repeatedly, the hearing has been appropriately held. The subject was told his hearing would be held in his absence but he refused to attend.

RECOMMENDATION –

VOID THE NOTICE OF ACTION DATED 12/19/03 AS IT RELATES TO PRESUMPTIVE PAROLE 4/9/05 AFTER SERVICE OF 72 MONTHS. CONTINUE TO A 15 YEAR RECONSIDERATION HEARING, APRIL, 2014.

SIH – 11/2006

GUIDEINE USE: A DECISION ABOVE THE GUIDELINES IS WARRANTED AS YOU ARE A MORE SERIOUS RISK THAN INDICATED BY THE GUIDELINES DEU [Due] TO A PRIOR HISTORY OF FELONY VIOLENCE AS EVIDENCED BY YOUR CONVICTIONS FOR SODOMY AND ASSAULT WITH A DANGEROUS WEAPON IN 1975 AND ARMED ROBBERY IN 1983. YOUR CURRENT VIOLATION BEHAVIOR INVOLVED ASSAULT WITH A CANE ON A FEMALE VICTIM WITHIN 2 MONTHS OF YOUR RELEASE. ALSO, ADDITIONAL ADVERSE INFORMATION WAS FOUND IN YOUR CASE

GO[redacted]MENT OF THE DISTRICT OF [redacted]MBIA
District of Columbia Board of Parole
300 Indiana Avenue NW, 2nd Floor
Washington, DC 20001

DATE: April 5, 1999

From: Eric Mays
Parole Officer

PAROLE UNIT # SSU

SUBJECT: REPORT OF ALLEGED VIOLATION(S) [ ] UPDATE

| RE: Boling, Oliver | 166-863 | 229-182 | 378976H |
|---|---|---|---|
| Client's Name | DCDC # | PDID # | FBI # |

| M | [redacted]/54 | Active/Intensive | 2/17/99 | 6/29/2047 |
|---|---|---|---|---|
| Sex | DOB | Supv. Type/Level | Date Supv. Began | FTD |

Special Conditions(s): Nar. Surveillance, OPDP & Refer Inten Sup

Robbery W/Any WPN
Offense(s) On Which Parole May Be Revoked

| 16-48yrs,40mos-20yrs, 40mos-20yrs | 10/30/85 & 5/25/77 |
|---|---|
| Aggregate Sentence | Date Sentence Began |

| Discretionary 2-16-99 | 1 | 0 |
|---|---|---|
| Release Type and Date | # Releases | # Revocations |

ACTION RECOMMENDED: [X] Warrant [ ] OAR [ ] OAPC [ ] PA

Other: ______

| CODE | ALLEGATION(S)/DATE(S): District of Columbia Violation (s) | EVIDENCE - SOURCE & TYPE |
|---|---|---|
| 1. 0505 | Used a Deadly Weapon (cane) on 3-31-99 | D.C. Superior Court Affidavit |
| 2. 0901 | Failed to Obey All Laws on 4-2-99 | D.C. Superior Court Affidavit |

Exhibit S

# MEMO REGARDING HEARING

**_e: Boling, Oliver** **Reg No: 36688-118**

To ....................................................: **File**
Hearing Date ....................................: 9/22/04
Examiner ...........................................: Samuel R. Robertson
Institution ..........................................: Leavenworth USP

---

Reply to the Attention of S. Robertson to File.

~~**FOIA EXEMPT – DO NOT DISCLOSE**~~ Discloseable Page

The above-captioned prisoner was scheduled for a Special Reconsideration Hearing (Continued Rehearing After Revocation) to occur the week of 9/20/2004 at USP Leavenworth, KS. The prisoner did appear for this hearing as scheduled and was accompanied by his attorney/representative; Jean Phillips, Director of Defender Project, University of KS, School of Law. Attorney Phillips was accompanied by her intern, Norah Clark, a law student.

This examiner would note that the prisoner's parole was revoked by the DC Board of Parole on 7/10/2000 for criminal and non-criminal violations to include: Criminal Trespass and Stalking, Second Degree and Assault With Deadly Weapon. The DC Board also ordered a Rehearing to occur on 2/7/2003.

Special Reconsideration Hearing (Rehearing After Revocation) was conducted by the USPC on 12/3/2003. Via NOA dated 12/19/03, the Commission determined that the most serious aspect of the violation behavior, Assault With Deadly Weapon, was rated as Category 5. The offense severity assessment of 5, in conjunction with a SFS of 5 produced a base parole guideline of 48-60 months. A decision to parole on 4/9/2005, after the service of 72 months, was ordered with the Special Drug and Special Mental Health Aftercare Conditions.

The decision to parole after the service of 72 months represented a departure above the guidelines and was warranted on a determination that the prisoner represented a more serious risk then his SFS reflected. Cited specifically was the prisoner's criminal history reflecting convictions for Assault With Deadly Weapon and Sodomy in 1975; convictions for Armed Robbery in 1983, which coupled with his 1999 charge for Assault With Deadly Weapon on a female victim (occurring while on parole from the 1975 and 1983 convictions) established the qualitative determination for more serious risk.

Subsequent to this hearing, the Commission issued a NOA dated 6/5/2004 to reopen and schedule a Special Reconsideration Hearing pursuant to 28CFR, 2.28(f), New Adverse Information.

A memorandum from the Commission's Legal Office, dated 5/3/2004, details much of the evidence (certainly adverse to the prisoner) that was not discussed and/or considered at the December 2003 Reconsideration Hearing.

Subsequently, the Rehearing was convened on 7/13/2004 at USP Leavenworth. It is noted that a victim/witness (specifically the victim of the 1999 Assault) did appear, and did provide a statement on the record.

EXHIBIT T

The hearing was not concluded, however, as the prisoner waived this hearing. The Commission correctly concluded upon review that the waiver constituted actually a continuance of hearing, inasmuch as the prisoner was not entitled to waive this Rehearing After Revocation.

Nonetheless, it is noted that the prisoner, for whatever reason, refused or did not hear the tape recording of the victim/witness statements. It is noted that the Commission had prepared a disclosure packet for this hearing, dated 6/10/2004, and that, the prisoner did apparently review this packet on/around 6/24/2004. The packet did contain a Hartford, CT, Police Report and several letters that he (the prisoner) apparently wrote to his sister.

The examiner at today's hearing, of course, noted that the prisoner is now represented by counsel, this appointment occurring approximately 3 weeks prior to today's hearing.

Counsel for the prisoner did acknowledge, that they had been allowed to review the prisoner's file but offered that nothing in the BOP's file was relevant to the conduct that would be considered at today's hearing.

To make a very long story short, counsel obviously objected regarding disclosure or more specifically, the lack of it. This examiner did contemplate the argument that the decision to revoke and to assess the offense severity at Category 5, had been made at prior hearings, in the presence of the prisoner. Well certainly this is true, and those decisions are essentially immutable, the Commission has reopened the case in contemplation of assessing the conduct as more severe then Category 5 and/or at least determining that new evidence would establish that the prisoner's risk is even greater then previously established. In this regard, the Commission arguably will rely both on previously disclosed and considered evidence as well as new, not previously disclosed evidence.

This examiner did provide a brief reading from Examiner Kostbar's memorandum summarizing the victim/witness statement. The tape of the victim's statement was not available at this hearing however. Moreover, other documents referred to in the reopening discussion have not been disclosed.

The issue of disclosure, both in determining what and/or what not, could be disclosed was beyond what could be managed at an in-person hearing. As indicated, this examiner did provide a brief summary of the victim/witness statement as was provided in Kostbar's memorandum for continuance. Other relevant documents, as mentioned in the reopening memorandum, as well as the original material, may need to be disclosed however. In any event, the Commission will need to resolve this.

The second issue, which is only mentioned in passing, involved the prisoner's contention that this examiner should recuse himself from this hearing. In this regard, the prisoner alleged that his CM, Mr. Gray, had been told ostensibly by another CM, Mr. Wilson, that Wilson's mother, Carole Wilson Mueller, a former Commission employee, and who had also worked at the Leavenworth Penitentiary until retirement, that her friend (yours truly) had been called out of retirement by the Commission, specifically for the purposes of doing the prisoner "in", as it were.

Painful as it was, this examiner did address the allegations on the record as being ludicrous and absolutely without substance. Moreover, this examiner dismissed any notion that such a farcical charge would be the basis for this examiner's recusal.
Off the record, this examiner would privately conclude that staff may have made some remarks of the nature alleged, just to mess with the prisoner. Certainly, the staff exercised bad judgment and to some extent, have

 Exhibit-T

**Posch, Pamela A. (USPC)**

**From:** Husk, Steve (USPC)
**Sent:** Friday, July 16, 2004 6:17 PM
**To:** Posch, Pamela A. (USPC)
**Subject:** Boling, Oliver 36688-118

Pam,

Boling is the prisoner I heard at Leavenworth last December. However, there were some letters from victim and other critical documents that I didn't have in making release decision. Thus, USPC reopened the case.

Jeff attempted to hear him this week at Leavenworth. Victim actually came and provided a statement. However, Boling elected to waive parole consideration because he did not want to be heard again before 10/2004.

Two questions re: this case:

(1) Jeff wants victim's testimony transcribed. Is this advisable or do we just want tape of her testimony available?
(2) When we reopened the case, we didn't specifically state to reopen and retard the presumptive parole date and schedule the reconsideration hearing (mainly because the pp date was not until 4/2005). He now has signed the box on the I-24 form "waiving parole consideration at this time" (rather than "waiving the presumptive parole date previously determined by the Commission"). Do we need a new NOA specifically retarding the previous presumptive parole date?

Please let me know what you think proper actions are re: these two items. I'm sending file down to you (with packet including tape) in case you need to look/review it. However, I'm out until 7/26/04.

Can we discuss it upon my return? If you think we need to take more urgent action, Jeff will be in Thursday and Friday of next week.

Let me know.

Thanks.

Exhibit-W

7/27/04

Steve -

In response to your questions;

1) The tape does not need to be transcribed. ~~If Boling reapplies for~~ The tape can be sent to his attorney if he retains an attorney or it can be sent to his case manager who can allow him to listen to it but not keep a copy of the tape.

2) He cannot waive a hearing under 28 CFR 2.28(f). See 2.11-03(b). I recommend that an NOA be issued continuing him to the next docket and stating that 2.28(f) hearing cannot be waived.

(I a... follow... on pre-hearing disclosure) P. Posch

USPC [illegible]



U.S. DEPARTMENT OF JUSTICE
United States Parole Commission

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

April 8, 2005

Mr. Oliver Boling 36688-118
Lewisburg USP
R.D. #5
Lewisburg, PA 17837

Dear Mr. Boling:

Your letter of November 30, 2004 was just referred to me for a response. You included in your letter a signed affidavit, which shows you did not refuse to attend your hearing on November 30 at USP Leavenworth.

Case Manager Michael Gray provided the Commission with a written statement indicating you refused to attend your hearing. Mr. Gray stated he gave you several opportunities to attend the hearing but your refused to accompany him to the hearing room.

Your letter and affidavit have been considered. The Commission chooses to accept Case Manager Gray's version as being more believable. Your next opportunity for a hearing will be in November 2006, as stated on your Notice of Action.

Sincerely,

Rob Haworth
Rob Haworth
Hearing Examiner

JRH






# The Board of Parole
### of the
# District of Columbia

## NOTICE OF BOARD ORDER

Order # 1 of 1

In reference to:

**DCDC** 166-863

**DOB** ████████

**DOCKET** H9507-0029

**NAME** OLIVER M BOLING

**SSN** - -    **LOCATION** COMPLEX

**CONSIDERATION TYPE** H:INITIAL

The District of Columbia Board of Parole issues the following **ORDER:**

DENY PAROLE; RECONSIDER FOR PAROLE BY 08/04/1998

Implementation of this Order shall include the following:
Special Instructions for Reconsideration

    COMPLETE VOC TRAINING
    INTENSIVE DRUG PROGRAM
    NO NEW DISCP. REPORTS
    PSYCHOLOGICAL COUNSELING

*EXHIBIT 11*

Remarks:

07/24/1995

Date

*Margaret Quick*

Chairman
on behalf of the Board of Parole

A TRUE COPY
TEST

*Michael Green*

Director, Michael Green
Parole Determination
D.C. Board of Parole

Seal

[ Institution ]

The subject states that he does work as a utility person in the unit at USP Leavenworth. He previously worked in the Kitchen. He has not completed any significant programs at the USP.

**Discipline:** None

**Program Achievement:** As noted above, subject has not completed any significant programs. He does participate in a work detail in the unit. He previously worked in the Kitchen at USP Leavenworth. He states he has been at Leavenworth for 2 years. He previously was confined on this PV term at the Red Onion State Prison in VA, the Maximum Security Facility in Lorton, VA, and the DC Jail.

**Release Plans:** If released to the community, the subject will reside with his brother, Donnell Boling, at 1500 Massachusetts Avenue, Apartment No. 12, NW, Washington, DC 20008. The subject states that he can resume his employment with the Department of Public Works in the District of Columbia. He is a refuse operator with that department, according to the information he provided to the examiner at the hearing.

**Guideline Parameters, Evaluation & Recommendation**

**Severity Justification:** Category 5 because it involved Assault With a Weapon, Stalking and Administrative Violations of Parole.

**Salient Factor Score:** 5

**Modifications From Prehearing:** The examiner has modified the SFS to 5. The Pre-Hearing Examiner counted a commitment for Prison Breach imposed on 5/25/77 as a separate commitment from a 20-year sentence for Sodomy imposed on the same date. It does not appear that Boling was serving one sentence when he escaped from that sentence and received another sentence. Therefore, the examiner does not believe that the 7/18/76 offense for Prison Breach should be counted as a separate commitment. The examiner finds there are only 2 prior commitments that suggest the SFS to 5.

Disciplinary Guideline Range:................................0
Total Guideline Range:...................... 48-60 months

**Evaluation:** Subject appeared before this examiner for a Rehearing following the revocation of his parole by the DC Board of Parole. As noted above, the DC Board of Parole made findings of fact that the subject committed Assault With a Weapon. The subject admitted at today's hearing that he threw a cane at his wife during the course of an argument. He also admitted that he violated a Civil Protection Order that the wife's sister had issued against him to protect his wife. The subject did not provide any significant details other then to say that he did attempt to go visit his wife at her residence. The examiner had no other information describing this incident available at today's hearing. The subject stated that he no longer has any contact with his wife.

As noted above, the subject's guidelines are 48-60 months. He verified at today's hearing that he has been in continuous custody since April of 1999. Therefore, the examiner finds that, as of the time of this hearing, he had been in custody for 56 months toward the guideline range.

This subject does have a history of violence, including a Sodomy conviction from 1975 and an Armed Robbery conviction from 1983. The BOP file did not contain a copy of the Pre-Sentence Report for the Sodomy

Exhibit - 12



U.S. Department of Justice
U.S. Parole Commission

R

BOLING, OLIVER

36688-118 PR002212

Name

Register DC REHEARIN LVNVLN 12/3/2003 Institution

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

Continue to a presumptive Parole after the service of 72 months on 4/9/2005 with the special drug and mental health aftercare conditions.

Stephen J. Husk 12/3/03
K.A. Reimer 12/12/03
John R. Simpson 12/17/2003
Cranston J. Mitchell 12-18-03

Date

Exhibit-13

Date

DEC 19 2003

(Date Notice sent)

(Region-specify)

National Appeals Board (check)

National Commissioners (check)

Full Commission (check)

PAROLE FORM H-6
APR. 83

# Memorandum

**Subject**

Boling, Oliver 36688-118

**Date**

June 1, 2004

**To**

The Commissioners
U.S. Parole Commission

**From** KAP

Kathleen A. Pinner
Hearing Examiner
U.S. Parole Commission

Please see the memoranda dated 05/03/04 from Attorney Posch and 05/13/04 from Case Operations Administrator Husk for background information regarding this case.

I do not recall considering the information outlined in Mr. Husk's memorandum when voting to parole the subject after service of 72 months. However, if during my review of a case I discover adverse information that was not available to the examiner at the time of the hearing, I generally recommend that the Commission remand the case for a special reconsideration hearing to consider the information after it has been disclosed to the inmate. Since I did not follow my usual procedure, more likely than not I was unaware of the adverse information misfiled in Section 2 of the file.



# ·morandum

| Subject | Date |
| --- | --- |
| Oliver Boling<br>Reg. No. 36688-118 | May 3, 2004 |

| To | From |
| --- | --- |
| Stephen J. Husk<br>Case Operations Administrator<br>U.S. Parole Commission | Pamela A. Posch<br>Attorney<br>U.S. Parole Commission |

## Introduction

This memorandum recommends reopening petitioner's case if it is determined that the Commission did not consider all of the available information regarding petitioner's violation behavior.

## Background

A rehearing was conducted in petitioner's case on December 3, 2003, following the revocation of his parole by the D.C. Board of Parole. Petitioner's parole was revoked based on charges of assault against his wife, violating a civil protection order, stalking, criminal trespassing and disorderly conduct. At the time of his re-hearing, petitioner claimed that in regard to the assault charge, he had an argument with his wife and that she threw water on him and, in return, he threw a cane at her. The hearing summary indicates that no detailed information regarding the incident was available at the time of the hearing. But the parole file (on side 2) contains a police report describing a different scenario than that provided by petitioner.

During the hearing, petitioner was questioned as to whether or not he had any contact with his former wife. He claimed that he no longer had any contact with her. However, one month prior to the hearing, petitioner's former wife wrote to the Commission and attached several letters dated from August 2002 to May 2003, that petitioner had sent to her. These letters are located on side 3 of the file. Petitioner claimed during the hearing that in regard to the stalking charge, he was not convicted of this offense but only convicted of violating a civil protection order obtained by his wife's sister. This statement is not accurate. Petitioner's wife obtained a civil protection order from the District of Columbia before fleeing to Connecticut. The documents describing the stalking offense along with the civil protection order are located on side 2 of the file. These documents include a Connecticut police report in which petitioner's wife states that petitioner threatened to kill her and members of her family. Further, also on side 2 of the file is a letter from a victim advocate in the U.S. Attorney's Office in the District of Columbia who stated that, based on her experience, petitioner's wife was at extreme risk of

Exhibit
EXHIBIT
15

g murdered by pe. [redacted]. Again, according to the hearing su[redacted]ary, it does not appear that this information was available or considered at the time of the hearing.

In addition, it is not clear whether or not the Executive Hearing Examiner (EHE) considered the information in the file. The guidelines were calculated as 48-60 months, and a presumptive parole date was set for April 2005, after the service of 72 months. A decision above the guidelines was made based on petitioner's prior assaultive history.

Recommendation

I recommend that you review the hearing summary and the documents to determine if the information on sides 2 and 3 would have made a difference in your recommendation and/or if you believe the case should be reopened. I also recommend that the file be forwarded to the EHE so that she can determine if she considered the information on sides 2 and 3 of the file in making her recommendation. It appears that the information may not have been considered because it was not filed in the correct section of the parole file. The EHE should prepare a memorandum for the file explaining whether or not the information on side 2 and side 3 was considered in her recommendation and whether or not she believes that the case should be reopened. If the case is reopened for a new hearing, the documents will most likely have to summarized for petitioner prior to the hearing. During the hearing, petitioner should be questioned regarding the information that shows that he did contact his former wife and the information that shows that he threatened to kill his wife and members of her family. A special condition requiring him to stay away from his former wife should also be added.

Also, petitioner's former wife wrote to the Commission in December 2003, requesting information regarding petitioner's release date and inquiring as to where he was actually going to be released in 2005. If the Commission determines to reopen petitioner's case, a letter should be sent to petitioner's former wife advising her that the Commission has reopened the case.

Exhibit 15

 05/03/04

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

Name: BOLING, Oliver
Register Number: 36688-118
DCDC No: 166-863

Institution: Leavenworth USP

Date: June 5, 2004

In the case of the above-named, the following parole action was ordered:

Pursuant to 28 C.F.R.§2.28(f), reopen and schedule for a special reconsideration hearing on the next available docket.

**REASONS**:

The Commission has determined that there is significant adverse information in your file that was not considered in making the decision contained in the Notice of Action dated December 19, 2003.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc: Sharon Barnes-Durbin, SCSA
CSS Data Management Group
D.C. Court Services & Offender Supervision Agency
300 Indiana Avenue, N.W., Suite 2149
Washington, D.C. 20001

Exhibit-16

U.S. Department of Justice
U.S. Parole Commission

#1

BOLING, OLIVER

ER

36688-118 PR006897

Name DC RECONSID LVNVLN

Register Week Beginning 11/29/2004 Institution USP Leavenworth

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

Void the Notice of action dated December 19, 2003 as it relates to presumptive parole April 9, 2005 after service of 72 months.

[signature]
[signature] 12/20/04
[signature] 12-22-04
[signature] 12-28-04

Date November 30, 2004

Date

(Date Notice sent) (Region-specify)

National Appeals Board (check)

National Commissioners (check)

Full Commission (check)

Exhibit-17

PAROLE FORM H-6
APR. 83

on your former wife were much more serious than previously thought. It is likely that you would pose a serious risk to her if you were to be released into the community anytime in the near future.

**Additional Text:** None.

**Executive Reviewer's Comments:** Kostbar – 12/20/04 –

I agree with Examiner Haworth to a point. However, I disagree with him regarding awarding the subject a parole date at any foreseeable date. The subject has exhibited a violent history toward the victim and her family.

While we rated the offense severity a category five for the revocation behavior based upon the one assault with a cane (upon which we had little information at the time), the testimony of the victim suggests that he had engaged in other assaults that rose to the level of attempted murder, but were not part of the warrant application.

The victim reported that our subject has twice attempted to strangle her and she fought him off or she believes she would have otherwise been killed. She also reports that he has threatened to kill her and her family.

The subject has refused to participate in the "reopen" hearing process and has refused to listen to the tape of the victim relative to disclosure. He has had an attorney but due to conflict with the attorney, no longer has an attorney.

Exhibit 19

Examiner Haworth desires to reparole the subject after 132 months, which is above the gl's (40-60 months) for the Category Five behavior listed on the warrant application. I disagree. I believe this person is of extreme risk to the victim and the victim's family if he is every released on this term. His revocation behavior involved stalking and he has exhibited obsessive traits relative to the victim.

I believe that the subject should be continued to a 15 year reconsideration hearing (4/2014)

Note – The subject cannot "waive" this type of hearing. Thus, in spite of the fact that he has refused to appear repeatedly, the hearing has been appropriately held. The subject was told his hearing would be held in his absence but he refused to attend.

RECOMMENDATION –

VOID THE NOTICE OF ACTION DATED 12/19/03 AS IT RELATES TO PRESUMPTIVE PAROLE 4/9/05 AFTER SERVICE OF 72 MONTHS. CONTINUE TO A 15 YEAR RECONSIDERATION HEARING, APRIL, 2014.

SIH – 11/2006

GUIDEINE USE: A DECISION ABOVE THE GUIDELINES IS WARRANTED AS YOU ARE A MORE SERIOUS RISK THAN INDICATED BY THE GUIDELINES ~~DEU~~ Due TO A PRIOR HISTORY OF FELONY VIOLENCE AS EVIDENCED BY YOUR CONVICTIONS FOR SODOMY AND ASSAULT WITH A DANGEROUS WEAPON IN 1975 AND ARMED ROBBERY IN 1983. YOUR CURRENT VIOLATION BEHAVIOR INVOLVED ASSAULT WITH A CANE ON A FEMALE VICTIM WITHIN 2 MONTHS OF YOUR RELEASE. ALSO, ADDITIONAL ADVERSE INFORMATION WAS FOUND IN YOUR CASE



U.S. Department of Justice BOLING, OLIVER
U.S. Parole Commission

ORI 36688-118 PR006055
DC RECONSID LVNVLN
Week Beginning 9/20/04

Name ______

Register Number ______ Institution ______

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

Continue for disclosure of the victim's taped testimony. The disclosure of the tape along with the documents enclosed with the letter dated 6/10/2004, provides you with all of the documents to which you are entitled. There are no further documents to be disclosed for the upcoming hearing. This is your second continuance

Samuel R Robertson 9-22-04

Stephen J. Husk 10/6/04

Date ______

ExhibiT-20

Date ______

(Date Notice sent) ______ (Region-specify) ______

Exhibit 20

National Appeals Board ______ (check)

National Commissioners ______ (check)

Full Commission ______ (check)

PAROLE FORM H-4
APR. 83

U.S. Department of Justice
United States Parole Commission

Notice of Hearing-Parole Application
Representative and Disclosure Request

Date ____________

Name: ____________________

Register No: ____________ Institution ____________

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for ____________, to ____________, 19.

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

____________ (Initials) I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

____________ (Signature) ____________ (Date)

3. WAIVER OF PAROLE/PAROLE HEARING:

____________ (Initials) A. I wish to waive parole consideration at this time.

____________ (Initials) B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary Committee infractions since my last hearing.

____________ (Initials) C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE: *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists in your case.*)

____________ (Initials) D. I wish to waive mandatory parole.

NOTE: 1) If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

2) Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

4. REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.

Name of Representative: ____________

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER:

____________ (Initials) I do not wish a representative at my hearing.

Exhibit-21

1. INMATE COPY

PAROLE FORM I-24
OCT. 85

PD 202A
REV. 8/71

METROPOLITAN POLICE DEPARTMENT
WASHINGTON, D.C.
CONTINUATION REPORT
FOR USE WITH PD163 AND PD379 **ONLY**

| 1-COMPLAINT NO. | 2-ARREST NUMBER |
| --- | --- |
| 99-171111 | 04990 |
| 3-UNIT OR DIST. | |
| 4DSU | |

On April 1, 1999 USW 520-99 was issued for the defendant (BOLLING) charging DW Cane. The warrant was granted by Judge Barnes of DC Superior Court.

On 4-2-99 the defendant Bolling was arrested pursuant to an outstanding arrest warrant on file, warrant number USW-520-99. The defendant was place under arrest and transported to the fourth district by ofc. Martinez.

Exhibit-22

| 4-SIGNATURE OF REPORTING OFFICER - UNIT - BADGE NO. | 5-SUPERVISOR APPROVING | 6-REVIEWER |
| --- | --- | --- |
| [signature] 4DSU 1005 | [signature] 5-69 | |

 

GOVERNMENT OF THE DISTRICT OF COLUMBIA
District of Columbia Board of Parole
300 Indiana Avenue NW, 2nd Floor
Washington, DC 20001

STATEMENT OF ALLEGED PAROLE VIOLATIONS

Date: April 5, 1999

PAROLEE: Oliver Boling DCDC # 166-863

ALIAS (ES): Alvin Boling, John Johnson PDID # 229-182

Carl Johnson FBI # 378976H

LAST KNOWN ADDRESS: 3636 16th Street NW DOB: [redacted]

#B865 Washington, DC 20001 RACE: Blk SEX: M

HGT: 6'0" WT: 225 EYES: Brn HAIR: Blk COMPLEXION: Dark

IDENTIFYING SCARS/MARKS: ______

SENTENCE TYPE: X Adult __YRA __FYCA __YRA & Adult __FYCA & Adult

___Subject is at large X Subject is confined in D.C. Jail

PAROLE OFFICER: Eric Mays PAROLE UNIT: SSU

The parolee identified above is alleged to have committed the following violation(s) of parole:

1. Mr.Boling is being cited for using a deadly weapon(cane) to strike his wife, Lynn Boling, on March 31, 1999. Subject was charged with assault as a result of this incident and taken into custody here in the District of Columbia on 4-2-99.(0505)

2. Mr. Boling failed to obey all laws after being arrested here in the District of Columbia on the charge of Assault with a Deadly Weapon,case no: M-3741-99B, on 4-2-99. The ADW offense was nollo here in D.C. Superior Court following his arraignment on 4-2-99. Subject was released on his own personal recognizance in regards to the Assault-Domestic case, and ordered to appear for a status hearing on April 20, 1999. (0901)

Exhibit-23

Allegation # 1.: Subject committed a ☑ noncriminal ☐ criminal

iolation of Parole Condition # 505 by the following

alleged conduct on or about______199__: Used a deadly weapon (cane) to strike his wife, on March 31, 1999. Subject was charged with assault on 4-2-99

Evidence: ☐ Police Report ☐ Field Sheet ☐ Other:

Case # M-3741-99B Status: 4/2/99- Nolled - Dismissed for Want of Prosecution

| Findings of Fact | Evidence |
|---|---|
| Denies | Coump Didn't show & case was dismissed<br>. 163 stated subj assaulted his wife with a cane<br>. Letter from wife corroborated police report |

CONCLUSION

☑ Parole Violation Sustained

☐ Parole Violation Not Sustained

☐ No Finding

Exhibit-24

PAGE 2 of PROSECUTION REPORT Complaint # 99-171111 ID # CID # 4DDU99-2200

55. EMPLOYMENT HISTORY (List present employment if any, on Line 1)

| | FROM - DATE - TO | | EMPLOYER | ADDRESS | BUS. PHONE | OCCUPATION |
|---|---|---|---|---|---|---|
| 1. | 2-99 | Present | DPB | 212 Fl Ave. NE. | UNK | Refuse collector |
| 2. | | | | | | |

56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES - (Begin with immediate family)

| RELATIONSHIP | DOB / AGE | NAME - LAST, FIRST, M.I. | ADDRESS - STREET, CITY, STATE, ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|
| WIFE | Adult | Bolling, Lynn | 3636 6th st.N.W. B-865 | |
| | | | | |
| | | | | |

57. MILITARY SERVICE: BRANCH / DATE FROM - TO.. NO MILITARY

58. TELEPHONE CALL MADE ☒ YES ☐ NO ☐ REFUSED

59. PHONE NUMBER 301-868-5122

60. STATEMENT OF FACTS: *(Give a brief statement in your own words, of the facts surrounding the offense and the arrest. Use continuation Form PD 204A*. Note present condition of any injured person(s). Do not give Witnesses' Names or Addresses. REFER to them as W1 or W2 - etc as indicated in item 31.)

On-03-31-99 at about 1900 hrs. The complainant reports to the police that she was assaulted with a cane by the defendant, and as a result of the attack on the complainant. She received injuries which consisted of a bruised to her buttocks, left arm, and back.

Investigation: The complainant stats to the affiant that after a verbal argument with the defendant. Over their relationship the argument turned physical at which point the defendant became upset and retrieved two walking canes from the closet and started hitting the complainant through out the body with one of the canes. The complainant cried out for the defendant to stop hitting her however; the defendant did not stop his assault, and as a result of the attack on the complainant.She received injuries which consisted of a bruised to her back,buttocks,left arm.

On 04-01-99 the complainant states to the affiant that she also was assaulted by the defendant on 03-30-99 at about 2030 the complainant states after a verbal argument with the defendant over their relationship.The argument escalated into a physical altercation, at which time. The defendant punched the complainant in the face with a closed fist, and punched the complainant in the chest several times with a closed fist. As a result of the attack on the compliant she received a swollen nose.

The above defendant is the complainant's husband of eleven years known to her as Oliver Mcclain Bolling. The complainant states to the affiant that she is afraid of the defendant due to years of domestic abuse.

61. DEFENDANT'S VERSION / REMARKS: [What did defendant say about the offense or his/her whereabouts at the time of the offense? (Use PD 118 for defendant's written statement.)]

Idid not assault her we were wrestling

Exhibit-25

62. RECORD CLERK'S NAME: Culvee

63. ARREST RECORD SUMMARY: 1. 2. 3. 4. 5. 6.

64. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY: N/A

65. BAIL REFORM ACT CASES: Was a statement made by defendant in reference to his/her failure to appear? (If yes, include in Defendant's Version / Remarks Section above.) ☐ Yes ☒ No

| 66. PRINTED NAME - OFFICER MAKING STATEMENT | BADGE NUMBER | RANK | 68. SIGNATURE OF REVIEWING OFFICIAL |
|---|---|---|---|
| David Garther | 1003 | OFF | [signature] S-69 |
| 67. SIGNATURE OF OFFICER MAKING STATEMENT | UNIT | DATE 4-2-99 | UNIT 400 / DATE 4-2-99 |

TIM LYNN BOLING WAS THE SUBJECT'S WIFE. SHE STATED THAT SHE BELIEVED THAT HE AS CAPABLE OF COMMITTING NEW CRIMES IF HE WAS RELEASED. SHE STATED THAT HE IAS THREATENED IN THE PAST TO KILL HER AS WELL AS HER ENTIRE FAMILY. SHE INDICATED THAT HE WAS VIOLENT TO HER WHEN HE WAS OUT ON PAROLE BEFORE AND SHE BELIEVES HE IS UN-REPENTIVE.

SHE STATED THAT TWICE HE TRIED TO STRANGLE HER. THE FIRST TIME HE WAS IN A JEALOUS RAGE BUT HE LET HER GO ULTIMATELY. THE SECOND TIME HE ATTEMPTED TO STRANGLE HER SHE THOUGHT SHE WAS GOING TO DIE AND THAT IT WAS HIS INTENT TO KILL HER. SHE STATED THAT DURING THE STRANGULATION HE SAID HE WANTED HER DEAD. SHE INDICATED THAT SHE WAS JUST ABOUT TO GIVE UP AND DIE BUT SHE TRIED ONE MORE TIME TO STRUGGLE FREE. SHE WAS ABLE TO THROW HER LEG UP WHICH HIT A HAITIAN STATUE. THE STATUE TUMBLED DOWN AND THIS STARTLED HIM AND HE JUMPED AWAY FROM HER. SHE STATED THAT AS A RESULT OF THIS STRANGULATION SHE WAS SEVERELY BRUISED ALL AROUND HER NECK. SHE INDICATED THAT HE HAD PREVIOUSLY TOLD HER HE WAS GOING TO KILL HER AND THE ONLY THING KEEPING HER ALIVE WAS THE FACT THAT HE HAD NOT YET FIGURED OUT WHAT TO DO WITH HER BODY. SHE FELT THAT THIS WAS DEFINITELY A MURDER ATTEMPT BUT THAT DUE TO HER OWN STRUGGLING SHE MANAGED TO SAVE HER LIFE.

SHE ALSO DESCRIBED A CANE BEATING WHICH SHE TOOK AT THE SUBJECT'S HANDS. SHE STATED THAT HE WAS CAREFUL TO BRUISE HER SEVERELY IN PLACES WHERE IT COULD NOT BE SEEN BY THE GENERAL PUBLIC. SHE INDICATED THAT THIS WAS BEHIND HER LEGS AND ON HER BUTTOCKS. SHE STATED THAT THE BRUISING WAS VERY SEVERE AND THEY TURNED BLACK.

SHE INDICATES THAT HE NEVER BROKE ANY BONES ON HER BODY BUT THAT ONCE HE TWISTED HER CHEEK SO HARD IT BROKE HER SKIN AND SHE NOW HAS A SCAR ON HER CHEEK. SHE DID GO TO THE DOCTOR ONCE BUT HE STAYED WITH HER. HE PULLED HER HAIR OUT IN CLUMPS FROM HER SCALP.

The examiner will need to review the statement of the victim and, hopefully the transcription.

The Parole Commission will have to determine how to rate this case. The victim's statements of today's hearing many suggest a Category Eight Attempted Murder which would carry guidelines of 150 + months. Or, the case may be rated as a Category Seven for Serious Bodily Injury or Serious Bodily Injury Intended. It may also be rated as a Category Five for Bodily Injury/Weapon Used.

As noted above, the subject has now placed himself into waiver status. He feels that he should be disclosed more information and that he has not had enough time to prepare his case nor to get his attorney/representative at today's hearing. This examiner is requesting that the victim tape be transcribed. Again, the victim has indicated that everything she stated is disclosable to the inmate.

JSK/PAH
July 15, 2004

Exhibit - 26